FCC 96-325

**Before the**
**Federal Communications Commission**
**Washington, DC 20554**

| | | |
|---|---|---|
| In the Matter of | ) | |
| | ) | |
| Implementation of the Local Competition Provisions in the Telecommunications Act of 1996 | ) | CC Docket No. 96-98 |
| | ) | |
| Interconnection between Local Exchange Carriers and Commercial Mobile Radio Service Providers | ) | CC Docket No. 95-185 |
| | ) | |

## FIRST REPORT AND ORDER

Adopted: August 1, 1996 Released: August 8, 1996

By the Commission: Chairman Hundt and Commissioners Quello, Ness, and Chong issuing separate statements.

### Table of Contents


I. INTRODUCTION, OVERVIEW, AND EXECUTIVE SUMMARY 1
- A. The Telecommunications Act of 1996 - A New Direction 1
- B. The Competition Trilogy: Section 251, Universal Service Reform and Access Charge Reform 6
- C. Economic Barriers 10
- D. Operational Barriers 16
- E. Transition 21
- F. Executive Summary 24

II. SCOPE OF THE COMMISSION'S RULES 41
- A. Advantages and Disadvantages of National Rules 44
- B. Suggested Approaches for FCC Rules 63

| | | | |
|---|---|---|---|
| | C. | Legal Authority of the Commission to Establish Regulations Applicable to Intrastate Aspects of Interconnection, Resale of Services, and Unbundled Network Elements | 69 |
| | D. | Commission's Legal Authority and the Adoption of National Pricing Rules | 104 |
| | E. | Authority to Take Enforcement Action | 121 |
| | F. | Regulations of BOC Statements of Generally Available Terms | 130 |
| | G. | States' Role in Fostering Local Competition Under Sections 251 and 252 | 133 |
| III. | DUTY TO NEGOTIATE IN GOOD FAITH | | 138 |
| | A. | Background | 138 |
| | B. | Advantages and Disadvantages of National Rules | 139 |
| | C. | Specific Practices that May Constitute a Failure to Negotiate in Good Faith | 144 |
| | D. | Applicability of Section 252 to Preexisting Agreements | 157 |
| IV. | INTERCONNECTION | | 172 |
| | A. | Relationship Between Interconnection and Transport and Termination | 174 |
| | B. | National Interconnection Rules | 177 |
| | C. | Interconnection for the Transmission and Routing of Telephone Exchange Service and Exchange Access | 181 |
| | D. | Interexchange Service is not Telephone Exchange Service or Exchange Access | 186 |
| | E. | Definition of "Technically Feasible" | 192 |
| | F. | Technically Feasible Points of Interconnection | 207 |
| | G. | Just, Reasonable, and Nondiscriminatory Rates, Terms, and Conditions of Interconnection | 213 |
| | H. | Interconnection that is Equal in Quality | 221 |
| V. | ACCESS TO UNBUNDLED NETWORK ELEMENTS | | 226 |
| | A. | Commission Authority to Identify Unbundled Network Elements | 226 |
| | B. | National Requirements for Unbundled Network Elements | 231 |
| | C. | Network Elements | 249 |
| | D. | Access to Network Elements | 265 |
| | E. | Standards Necessary to Identify Unbundled Network Elements | 271 |
| | F. | Provision of a Telecommunications Service Using Unbundled Network Elements | 289 |
| | G. | Nondiscriminatory Access to Unbundled Network Elements and Just, Reasonable, and Nondiscriminatory Terms and Conditions for the Provision of Unbundled Network Elements | 298 |
| | H. | The Relationship Between Sections 251(c)(3) and 251(c)(4) | 317 |

I. Provision of Interexchange Services through the Use of Unbundled Network Elements 342
J. Specific Unbundling Requirements 366
1. Local Loops 367
2. Switching Capability 397
3. Interoffice Transmission Facilities 428
4. Databases and Signaling Systems 452
5. Operations Support Systems 504
6. Other Network Elements 529

VI. METHODS OF OBTAINING INTERCONNECTION AND ACCESS TO UNBUNDLED NETWORK ELEMENTS 542
A. Overview 543
B. Collocation 555
1. Collocation Standards 555
a. Adoption of National Standards 555
b. Adoption of *Expanded Interconnection* Terms and Conditions for Physical and Virtual Collocation under Section 251 559
c. The Meaning of the Term "Premises" 570
d. Collocation Equipment 576
e. Allocation of Space 583
f. Leasing Transport Facilities 588
g. Co-Carrier Cross-connect 592
h. Security Arrangements 596
i. Allowing Virtual Collocation in Lieu of Physical 599
2. Legal Issues 608
a. Relationship between *Expanded Interconnection* Tariffs and Section 251 608
b. Takings Issues 613

VII. PRICING OF INTERCONNECTION AND UNBUNDLED ELEMENTS 618
A. Overview 618
B. Cost-Based Pricing Methodology 625
1. Application of the Statutory Pricing Standard 626
2. Rate Levels 630
a. Pricing Based on Economic Cost 630
(1) Background 630
(2) Comments 635
(3) Discussion 672
(a) Total Element Long Run Incremental Cost 674

(b) Cost Measures Not Included in Forward-Looking Cost Methodology 704
(c) Fifth Amendment Issues 733
3. Rate Structure Rules 741
a. General Rate Structure Rules 741
b. Additional Rate Structure Rules for Shared Facilities 753
c. Geographic/Class-of-Service Averaging 758
C. Default Proxy Ceilings and Ranges 767
1. Use of Proxies Generally 772
2. Proxies for Specific Elements 787
a. Overview 787
b. Discussion 788
(1) Loops 788
(2) Local Switching 799
(3) Other Elements 819
3. Forward-Looking Cost Model Proxies 828
D. Other Issues 837
1. Future Adjustments to Interconnection and Unbundled Element Rate Levels 837
2. Imputation 839
3. Discrimination 851

VIII. RESALE 863A. Scope of Section 251(c)(4)865
B. Wholesale Pricing 878
C. Conditions and Limitations 935
1. Restrictions, Generally, and Burden of Proof 936
2. Promotions and Discounts 940
3. Below-Cost and Residential Service 954
4. Cross-Class Selling 958
5. Incumbent LEC Withdrawal of Services 965
6. Provisioning 969
D. Resale Obligations of LECs Under Section 251(b)(1) 972
E. Application of Access Charges 978

IX. DUTIES IMPOSED ON "TELECOMMUNICATIONS CARRIERS" BY SECTION 251(a) 985

X. COMMERCIAL MOBILE RADIO SERVICE INTERCONNECTION 999
A. CMRS Providers and Obligations of Local Exchange Carriers Under Section 251(b) and Incumbent Local Exchange Carriers Under Section 251(c) 1001




Exhibit 5
Page 4 of 7

| | | | | | | |
|---|---|---|---|---|---|---|
| | B. | Reciprocal Compensation Arrangements Under Section 251(b)(5) | | | | 1007 |
| | C. | Interconnection Under Section 251(c)(2). | | | | 1009 |
| | D. | Jurisdictional Authority for Regulation of LEC-CMRS Interconnection Rates | | | | 1016 |
| XI. | OBLIGATIONS IMPOSED ON LECS BY 251(b) | | | | | 1027 |
| | A. | Reciprocal Compensation for Transport and Termination of Telecommunications | | | | 1027 |
| | | 1. | Statutory Language | | | 1027 |
| | | 2. | Definition of Transport and Termination of Telecommunications | | | 1028 |
| | | 3. | Pricing Methodology | | | 1046 |
| | | 4. | Symmetry | | | 1069 |
| | | 5. | Bill and Keep | | | 1096 |
| | B. | Access to Rights of Way | | | | 1119 |
| | | 1. | Overview | | | 1119 |
| | | 2. | Section 224(f): Non-discriminatory access | | | 1123 |
| | | | a. Background | | | 1123 |
| | | | b. Comment | | | 1124 |
| | | | c. Discussion | | | 1143 |
| | | | | (1) Generally | | 1143 |
| | | | | (2) Specific Rules | | 1151 |
| | | | | (3) Guidelines Governing Certain Issues | | 1159 |
| | | | | | (a) Capacity Expansions | 1161 |
| | | | | | (b) Reservation of space by utility | 1165 |
| | | | | | (c) Definition of "Utility" | 1171 |
| | | | | | (d) Application of Section 224(f)(2) to Non-Electric Utilities | 1175 |
| | | | | | (e) Third Party Property Owners | 1178 |
| | | | | | (f) Other Matters | 1182 |
| | | 3. | Constitutional Takings | | | 1187 |
| | | 4. | Modifications | | | 1193 |
| | | 5. | Dispute Resolution | | | 1217 |
| | | 6. | Reverse preemption | | | 1232 |
| | C. | Imposing Additional Obligations on LECS | | | | 1241 |
| XII. | EXEMPTIONS, SUSPENSIONS AND MODIFICATIONS OF SECTION 251 REQUIREMENTS | | | | | 1249 |
| | A. | Background | | | | 1249 |
| | B. | Need for National Rules | | | | 1252 |
| | C. | Application of Section 251(f) | | | | 1255 |



Exhibit 5
Page 5 of 7

XIII. ADVANCED TELECOMMUNICATIONS CAPABILITIES 1266

XIV. PROVISIONS OF SECTION 252 1269
- A. Section 252(e)(5) 1269
- B. Requirements of Section 252(i) 1296

XV. FINAL REGULATORY FLEXIBILITY ANALYSIS 1324
- A. Need for and Objectives of this Report and Order and the Rules Adopted Herein 1325
- B. Analysis of Significant Issues Raised in Response to the IRFA 1327
  - 1. Treatment of Small LECs 1328
  - 2. Other Issues 1331
- C. Description and Estimates of the Number of Small Entities Affected by this Report and Order 1341
  - 1. Telephone Companies (SIC 481) 1343
  - 2. Cable System Operators (SIC 4841) 1358
- D. Summary Analysis of the Projected Reporting, Recordkeeping, and Other Compliance Requirements and Steps Taken to Minimize the Significant Economic Impact of this Report and Order on Small Entities and Small Incumbent LECs, Including the Significant Alternatives Considered and Rejected 1361
- E. Report to Congress 1441

XVI. ORDERING CLAUSES 1442

APPENDIX A List of Commenters
APPENDIX B Final Rules
APPENDIX C Network Diagram
APPENDIX D State Proxy Ceilings for the Local Loop

how to conduct arbitration when the Commission has not assumed jurisdiction. The rules we establish will give notice of the procedures and standards the Commission would apply to mediation and arbitration, avoid delay if the Commission had to arbitrate disputes in the near future, and may also offer guidance the states may, at their discretion, wish to consider in implementing their own mediation and arbitration procedures and standards. We decline to adopt national rules governing state arbitration procedures. We believe the states are in a better position to develop mediation and arbitration rules that support the objectives of the 1996 Act. States may develop specific measures that address the concerns of small entities and small incumbent LECs participating in mediation or arbitration.

1284. The rules we adopt herein are minimum, interim procedures. Adopting minimum interim procedures now will allow the Commission to learn from the initial experiences and gain a better understanding of what types of situations may arise that require Commission action. We note that the Commission is not required to adopt procedures and standards for mediation and arbitration within the six-month statutory deadline and that, by adopting minimum interim procedures, the Commission can better direct its resources to more pressing matters that fall within the six-month statutory deadline.

1285. Regarding what constitutes a state's "failure to act to carry out its responsibility under" section 252,[3154] the Commission was presented with numerous options. The Commission will not take an expansive view of what constitutes a state's "failure to act." Instead, the Commission interprets "failure to act" to mean a state's failure to complete its duties in a timely manner. This would limit Commission action to instances where a state commission fails to respond, within a reasonable time, to a request for mediation or arbitration, or fails to complete arbitration within the time limits of section 252(b)(4)(C).[3155] The Commission will place the burden of proof on parties alleging that the state commission has failed to respond to a request for mediation or arbitration within a reasonable time frame. We note the work done by states to date in putting in place procedures and regulations governing arbitration and believe that states will meet their responsibilities and obligations under the 1996 Act.[3156]

1286. We agree with the majority of commenters that argue that our authority to assume the state commission's responsibilities is not triggered when an agreement is "deemed approved" under section 252(e)(4) due to state commission inaction. Section 252(e)(4) provides for automatic approval if a state fails to approve or reject a negotiated or arbitrated agreement within 90 days or 30 days, respectively.

[3154] 47 U.S.C. § 252(e)(5).

[3155] 47 U.S.C. § 252(b)(4)(C).

[3156] *See, e.g., In the Matter of the Implementation of the Mediation and Arbitration Provisions of the Federal Telecommunications Act of 1996*, Case No. 96-463-TP-UNC, Ohio Commission, (May 30, 1996); *Illinois Commerce Commission On Its Own Motion Adoption of 83 Ill. Adm. Code 761 to Implement the Arbitration Provisions of Section 252 of the Telecommunications Act of 1996*, Docket No. 96-0297, Illinois Commission (June 14, 1996).