Federal Communications Commission                                    DA 02-2787

Before the
**Federal Communications Commission**
Washington, D.C. 20554

| | |
|---|---|
| In the Matter of ) | |
| ) | |
| ACS of Anchorage, Inc. and ) | |
| ACS of Fairbanks, Inc. ) | WC Docket No. 02-201 |
| ) | |
| Emergency Petition for Declaratory Ruling and ) | |
| Other Relief Pursuant to Sections 201(b) and ) | |
| 252(e)(5) of the Communications Act ) | |
| ) | |

**MEMORANDUM OPINION AND ORDER**

**Adopted: October 22, 2002**                                    **Released: October 22, 2002**

By the Chief, Wireline Competition Bureau:

## I.    INTRODUCTION

1. This *Memorandum Opinion and Order* addresses the petition of ACS of Anchorage, Inc. and ACS of Fairbanks, Inc. (ACS) for preemption of the jurisdiction of the Regulatory Commission of Alaska (RCA or Alaska Commission) with respect to the determination of rates for unbundled network elements (UNEs) in Anchorage and Fairbanks.[1] ACS asks the Commission to: (i) declare that the RCA's determination of UNE rates does not comport with applicable law; (ii) declare that the UNE rates established by the RCA in Anchorage and Fairbanks are confiscatory; and (iii) pursuant to its authority under sections 201(b) and 252(e)(5) of the Act, preempt the RCA and establish cost-based UNE rates based on ACS's forward-looking cost study.[2] For the reasons set forth below, we deny ACS's petition.

2. Section 252(e)(5) of the Communications Act of 1934, as amended (the Act), requires the Commission to preempt the jurisdiction of a state commission in any proceeding or matter in which the state commission "fails to act to carry out its responsibility" under section 252.[3] Section 252 sets forth the procedures under which a telecommunications carrier may request and obtain interconnection, services, or network elements from an incumbent local exchange carrier (LEC). Under section 252, when these carriers cannot arrive at an interconnection agreement through voluntary negotiation, they may mediate and arbitrate the unresolved issues before the applicable state commission. The state commission

---

[1] Emergency Petition for Declaratory Ruling and Other Relief of ACS of Anchorage, Inc. and ACS of Fairbanks, Inc., WC Docket No. 02-201 (filed July 24, 2002) (ACS Petition); *see Pleading Cycle Established for Comments on Emergency Petition for Declaratory Ruling and Other Relief Pursuant to Sections 201(b) and 252(e)(5) of the Communications Act of ACS of Anchorage, Inc. and ACS of Fairbanks, Inc.*, WC Docket No. 02-201, Public Notice, DA 02-1847 (rel. July 30, 2002). The Regulatory Commission of Alaska and the Alaska Telephone Association filed comments and General Communication, Inc. filed an opposition. ACS and the United States Telecom Association filed replies, and Warinner, Gesigner & Associates, LLC filed comments on September 3, 2002.

[2] ACS Petition at 4.

[3] 47 U.S.C. § 252(e)(5).

Exhibit  4
Page  1  of  9

Federal Communications Commission                                  DA 02-2787

must conclude its resolution of unresolved issues not later than nine months after the date upon which the incumbent LEC received the interconnection request.[4] In resolving rate issues through arbitration, including rates for UNEs, the state commission must establish rates according to the pricing standards set forth in section 252(d).[5] An interconnection agreement adopted by negotiation or by arbitration must be filed with the state commission, which then approves or rejects the agreement under standards set forth in section 252.[6] ACS argues that the Alaska Commission failed to carry out its responsibility under section 252 to establish rates for unbundled network elements in Anchorage and Fairbanks in interconnection proceedings with GCI Communication Corp. d/b/a General Communication, Inc. (GCI).[7]

3.   In this order, we apply the standards set forth in prior Commission decisions and in the recent decision of the United States Court of Appeals for the District of Columbia Circuit in *Global NAPs Inc. v. FCC*.[8] We find that the Alaska Commission acted on a timely basis in Anchorage when, in 1996 and 1997, it arbitrated and approved the interconnection agreement between ACS's predecessor and GCI. We also find that the Alaska Commission has not failed to act in the reopened cost proceeding currently before it, in which the parties seek to establish new rates to replace those adopted in the original agreement. Finally, we find that the Alaska Commission did act in the Fairbanks proceeding and that action is the basis for its pending appeal, under section 252(e)(6), to federal court. When, as here, a state commission has acted, section 252(e)(6) provides the basis for federal court review. Accordingly, we deny ACS's petition.

## II.   BACKGROUND

4.   In Anchorage, in January 1997, the Alaska Commission approved an interconnection agreement between Anchorage Telephone Utility (ATU) and GCI.[9] The agreement contained arbitrated UNE rates, but that Commission noted that these rates were "temporary in nature and will require a full

---

[4] *See* 47 U.S.C. § 252(b)(4)(C).

[5] *See* 47 U.S.C. §§ 252(c)(2), (d).

[6] *See* 47 U.S.C. § 252(e).

[7] *See* ACS Petition at 51-53.

[8] *See Global NAPs, Inc. v. FCC*, 291 F.3d 832, 836-37 (D.C. Cir. 2002); *Implementation of the Local Competition Provisions in the Telecommunications Act of 1996*, CC Docket No. 96-98, First Report and Order, 11 FCC Rcd 15499, 16128, para. 1285 (1996) (*Local Competition First Report and Order*) (subsequent history omitted); 47 C.F.R. § 51.801(b). Commission rule 51.801(b) limits the instances under which Commission preemption pursuant to section 252(e)(5) is appropriate to three specific circumstances. First, a state commission "fails to act" if it fails to respond, within a reasonable time, to a request for mediation pursuant to section 252(a)(2) of the Act, which permits any party to request mediation of differences that arise when voluntarily negotiating an interconnection agreement. 47 C.F.R. § 51.801(b); 47 U.S.C. § 252(a)(2). Second, a state commission's failure to respond within a reasonable time to a request for arbitration pursuant to section 252(b) would similarly constitute a "failure to act." 47 C.F.R. § 51.801(b). Finally, a state commission "fails to act" if it fails to complete arbitration of an interconnection agreement within nine months as set forth in section 252(b)(4)(C). *Id.*

[9] *See* Attachment to Letter from John T. Nakahata, Counsel to GCI, to Tamara Preiss, Chief, Pricing Policy Division, Wireline Competition Bureau, FCC (filed Oct. 1, 2002)(Petition by GCI Communication Corp. for Arbitration under Section 252 of the Telecommunications Act of 1996 with the Municipality of Anchorage d/b/a/ Anchorage Telephone Utility a/k/a ATU Telecommunications for the Purpose of Instituting Local Exchange Competition, U-96-89, *Order No. 9 Approving Arbitrated Interconnection Agreement as Resolved and Modified by Order U-96-89(8)* (Alaska PUC Jan. 14. 1997) (*Order Approving Arbitrated Agreement*)); *see also* ACS Petition at 10; GCI Opposition at 5-6. The regulatory commission in Alaska in 1996 was the Alaska Public Utilities Commission (PUC), which is the predecessor to the current Regulatory Commission of Alaska (RCA). RCA Comments at 3. We refer to both as the "Alaska Commission."

2

Exhibit 4
Page 2 of 9

study based upon a cost methodology to be determined" by it at a later date.[10] The agreement, which does not specify a termination date, went into effect and ATU did not seek review of the final order approving the agreement.[11]

5.   In January 2000, ACS, which had acquired ATU, filed a motion in the GCI-ATU Anchorage interconnection docket seeking to establish new interconnection rates to replace those adopted in the original agreement.[12] The motion was granted and, based at least in part upon a statement made by ACS's attorney at a hearing before it, the Alaska Commission found that the Act's specific time constraints would not apply to the new proceeding.[13] Between March 2000 and July 2002, the parties advocated the use of different cost models and the Alaska Commission issued approximately 14 related orders.[14] These included an October 2001 order, which became effective upon its adoption, setting an interim and refundable UNE loop rate of $14.92.[15] Finally, on July 29, 2002 (after ACS filed its preemption petition with the FCC), the Alaska Commission adopted ACS's proposed approach.[16] The Alaska Commission found that both proposed cost models could generate "results that are consistent with the forward-looking cost directive" of the Telecommunications Act of 1996, but it adopted ACS's proposed approach.[17] The Alaska Commission established a two-phase arbitration procedure to resolve the UNE rates for Anchorage.[18] Under this schedule, the first phase of the cost proceeding will consider

---

[10] *See Order Approving Arbitrated Agreement* at 3; *see also* Attachment to Letter from John T. Nakahata, Counsel to GCI, to Tamara Preiss, Chief, Pricing Policy Division, Wireline Competition Bureau, FCC (filed Oct. 1, 2002)(Petition by GCI Communication Corp. for Arbitration under Section 252 of the Telecommunications Act of 1996 with the Municipality of Anchorage d/b/a/ Anchorage Telephone Utility a/k/a ATU Telecommunications for the Purpose of Instituting Local Exchange Competition, U-96-89, *Order No. 8 Resolving Arbitrated Issues* at 16-17 (Alaska PUC Dec. 16. 1996) (*Order Resolving Arbitrated Issues*)).

[11] *See* ACS Petition at 10-11; GCI Opposition at 7.

[12] *See* ACS Petition at 11; GCI Opposition at 7-8; RCA Comments at 4.

[13] *See* Petition by GCI Communications Corp. d/b/a General Communications, Inc., and d/b/a GCI for Arbitration under Section 252 of the Telecommunications Act of 1996 with the Municipality of Anchorage d/b/a/ Anchorage Telephone Utility a/k/a ATU Telecommunications for the Purpose of Instituting Local Exchange Competition, U-96-89, *Order No. 15 Scheduling Briefing* (RCA Jan. 8, 2001) at 4 & n.15; *see also* ACS Reply at 8; RCA Comments at 18, Exhibit E at 5 (Dec. 6, 2000 Hearing Transcript at 67 (ACS's attorney stating "it doesn't clearly [sic] within a timing framework for a negotiation or arbitration. It's not a new negotiation or arbitration.")). Under section 252(b)(4)(C), when a state commission conducts an arbitration under section 252, it must "conclude the resolution of any unresolved issues not later than 9 months after the date on which the local exchange carrier received" the request for interconnection, services, or network elements. 47 U.S.C. § 252(b)(4)(C).

[14] *See* ACS Reply, Exhibit A.

[15] *See* Petition by GCI Communications Corp. d/b/a General Communication, Inc., and d/b/a GCI for Arbitration under Section 252 of the Telecommunications Act of 1996 with the Municipality of Anchorage d/b/a/ Anchorage Telephone Utility a/k/a ATU Telecommunications for the Purpose of Instituting Local Exchange Competition, U-96-89, *Order No. 23 Establishing Interim And Refundable Unbundled Network Element Loop Rate and Affirming Oral Ruling* (RCA Oct. 25, 2001) at 11. The previous rate, pursuant to the 1997 agreement, was $13.85. *Id.* at 2; ACS Petition at 12.

[16] Petition by GCI Communications Corp. d/b/a General Communication, Inc., and d/b/a GCI for Arbitration under Section 252 of the Telecommunications Act of 1996 with the Municipality of Anchorage d/b/a/ Anchorage Telephone Utility a/k/a ATU Telecommunications for the Purpose of Instituting Local Exchange Competition, U-96-89, *Order No. 26 Selecting Model And Establishing Preliminary Schedule* (RCA July 29, 2002)(*Order Selecting Cost Model*).

[17] *Id.* at 3-4.

[18] *See id.* at 6-8.

Exhibit 4
Page 3 of 9

modifications to the model platform. In the second phase, model inputs will be arbitrated and final rates set.[19]

6.  In Fairbanks, GCI petitioned the Alaska Commission in December 1999 for arbitration of an interconnection agreement with ACS Fairbanks.[20] The Alaska Commission issued an order in August 2000 approving the arbitrator's decision on pricing, which set permanent rates.[21] When ACS appealed this decision to the United States District Court for the District of Alaska, arguing, inter alia, that the rates established by the Alaska Commission violated the Act, that Commission claimed sovereign immunity under the Eleventh Amendment to the U.S. Constitution.[22] The district court denied the Alaska Commission's motion to dismiss, and that decision was appealed.[23] As of the date ACS's preemption petition was filed with the FCC, the matter was pending before the United States Court of Appeals for the Ninth Circuit.[24] According to a recent order of that court, however, the Alaska Commission has now agreed to permit action against the individual Alaska Commissioners and the parties have been ordered to show cause why the matter should not be remanded to the district court for resolution on the merits.[25]

### III.  DISCUSSION

7.  We find that ACS has not demonstrated a failure to act, under section 252(e)(5), by the Alaska Commission in either Anchorage or Fairbanks. Section 252(e)(5) directs the Commission to preempt the jurisdiction of a state commission in any proceeding or matter in which the state commission "fails to act to carry out its responsibility under [section 252]."[26] Under the Commission's rules, the party seeking preemption bears the burden of proving that the state commission has failed to act.[27] In the *Local Competition First Report and Order*, the Commission concluded that it would not take an "expansive view" of what constitutes a state commission's "failure to act" for purposes of section 252(e)(5).[28] Rather, that order limited the instances in which preemption pursuant to section 252(e)(5) is appropriate

---

[19] See id. at 8.

[20] GCI Opposition at 17; RCA Comments at 8. We note that the Alaska Commission terminated ACS's rural exemption for Fairbanks in 1999. See ACS Petition at 13; GCI Opposition at 17; RCA Comments at 8 & Ex. B at 4-5 (Complaint for Declaratory Judgment and Injunction, ACS of Fairbanks, ACS of Alaska, Inc. and ACS of the Northland, Inc. v. GCI Communication Corp., db/a General Communication Inc., Regulatory Commission of Alaska, Commissioner G. Nanette Thompson, Commissioner Bernie Smith, Commissioner Patricia M. DeMarco, Commissioner Will Abbott, and Commissioner James S. Strandberg (filed Sept. 25, 2000)). ACS appealed this denial and the matter is currently pending before the Alaska Supreme Court. See ACS Petition at 13 n.43.

[21] See GCI Communication Corp. d/b/a General Communication, Inc., and d/b/a GCI for Arbitration with PTI Communications of Alaska under 47 U.S.C. §§ 251 and 252 for the Purpose of Instituting Local Exchange Competition, et. al., *Order No. 9 Approving, in Part, and Modifying, In Part, Arbitrator's Recommendation*, U-99-141, et al. at 13 (RCA Aug. 24, 2000) (*Order Approving and Modifying Arbitrator's Recommendation*). According to the *Order*, the parties agreed to an extension of the deadlines set forth in the Act. Id. at 3.

[22] See ACS Petition at 19; GCI Opposition at 20-21; RCA Comments at 8-9 & Ex. B.

[23] ACS Petition at 19-20; GCI Opposition at 21.

[24] ACS Petition at 20.

[25] See Attachment to Letter from John T. Nakahata, Counsel to GCI, to Marlene Dortch, Secretary, FCC (filed Oct. 3, 2002)(*GCI Ex Parte*)(*ACS of Fairbanks, Inc., ACS of Alaska, Inc., ACS of the Northland, Inc. v. GCI Communication Corp., et al.*, No. 01-35344, Order to Show Cause at 2-3 (9th Cir. Oct. 3, 2002)).

[26] 47 U.S.C. § 252(e)(5).

[27] 47 C.F.R. § 51.803(b); see also *Local Competition First Report and Order*, 11 FCC Rcd at 16128, para. 1285.

[28] *Local Competition First Report and Order*, 11 FCC Rcd at 16128, para. 1285.

Federal Communications Commission                                              DA 02-2787

to "where a state commission fails to respond, within a reasonable time, to a request for mediation or arbitration, or fails to complete arbitration within the time limits of section 252(b)(4)(C)."[29] In contrast, section 252(e)(6) authorizes a party "aggrieved" by a state commission "determination under [section 252]" to bring an action in federal district court.[30] As the United States Court of Appeals for the District of Columbia Circuit recently ruled in *Global NAPs Inc. v. FCC*, these sections are mutually exclusive, and paragraph (5) preemption applies only where the state commission fails or refuses to make a "determination" that is reviewable under paragraph (6).[31]

    8.      In Anchorage, GCI and ACS's predecessor, ATU, arbitrated their interconnection agreement before the Alaska Commission in 1996. The Alaska Commission acted within the statutory time limits when it conducted the arbitration and approved the original agreement.[32] Accordingly, it did not "fail[] to respond, within a reasonable time, to a request for mediation ... or for a request for arbitration ... or fail[] to complete arbitration within the [established] time limits," which are the three grounds constituting a "fail[ure] to act" under the Commission's rules.[33] We do not understand ACS to argue that section 252(b)'s statutory time limits apply to the reopened proceeding. Indeed, ACS conceded on the record in that proceeding that the statutory limits were inapplicable to the reopened proceeding, and the Alaska Commission apparently relied on that concession.[34] Thus, we conclude that no statutory time limit applies to the ongoing Anchorage rate proceeding.

    9.      Nor is there any evidence that the Alaska Commission has otherwise "failed to act" in Anchorage.[35] We do not agree with ACS that the ongoing rate proceeding, which, at ACS's request, the Alaska Commission commenced in January 2000 to reexamine rates, constitutes a failure to interpret and enforce the 1996 interconnection agreement.[36] The Alaska Commission found that, notwithstanding their

---

[29] *Local Competition First Report and Order*, 11 FCC Rcd at 16128, para. 1285; 47 C.F.R. § 51.801(b).

[30] 47 U.S.C. § 252(e)(6).

[31] *Global NAPs, Inc. v. FCC*, 291 F.3d at 836-37.

[32] The record before us does not reflect the date on which ATU received the request for interconnection. Working from the July 1996 filing date of GCI's arbitration petition, however, the timing of the December order appears to be within the statutory parameters. *See* 47 U.S.C. §§ 252(b)(1), (b)(4)(C). In any event, ACS does not contend that the Alaska Commission violated the statutory time limits in the 1996-97 arbitration.

[33] *See* 47 C.F.R. § 51.801(b).

[34] *See supra* para. 5.

[35] *See* ACS Reply at 13-14. With respect to Anchorage, ACS also notes that the Alaska Commission's charter is scheduled to "sunset" on June 30, 2004, with operations winding down beginning July 1, 2003. ACS Petition at 5, 22. ACS argues that this schedule affords inadequate time for the Alaska Commission to resolve the Anchorage matter. ACS Petition at 22, 52. We find that it would be premature at this time to find that the "sunset" date will preclude the Alaska Commission from resolving this matter.

[36] *See* ACS Petition at 40 (citing *Starpower Communications, LLC Petition for Preemption of Jurisdiction of the Virginia State Corporation Commission Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996*, CC Docket No. 00-52, Memorandum Opinion and Order, 15 FCC Rcd 11277 (2000) (*Starpower Preemption Order*)). We find this matter to be readily distinguishable from the *Starpower* and *WorldCom Preemption Orders* upon which ACS relies. *See* ACS Petition at 40-42; ACS Reply at 13-15. In the *Starpower Preemption Order*, the Virginia Commission expressly declined jurisdiction and encouraged the parties to seek relief from this Commission. 15 FCC Rcd at 11278, para. 4. In contrast, here, the Alaska Commission opened a proceeding at ACS's request and has actively opposed the request for preemption. *See generally* RCA Comments. This matter is also distinguishable from the facts of *Petition of WorldCom, Inc. for Preemption of Jurisdiction of the Virginia State Corporation Commission Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996 and for Arbitration of Interconnection Disputes with Verizon-Virginia, Inc.*, CC Docket No. 00-218, Memorandum Opinion and Order, 16 FCC Rcd 6224 (2001) (*WorldCom Preemption Order*). In the *WorldCom Preemption Order*, the Virginia

(continued....)

| Federal Communications Commission | DA02-2787 |
|---|---|

temporary nature, the rates that it originally set in 1996 complied with section 252(c)(2) of the Act, which itself requires that arbitrated rates comply with the pricing standards set forth in section 252(d).[37] No party challenged this finding on appeal.[38] The current rate proceeding was initiated in January 2000.[39] We have not found it necessary to address whether or under what circumstances delay by a state commission in resolving an interconnection-related dispute can constitute a "failure to carry out its responsibility" under section 252.[40] We need not address that issue here. The Alaska Commission has not been dilatory in its handling of this proceeding since January 2000. In addition to overseeing and issuing frequent orders responsive to the parties' cost model dispute, the Alaska Commission set an interim and refundable rate promptly upon ACS's request (albeit not at the level ACS requested). Under these circumstances, we do not believe there has been a failure by the Alaska Commission in Anchorage "to carry out its responsibility" under section 252.

10. In Fairbanks, the Alaska Commission issued an order in August 2000 setting permanent rates.[41] ACS appealed this decision to federal court.[42] As discussed above, pursuant to section 252(e)(6), any final state commission "determination" under section 252 is subject to review in federal district court.[43] The Fairbanks rates are already the subject of a pending section 252(e)(6) appeal to federal court,

---

(...continued from previous page)
Commission expressly declined to apply federal law in arbitrating the interconnection agreement at issue and informed the parties that they could either proceed before it under Virginia law or take the matter to the this Commission. *See id.*, 16 FCC Rcd at 6224, para. 3. The Commission found that "by insisting upon arbitration pursuant to state law rather than the requirements of the Act, ... the Virginia Commission has failed to act to carry out its responsibilities under section 252." *Id.* at 6227, para. 5. Here, it is plain from the Alaska Commission's orders that it does not seek to apply state law. Rather, it seeks to set TELRIC rates in compliance with the federal statute. *See supra* note 17 and accompanying text. Even assuming that the Alaska Commission's application of federal law is improper, precedent makes it clear that this is not a basis for preemption under section 252(e)(5). *See American Communications Services, Inc., MCI Telecommunications Corp. Petitions for Expedited Declaratory Ruling Preempting Arkansas Telecommunications Regulatory Reform Act of 1997 Pursuant to Sections 251, 252, and 253 of the Communications Act of 1934, as amended*, CC Docket No. 97-100, Memorandum Opinion and Order, 14 FCC Rcd 21579, 21596, para. 32 (1999)("our current rules prevent preemption pursuant to section 252(e)(5), even if the state commission 'fails' to impose on incumbent LECs obligations required by federal law"). ACS can seek review of the merits of the Alaska Commission's decisions in federal court under section 252(e)(6).

[37] *See Order Resolving Arbitrated Issues* at 28; 47 U.S.C. §§ 252(c)(2), (d).

[38] *See* GCI Opposition at 7.

[39] *See* ACS Petition at 11; GCI Opposition at 8; RCA Comments at 4.

[40] *Global NAPs, Inc. Petition for Preemption of Jurisdiction of the Massachusetts Department of Telecommunications and Energy Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996*, CC Docket No. 99-354, Memorandum Opinion and Order, 15 FCC Rcd 4943, 4946, para. 7 (Com. Car. Bur. 2000) (unnecessary to determine whether, if state commission had failed to act, the Commission could have a duty to assume jurisdiction over proceeding involving interpretation of interconnection agreement), *rev. denied*, 16 FCC Rcd 4976 (2001), *rev. denied sub nom. Global NAPs, Inc. v. FCC*, 291 F.3d 832; *see Local Competition First Report and Order*, 11 FCC Rcd at 16128, para. 1285 ("the Commission interprets 'failure to act' to mean a state's failure to complete its duties in a timely manner").

[41] *See Order Approving and Modifying Arbitrator's Recommendation.*

[42] *See* ACS Petition at 19; GCI Opposition at 20-21; RCA Comments at 8 & Ex. B.

[43] Section 252(e)(6) provides in relevant part:

> In any case in which a State commission makes a determination under [section 252], any party aggrieved by such determination may bring an action in an appropriate Federal district court to

(continued....)

| Federal Communications Commission | DA 02-2787 |
|---|---|

which will review the merits of the Alaska Commission's determinations, thus, there is no basis for the Commission to assume jurisdiction under section 252(e)(5).[44] As noted, these sections are mutually exclusive and paragraph (5) preemption applies only where the state commission fails or refuses to make a "determination" that is reviewable under paragraph (6).[45] The Alaska Commission did make such a determination and ACS appealed that determination to federal court. Accordingly, the Commission cannot assert jurisdiction over the Fairbanks proceeding.[46]

11.   ACS also asks the Commission to assert jurisdiction over this proceeding under its section 201(b) "rulemaking authority to carry out the provisions of this Act which include §§ 251 and 252" and specifically include section 252(e)(5)'s statutory mandate that the "Commission ... act if [the] state will not act."[47] It argues that, without review by this Commission under section 252(e)(5), ACS is without a forum to review the Alaska rates and that, "[d]ue to the uniqueness of the situation in Alaska and the extreme hardship facing ACS, the [FCC] should step in where the RCA has failed to act to establish TELRIC-based UNE pricing."[48] With respect to both the Anchorage and Fairbanks proceedings, we agree with GCI and the Alaska Commission that ACS seeks a substantive review by this Commission

---

(...continued from previous page)
   determine whether the agreement or statement meets the requirements of section 251 and this section.

47 U.S.C. § 252(e)(6).

[44] See Global NAPs, Inc. v. FCC, 291 F.3d at 837 ("if the state agency takes final action disposing of the pending claim, that action can be undone only by direct judicial review in the appropriate forum").

[45] See id. at 836-37.

[46] Although ACS has complained that the Alaska Commission's assertion of the sovereign immunity defense in the Fairbanks appeal has left it without a forum that can provide effective relief, see ACS Petition at 42 n.151, we note that the Alaska Commission has now agreed to permit action against the individual Alaska Commissioners and the parties have been ordered to show cause why the matter should not be remanded to the district court for resolution on the merits. See Attachment to GCI Ex Parte. Thus the district court is the forum that can provide ACS with any appropriate relief. ACS and GCI disagree as to whether the FCC's Synthesis Model, which is the forward-looking cost model adopted by the FCC for the purpose of calculating universal service support, may appropriately be used or adapted to establish UNE rates. See ACS Petition at 15; GCI Opposition at 18; ACS Reply at 4. The Alaska Commission now appears to have rejected the use of this model in the Anchorage proceeding. See Order Selecting Cost Model at 2-3. Without attempting to assess whether the Alaska Commission's use of the Synthesis Model in Fairbanks was proper, we note that the Commission has generally cautioned that the Model was developed for the purpose of determining high cost support and may not be appropriate for other purposes, such as determining prices for UNEs. See Application by Verizon New England Inc., Bell Atlantic Communications, Inc. (d/b/a/ Verizon Long Distance), NYNEX Long Distance Company (d/b/a/ Verizon Enterprise Solutions), Verizon Global Networks Inc., and Verizon Select Services Inc., for Authorization to Provide In-Region, InterLATA Services in Maine, CC Docket No. 02-61, Memorandum Opinion and Order, 17 FCC Rcd 11659, 11675-76, n.107 (2002)(and orders cited therein).

[47] ACS Petition at 42-43, 46 (citing 47 U.S.C. §§ 201(b), 251, 252, 252(e)(5); AT&T Corp. v. Iowa Utilities Board, 525 U.S. 366, 378 (1999) (internal quotations omitted)).

[48] ACS Petition at 45. We understand ACS to rely on section 201(b) only in conjunction with section 252(e)(5). Section 201(b), provides, inter alia, that "[a]ll charges, practices, classifications, and regulations for and in connection with [interstate or foreign communication by wire or radio], shall be just and reasonable," and provides that "[t]he Commissioner [sic] may prescribe such rules and regulations as may be necessary in the public interest to carry out the provisions of this Act." 47 U.S.C.§ 201(b). To the extent that ACS relies upon section 201(b) as an independent basis for relief, it does not explain its argument and, without more, we reject it. See AT&T Corp. v. Iowa Utilities Board, 525 U.S. at 377-78 (Section 201(b) gives Commission authority to promulgate rules to implement sections 251 and 252 of the Act).

Exhibit 4

Page 7 of 9

of the merits of rate-making decisions of the Alaska Commission.[49] It asks this Commission to declare that the RCA's determination of UNE rates does not comport with applicable law and to declare that the UNE rates established by the RCA in Anchorage and Fairbanks are confiscatory.[50] As the *Global NAPs* court found, however, the statute does not authorize the Commission to sit as an appellate tribunal to review the correctness of state resolution of disputes.[51] Rather, section 252(e)(5) authorizes the Commission to take jurisdiction only when a state commission fails to act.

12.   ACS's petition rests on an interpretation of section 252(e)(5) fundamentally different than that adopted by the Commission and applied by the courts.[52] In essence, ACS argues that the Alaska Commission's decision was substantively incorrect for failing to apply the TELRIC standard properly and that this failure should be deemed a failure to act under section 252(e)(5). The possibility that a state commission may have committed error in rendering its decision does not, however, authorize the Commission to step in as the appropriate forum for reviewing that decision.[53] When the question presented is whether a state commission's determination under section 252 was correct on the merits, the remedy for a party seeking review of that determination is with the courts.[54] The use of section 252(e)(5)'s procedures as a vehicle for parties to bypass valid state commission determinations could not have been a result intended by Congress in its adoption of sections 252(e)(5) and (e)(6). A contrary interpretation of section 252(e)(5) would invite parties who are unhappy with a state commission's determination to use the Commission's preemption procedures to attempt to obtain a more favorable result. Thus, we cannot assume jurisdiction over the Alaska proceedings on the basis argued by ACS – that the Alaska Commission failed to apply the TELRIC standard properly in its rate-setting determinations.[55] That is an issue for the reviewing court, under section 252(e)(6).

---

[49] GCI Opposition at 25, 27-28, 33; RCA Comments at 10; *see* ACS Petition at 45 ("ACS is left without a forum to review the confiscatory effect of the UNE rates currently in effect in Fairbanks and in Anchorage, unless the Commission asserts it [sic] authority under section 252(e)(5). Therefore, Commission preemption of the state is the only effective remedy for ACS. ... *[T]he Commission should step in where the RCA has failed to act to establish TELRIC-based UNE pricing.*" (emphasis added)).

[50] ACS Petition at 4; *see also id.* at 31-36, 41, 45, 46, 52 (UNE rates in Anchorage and Fairbanks fail to comply with this Commission's TELRIC rules).

[51] *Global NAPs, Inc. v. FCC*, 291 F.3d at 837; *see* GCI Opposition at 30.

[52] *See Global NAPs, Inc. v. FCC*, 291 F.3d 832; *Local Competition First Report and Order*, 11 FCC Rcd at 16128, para. 1285

[53] *See, e.g., Petition for Commission Assumption of Jurisdiction of Low Tech Designs, Inc.'s Petition for Arbitration with Ameritech Illinois Before the Illinois Commerce Commission*, CC Docket No. 97-163, Memorandum Opinion and Order, 13 FCC Rcd 1755, 1774-75, para. 36 (1997) (no basis to examine the "underlying reasoning" of a state commission's decision even when petitioner argues that there was a failure to act because the state commission erroneously applied the law in rendering its decision).

[54] 47 U.S.C. § 252(e)(6).

[55] Accordingly, section 252(e)(5) provides no basis for this Commission to entertain ACS's argument that the Alaska Commission's rates are confiscatory. ACS also argues that, in the *Local Competition First Report and Order*, the Commission indicated its willingness to review UNE rates that may be confiscatory. ACS Petition at 43. In that Order, the Commission stated that "[i]ncumbent LECs may seek relief from the Commission's pricing methodology if they provide specific information to show that the pricing methodology, as applied to them, will result in confiscatory rates." *Local Competition First Report and Order* 11 FCC Rcd at 15872, para. 739; *see also Verizon Communications v. FCC*, 122 S. Ct. 1646, 1681 n.39 (2002)("The FCC ... is willing to consider a challenge to TELRIC ... but any challenger needs to ... show with 'specific information' that a confiscatory rate is bound to result."). ACS, however, does not argue that the TELRIC pricing methodology will result in confiscatory rates, so its reliance on the *Local Competition Order* is misplaced. Instead, it argues that "[t]he RCA's own faulty

(continued....)

8

Exhibit 4
Page 8 of 9

| Federal Communications Commission | DA02-2787 |
|---|---|

### IV. CONCLUSION

13. For the foregoing reasons, we deny ACS's petition for preemption of the jurisdiction of the Regulatory Commission of Alaska with respect to the determination of rates for unbundled network elements in Anchorage and Fairbanks.

### V. ORDERING CLAUSE

14. Accordingly, IT IS ORDERED that, pursuant to section 252 of the Communications Act of 1934, as amended, 47 U.S.C. § 252, and sections 0.91, 0.291 and 51.801(b) of the Commission's rules and 47 C.F.R. §§ 0.91, 0.291 and 51.801(b), the petition filed by ACS of Anchorage, Inc., and ACS of Fairbanks, Inc. on July 24, 2002 IS DENIED.

FEDERAL COMMUNICATIONS COMMISSION

William F. Maher, Jr.
Chief, Wireline Competition Bureau

---

(...continued from previous page)
methodology has resulted in confiscatory rates." ACS Petition at 44; *see also id.* at 46 ("ACS does not challenge TELRIC itself under the Fifth Amendment, but rather the confiscatory *effect* of the rates actually adopted by the RCA in Alaska."). ACS may challenge the RCA's rate-making determinations, including its application of TELRIC, in federal court under section 252(e)(6).