STATE OF ALASKA

THE ALASKA PUBLIC UTILITIES COMMISSION

Before Commissioners:  Sam Cotten, Chairman
Alyce A. Hanley
Dwight D. Ornquist
Tim Cook
James M. Posey

| | |
|---|---|
| In the Matter of the Application Filed by ALASKA COMMUNICATIONS SYSTEM, INC., for Authority To Acquire a Controlling Interest in the MUNICIPALITY OF ANCHORAGE d/b/a ANCHORAGE TELEPHONE UTILITY a/k/a ATU TELECOMMUNICATIONS, Holder of Certificates of Public Convenience and Necessity Nos. 120 and 513 Authorizing the Provision of Telecommunications Public Utility and Public Pay Telephone Service | U-98-173<br><br>ORDER NO. 7 |
| In the Matter of the Application Filed by ALASKA COMMUNICATIONS SYSTEM, INC., for Authority To Acquire a Controlling Interest in ATU LONG DISTANCE, INC., Holder of Certificate of Public Convenience and Necessity No. 476 | U-98-174<br><br>ORDER NO. 7 |

**ORDER HOLDING PROCEDURAL MATTERS IN ABEYANCE;
AFFIRMING ORAL CANCELLATION OF THE HEARING;
ACCEPTING STIPULATION; AND APPROVING
APPLICATIONS, SUBJECT TO CONDITIONS**

BY THE COMMISSION:

Introduction

On November 18, 1998, Alaska Communications Systems, Inc. (ACS), filed applications to acquire a controlling interest in the MUNICIPALITY OF ANCHORAGE d/b/a ANCHORAGE TELEPHONE UTILITY

a/k/a ATU TELECOMMUNICATIONS (ATU) and ATU LONG DISTANCE, INC. (ATU-LD).[1] According to the applications, ACS would acquire the assets of ATU and ATU-LD for $295 million.

ACS is a Delaware corporation licensed to do business in Alaska. Also according to the application, Fox Paine Capital Fund, LP presently owns 100 percent of the shares of ALEC Holdings, Inc. (AHI). AHI owns 100 percent of the shares of Alaska Communications Systems Holding, Inc. (ACS Holdings).[2] ACS Holdings owns 100 percent of the shares of ACS.

The applicant asserted that it would adopt ATU's and ATU-LD's existing tariffs for providing service. ACS asserted that it intends to fully utilize the expertise of ATU's present supervisory and technical employees and to maintain and improve the existing administration, service, and operations provided by ATU.

---

[1] ATU holds Certificate of Public Convenience and Necessity (Certificate) Nos. 120 and 513 authorizing it to furnish local exchange telephone service within/or around the Municipality of Anchorage and to furnish private pay telephone service in the same geographic area. ATU-LD holds Certificate No. 476 authorizing it to furnish intrastate interexchange telecommunications service.

The history of this proceeding has been set out in previous Orders and will not be repeated herein.

[2] ACS Holdings was formerly known as ALEC Acquisition Corporation. The applications in these proceedings were amended to reflect that change, and the amendments were discussed at hearing.

**Outstanding Procedural Matters**

On March 12, 1999, GCI COMMUNICATION CORP. d/b/a GENERAL COMMUNICATION, INC., and d/b/a GCI (GCI), filed an application for an order requiring disclosure of confidential information to certain decisionmakers and strategists.

On March 19, 1999, ACS filed a petition to classify records as confidential. On the same date, ACS filed its response to GCI's request for an order requiring disclosure of information. On March 19, 1999, the Commission issued a bench ruling denying GCI's application for an order requiring disclosure.[3]

On March 25, 1999, the Commission Staff (Staff) filed its opposition to classifying certain ATU-LD costs as confidential as well as its opposition to classifying Exhibit JHH-5 attached to the prefiled testimony of James H. Huesgen, as confidential.

On March 26, 1999, the Municipality of Anchorage (MOA) filed a motion for an expedited order at the conclusion of the hearing in this proceeding.

On March 31, 1999, ACS filed a motion to bar GCI from introducing into evidence portions of the prefiled written testimony that are beyond the scope of proceeding and a motion for expedited consideration of its motion to bar. On April 1, 1999, GCI filed its memorandum in opposition to ACS' motion for expedited consideration and its response to the MOA's motion for

---

[3]The bench ruling was issued during the prehearing conference held on March 19, 1999.

U-98-173(7)/U-98-174(7) - (4/9/99)
Page 3 of 10

an expedited order. On April 2, 1999, ACS filed its reply to GCI's opposition to the motion for expedited consideration.

On April 2, 1999, the Commission issued an oral ruling granting the petition to classify certain materials as confidential and denying the motion for expedited consideration of the motion to bar.[4]

During the hearing[5] held on April 6, 1999, the MOA moved that the Commission issue an order based on the record established in this proceeding without hearing. Also, at the onset of the hearing held April 6, 1999, GCI moved to withdraw from further participation in these proceedings. Staff opposed GCI's withdrawal or, in the alternative, requested the Commission to allow the withdrawal on the condition that the prefiled testimony and exhibits filed by GCI would be entered as evidence in the record in these proceedings. ACS requested that, if the motion to withdraw was granted, the Commission delay convening the hearing for one day.

The Commission issued a bench ruling granting GCI's request to withdraw without condition and rescheduled the hearing to convene on April 7, 1999. The Commission also issued a bench

---

[4]All parties were telephonically of the Commission's rulings.

[5]By Order U-98-173(3)/U-98-174(3), dated January 29, 1999, the Commission, among other things, affirmed its oral ruling adopting a hearing and filing schedule including scheduling these matters for hearing on April 6, 1999.

U-98-173(7)/U-98-174(7) - (4/9/99)
Page 4 of 10

affirmatively consistent with the public interest. ACS intends to maintain the current, experienced staff in the acquired utilities and reduce operating costs by reducing the workforce through attrition and retirement. ACS intends to operate under the current tariffs on file with the Commission.

In the stipulation, all parties concurred that it was appropriate to approve the applications with the following conditions:

> 1. ACS shall file a cost allocation manual (CAM) within 180 days of the date of Commission approval of the applications;
>
> 2. ACS shall retain an independent certified public accounting (CPA) firm to audit compliance with ACS's CAM on an annual basis and provide the results of that audit to the Commission;
>
> 3. ACS and ACS Holdings shall neither attempt to nor recover any acquisition adjustment arising from, or in connection with, its acquisitions of ATU and/or ATU-LD in rates;
>
> 4. ACS and ACS Holdings shall adopt the existing rates of ATU and ATU-LD, respectively;
>
> 5. ACS and ACS Holdings shall file formal adoption notices of the ATU and ATU-LD tariffs, respectively;
>
> 6. ACS shall file revenue-requirement, cost-of-service, and rate-design studies no later than six months after a full calendar year of operations;
>
> 7. ACS and ACS Holdings shall honor all contractual obligations currently imposed on ATU and ATU-LD, including without limitation, those associated with existing inter-connection agreements arising under or in connection with 47 U.S.C. §252;
>
> 8. ACS shall take reasonable steps to expand and improve service consistent with the representations made in its applications; and

      9. The provisions regarding the original conditions imposed on ATU-LD in Order U-96-40(1), dated September 10, 1996, shall apply as set forth in Order U-98-173(5), dated January 29, 1999.

The Commission has determined that the foregoing conditions are reasonable and should be accepted. The Commission concurs with the parties that adoption of a CAM is a reasonable method to ensure that cross-subsidization does not occur between ACS' regulated and nonregulated operations. The CAM submitted by ACS is subject to Commission approval.

The Commission has further determined that it is an appropriate safeguard to require an independent CPA firm to conduct an annual audit to ensure compliance with the CAM and to file that audit with the Commission. The independent audit shall be filed with the Commission at the time of filing ACS' annual reports under AS 42.05.451(b).

The Commission has determined that it is appropriate to exclude any acquisition adjustment from the rates ACS intends to charge its consumers. AS 42.05.441.

The Commission has further determined that it is appropriate for ACS to adopt the existing rates of ATU and ATU-LD at this time. Absent an earlier filing, ACS shall file revenue-requirement, cost-of-service, and rate-design studies after a full calendar year of operations. Those filings are due within six months after the first full calendar year of operations. Those studies shall use the calendar year of operations as the test year.

The Commission has determined that it is reasonable for ACS and ACS Holdings to file formal adoption notices of the ATU and ATU-LD tariffs, respectively, within thirty days of the date of closing.

Based on foregoing, the Commission concurs with the parties that the evidence in the record clearly supports a finding that ACS is fit, willing, and able to acquire a controlling interest in ATU and ATU-LD and that such acquisition is affirmatively consistent with the public interest. Accordingly, the applications of ACS to acquire controlling interest in ATU and ATU-LD are approved subject to the conditions set out in the stipulation, as accepted and discussed above.

In addition, the Commission observes that ATU and/or ATU-LD are parties to several other Commission proceedings (e.g., Docket U-93-20[6]) that were not a part of the discussion in the parties' stipulation, *supra*. With the acquisition of ATU and ATU-LD, ACS assumes the duties and obligations of those utilities, contractually, regulatory, and otherwise. Accordingly, ACS must fulfill the responsibilities of ATU and ATU-LD in such ongoing proceedings, and all conditions and limitations placed on the Certificates of those utilities continue to attach.

---

[6]Docket U-93-20 is entitled: *In the Matter of the Investigation into Rates and Charges Collected by the MUNICIPALITY OF ANCHORAGE d/b/a ANCHORAGE TELEPHONE UTILITY a/k/a ATU TELECOMMUNICATIONS for Services Without an Approved Tariff or Special Contract.*

U-98-173(7)/U-98-174(7) - (4/9/99)
Page 9 of 10

The Commission affirms its oral cancellation of the hearing scheduled for April 7, 1999, regarding these applications.

### ORDER

THE COMMISSION FURTHER ORDERS:

1. Outstanding procedural matters are held in abeyance as more fully discussed in the body of this Order.

2. The stipulation filed in these matters is accepted, as more fully discussed in the body of this Order.

3. The applications filed by Alaska Communications System, Inc., to acquire a controlling interest in the Municipality of Anchorage d/b/a Anchorage Telephone Utility a/k/a ATU Telecommunications and in ATU Long Distance, Inc., are approved, subject to the terms of the stipulation accepted and discussed in this Order and as otherwise conditioned herein.

4. The oral cancellation of the hearing in these proceedings is affirmed.

DATED AND EFFECTIVE at Anchorage, Alaska, this 9th day of April, 1999.

BY DIRECTION OF THE COMMISSION

( S E A L )