STATE OF ALASKA

THE REGULATORY COMMISSION OF ALASKA

Before Commissioners:	Mark K. Johnson, Chair
	Kate Giard
	Dave Harbour
	James S. Strandberg
	G. Nanette Thompson

| | |
|---|---|
| In the Matter of the Investigation of the Local Exchange Revenue-Requirement, Depreciation, Cost-of-Service, Rate Design Studies, and Tariff Rate Revisions Designated as TA429-120 and TA431-120 Filed by ACS OF ANCHORAGE, INC. d/b/a ALASKA COMMUNICATIONS SYSTEMS, ACS LOCAL SERVICE, and ACS | U-01-34<br><br>ORDER NO. 24 |

## ORDER ADDRESSING DEPRECIATION ISSUES AND REQUIRING FILINGS

BY THE COMMISSION:

### Summary

We establish the appropriate depreciation projection lives for ACS-AN[1] for its Digital Circuit Equipment, Metallic Aerial Cable, Metallic Underground Cable, and Metallic Buried Cable accounts (the Four Accounts). We require ACS-AN to file revised remaining life depreciation rates and revised schedules consistent with this decision.

### Background

In June, 2002, we reached a substantive decision on virtually all ACS-AN depreciation issues.[2] We later learned that our decision relied, in part, on erroneous

---

[1] ACS of Alaska, Inc. d/b/a Alaska Communications Systems, ACS Local Service, and ACS (ACS-AK).

[2] Order U-01-34(15)/U-01-66(5)/U-01-82(11)/U-01-83(11)/U-01-84(11)/U-01-85(11)/U-01-86(11)/U-01-87(11), dated June 6, 2002, (Order U-01-34(15)).

U-01-34(24)- (08/22/03)
Page 1 of 13

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

1  data entered into the record by ACS-AN. At ACS-AN's request we reopened the record
2  on a limited basis to allow further consideration of the depreciation service lives
3  associated with the Four Accounts.
4      The previous ACS-AN depreciation case was based on a 1995 study and
5  was adjudicated in Docket U-96-78. ACS-AN believes that its current average service
6  lives for its accounts should be derived from that docket. However when ACS-AN
7  submitted its pending Depreciation Study, it incorrectly listed the current lives for the
8  Four Accounts developed in the penultimate depreciation study adjudicated in Docket
9  U-88-18. ACS-AN asked us to reopen the record in Docket U-01-34 so that it could
10  update the current lives for the Four Accounts to recognize the Docket U-96-78 data
11  rather than the older Docket U-88-18 data. We allowed ACS-AN to supplement the
12  record[3] and conducted a hearing on the supplemental testimony on June 17, 2003.
13      None of the parties changed its primary position in this supplemental phase
14  of the proceeding. Our decision in Order U-01-34(15) was affected by the error because
15  we retained the "current" service lives to set depreciation rates for the Four Accounts.
16  What the record called the "current" service lives were actually rates set in the
17  penultimate depreciation study. We reopened the record to evaluate the impact of this
18  error and the options for correcting it.

---

[3]Order U-01-34(19)/U-01-66(8)/U-01-82(14)/U-01-83(14)/U-01-84(14)/
U-01-85(14)/U-01-86(14)/U-01-87(14), dated December 16, 2002.

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

Discussion

ACS-AN, GCI[4] and the Public Advocacy Section (PAS)[5] participated in this proceeding. Both ACS-AN and GCI developed proposed projection lives for each of the Four Accounts.

Digital Circuit Equipment

ACS-AN believes that competitive effects and technological changes, including conversion to packet switching technologies, have reduced the expected useful life for Digital Circuit Equipment. ACS-AN developed a service life of approximately 7.9 years for the account based on a complex methodology involving different life estimations depending upon plant function ("transport" or "access") and the year of installation.[6] The ACS-AN proposal equates to an approximate 22 percent reduction from the last "approved" projection life of 9.2 years in Docket U-96-78.[7] This 22 percent reduction would be the second major reduction in depreciation life proposed for this account in a relatively short term and would be in addition to the 29 percent reduction in service life we authorized for ACS-AN in its last depreciation study in Docket U-96-78.[8] The ACS-AN proposed 7.9 year life is approximately 28 percent shorter than the shortest life (11 years) in the Federal Communication Commission (FCC) depreciation range for this account.

---

[4]GCI Communication Corp. d/b/a General Communication Inc., and d/b/a GCI.

[5]The Office of the Attorney General (AG) superceded the Public Advocacy Section in these proceedings. *See Notice of Election to Participate*, filed by the Office of the Attorney General on July 1, 2003.

[6]*See* Order U-01-34(15), at 12-15; Depreciation Study, filed July 2, 2001, at Results 6 for further information.

[7]In the last study we approved the remaining life upon which our Staff then estimated a projection life of 9.2 years.

[8]The 13-year service life for this account (from Docket U-88-18) was effectively reduced to 9.2 years through the depreciation study in Docket U-96-78.

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

U-01-34(24)- (08/22/03)
Page 3 of 13

GCI objected to ACS-AN's methodology, claiming it to be generally unreasonable. GCI stated that circuit equipment had gone through many technological changes over time, including the conversion from Analog to Digital technology, but that those changes were already reflected in the historical life indications, which GCI argues are longer than 13 years. GCI proposed a 13-year life for this account, which is at the high end of the FCC depreciation range for this account.

When we evaluated this matter before issuing Order U-01-34(15), we were not convinced that ACS-AN's migration to packet-based networks would occur at the rate projected by ACS-AN. There was no evidence that ACS' board approved plans for proposed upgrades to the ACS network consistent with the estimations in the ACS depreciation study. We did not find adequate support for ACS complex depreciation methodology. As a result, we did not accept the ACS proposed lives for digital circuit equipment for any of the ACS companies. We do not see specific evidence that the material reduction in service life for the Digital Circuit Equipment account will occur as ACS-AN has proposed.

Instead of accepting the ACS proposal, in Order U-01-34(15) we retained what we believed at that time to be the current life for the circuit equipment account (13 years). The 13-year "current" life estimate was based on 1980s data and was the result of a review conducted several years ago in Docket U-88-18. In light of the record correction, we now give little weight to the Docket U-88-18 analysis and the 13-year life.

While GCI supports a 13-year life, we are not convinced that it is reasonable to adopt 13 years because it is at the high end of the FCC range. We consider it more likely that with the level of competition and technological changes ACS-AN faces, the Digital Circuit Equipment account will experience a useful life at or below the low end of the FCC range (11 years).

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

We note that ACS-AN argued that use of a 13-year life would lead to an unusually low depreciation rate (5.5 percent) compared to other local carriers for which it had sample data (ranging between 6 percent and 14.9 percent).[9] However, it is not meaningful to compare depreciation rates <u>between companies</u> as the rate may vary for a variety of reasons that have no relationship to the expected useful life of the plant. For example, otherwise identical companies may have drastically different remaining life depreciation rates if they have different levels of accumulated depreciation.[10] We note however that a 5.5 percent rate for the Digital Circuit Equipment account would be a dramatic change from ACS-AN's last approved depreciation rate established in Docket U-96-78 (11.8 percent). The record in this proceeding is insufficient to make such a material reduction to the existing depreciation rate. We will not adopt GCI's proposed 13-year life for this account.

Because we find neither ACS-AN's nor GCI's proposal reasonable, we must explore other alternatives. ACS-AN argued if we do not accept its proposal then we should use the 9.2 year corrected "current" life from the decision in Docket U-96-78 for developing the depreciation rate for the Digital Circuit Equipment account. ACS-AN states that using a 9.2-year projection life will result in a 9.1 percent remaining life depreciation rate. ACS-AN states that a 9.2-year projection life would be reasonable, even though the other ACS affiliates have projection lives ranging from 12 to 12.5 years,

---

[9] *See Prefiled Testimony of Terence Cooney on Behalf of ACS-Anchorage*, filed February 28, 2003, at 15-16.

[10] Accumulated depreciation levels essentially reflects the amount of depreciation already "recovered" by the company.

U-01-34(24)- (08/22/03)
Page 5 of 13

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

because ACS-AN has more wire centers, denser business clusters, higher levels of competition, and does not "hand off" communications to toll earth stations.[11]

We find ACS-AN's arguments to use a 9.2-year projection life and the resultant 9.1 percent depreciation to be acceptable. This figure appears to best reflect ACS-AN's unique competitive position.

We use the 9.2-year figure, because we are convinced technology and competitive forces will drive ACS-N investment. We are taking this position considering the torrid pace of technology in digital circuit equipment, and the unique circumstances in the Anchorage market. For the specific case of digital circuit equipment, this is a more appropriate approach than to employ the FCC guidelines.

Metallic Cable Accounts

The remaining depreciation issues involve treatment of the Metallic Aerial Cable, Metallic Underground Cable, and Metallic Buried Cable accounts (i.e., the "Metallic Cable" Accounts).

As with the Digital Circuit Equipment Account, ACS-AN believes that the expected useful life for the Metallic Cable Accounts has been reduced due to technological changes and obsolescence factors related to competition. ACS-AN states that the cable network will face technological change to provide enhanced services and to concentrate traffic for transmission over more reliable and cost effective optical facilities. ACS-AN proposed a composite average service lives for the Metallic Cable Accounts ranging between 17.2 and 19 years based on the ACS-AN methodology involving weighting of different life estimations depending upon plant function ( "feeder",

---

[11]*Prefiled Testimony of Terence Cooney Filed on Behalf of ACS-Anchorage*, at 16-17.

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

U-01-34(24)- (08/22/03)
Page 6 of 13

Exhibit K
Page 6 of 15

1  "distribution" and "drop" ); the distributions of those plant functions within each account[12];
2  the year of plant installation, and other factors.[13]
3  GCI objected to ACS-AN's methodology, claiming it to be generally
4  unreasonable. GCI states that ACS-AN does not account for its plant in a manner that
5  allows final retirement data to be recorded by function. Therefore GCI asserts that
6  ACS-AN's estimates cannot be relied upon. GCI claims that the potential for stranded
7  cable is limited, especially given the current fill rate for ACS-AN copper cable and that
8  ACS-AN has made little effort to replace its copper plant. GCI also states that the 75.7
9  percent reserve ratio for aerial plant suggests that the depreciation rate for this account
10 may be too high as retirements are not occurring at the levels anticipated in the Docket
11 U-96-78 study. GCI states that there were so few retirements for aerial and underground
12 plant that ACS-AN could not perform a statistical life analysis. GCI proposes that we
13 adopt the lives we authorized in Order U-01-34(15),[14] stating that these lives are within
14 the FCC range and supported by the life indicators.
15 In Order U-01-34(15), we concluded that ACS-AN's methodology for the
16 Metallic Cable Accounts was overly complex, burdensome, difficult to audit and highly
17 susceptible to error. We did not find adequate support for its complex methodology. We
18 were not convinced of the accuracy of the assumptions used in the ACS-AN analysis,
19 including its belief that the proportion of feeder, distribution, and drop facilities would be

---

[12]For example, ACS-AN estimated that for both Metallic Aerial and Metallic Buried cable, approximately 30 percent of the plant was comprised of feeder, 55 percent was comprised of distribution, and 15 percent was comprised of drop facilities.

[13]See Order U-01-34(15), at 12-15; Depreciation Study, filed July 2, 2001, at Results 6 for further information.

[14]25 years for aerial, 30 years for underground, and 30 years for buried cable.

U-01-34(24)- (08/22/03)
Page 7 of 13

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

1  roughly the same for each of the ACS local affiliates or that the identified proportions of
2  each were accurate.
3    We also were not convinced that ACS-AN would convert its network to
4  broadband and fiber services at the speed it proposed. ACS-AN argues that as it
5  modernizes its outside plant and moves its electronics outward into the network, metallic
6  plant will be replaced by fiber.[15] However, the record indicates that only about 10
7  percent of ACS-AN digital loop carrier systems were actually placed on fiber facilities
8  while the residual 90 remain on metallic.[16] This suggests that metallic plant continues to
9  be an integral part of the ACS-AN network even though ACS-AN has increased the level
10 of electronics and derived circuits in its network. There was also no evidence that ACS'
11 board had firm plans for the ACS network to be upgraded to fiber within any specific time
12 period. All of the ACS-AN proposed lives for the Metallic Cable Accounts were below the
13 Federal Communication Commission (FCC) depreciation projection life ranges for these
14 accounts.
15   In Order U-01-34(15) we did not accept the proposed lives for Metallic
16 Cable Accounts for any of the ACS companies. No new evidence has been presented
17 upon reopening to convince us that we erred on this point. We are not convinced that
18 the changes in service life for the Metallic Cable Accounts will occur as ACS-AN has
19 proposed.
20   Instead of accepting the ACS proposal in Order U-01-34(15) we retained
21 what we believed at the time to be the current lives for the Metallic Cable Accounts.
22 These "current" life estimates were based on 1980s data and were the result of a review
23 conducted several years ago in Docket U-88-18. In light of the record correction, we

---

[15]Depreciation Study at 40.
[16]Tr. at 1139-40.

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

U-01-34(24)- (08/22/03)
Page 8 of 13

Exhibit K
Page 8 of 15

now give little weight to the Docket U-88-18 analysis and those life projections. With the impact of technology and competition, there is little reason to consider the Metallic Cable Account lives developed in Docket U-88-18 reasonable.

While GCI supports our decision in Order U-01-34(15), we do not have sufficient evidence in the record to adopt a 25-year life for the Metallic Arial Cable account, or the 30-year lives for the Metallic Underground and Buried Cable accounts. These proposed lives are either at the high end or outside of the FCC range.[17] We believe it more likely that with the level of competition and technological changes ACS-AN faces, the Metallic Cable Accounts will experience a useful life at the low end of the FCC ranges. Further GCI offers little persuasive evidence in support of its proposed lives.

Finding neither ACS-AN's nor GCI's proposal reasonable, we must explore other alternatives. ACS-AN argues that if we do not accept its proposal then we should adopt the corrected "current" lives from the decision in Docket U-96-78 (i.e., 22.2 years for aerial, 23 years for underground, and 19.7 years for buried cable) to develop the depreciation rates for the Metallic Cable Accounts.

We are not convinced that using the "current" lives would yield reasonable results. As indicated, the current lives were developed based on the results of the Docket U-96-78 study. GCI provided evidence that the study assumptions in Docket U-96-78 were inaccurate and overestimated the metallic cable retirements by $14.7M or 60.2 percent. This is strong evidence that we should not rely on the results from Docket U-96-78 in regards to the ACS-AN Metallic Cable Accounts.

---

[17]GCI incorrectly asserts that a 30-year life for Buried Cable is within the FCC Range (20-26 years).

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

U-01-34(24)- (08/22/03)
Page 9 of 13

Exhibit K
Page 9 of 15

ACS-AN responded to GCI by stating that ACS-AN cannot retire any cable sheath until all circuits in that sheath are no longer active and that as a result retirement data was not appropriate for determining depreciation accruals or evaluating the reasonableness of the study in Docket U-96-78.[18] ACS-AN refers to a "technological substitution" approach as a surrogate for review of traditional retirement data. ACS-AN states that if projected substitutions were tracked against actual results, the ACS-AN judgment based on the study in Docket U-96-78 would be on target.[19]

ACS-AN's substitution approach does not support the accuracy of the study in Docket U-96-78. While some circuits may have been "substituted" from metallic to fiber plant as anticipated in the U-96-78 study, this begs the question of whether the study accurately predicted what would occur to metallic cable plant, especially given the growth in circuits experienced by ACS-AN, continued use Digital Loop Carrier systems over metallic cable plant, and existing metallic cable fill rates. GCI observes that ACS-AN does not deny that copper feeder cable fill for ACS-AN remains high in some locations.[20] ACS-AN admits that growth in demand increased copper feeder utilization on many routes. Continued high fill rates and limited metallic cable retirements are inconsistent with ACS-AN's assertion that technology will cause significant and expeditious obsolescence of metallic cable plant. We conclude that ACS-AN has not demonstrated that we can rely on the last study to predict the expected service life for metallic plant.

---

[18]*Prefiled Reply Testimony of Terence J. Cooney on Behalf of the ACS LECS*, filed January 18, 2002, at 21-22; *Prefiled Reply Testimony of Terence J. Cooney on Behalf of ACS-Anchorage*, filed May 9, 2003, at 8.

[19]*Prefiled Reply Testimony of Terence J. Cooney on Behalf of ACS-Anchorage*, filed May 9, 2003, at 8.

[20]See *Prefiled Reply Testimony of Terence J. Cooney on Behalf of the ACS LECS*, filed January 18, 2002, at 23.

U-01-34(24)- (08/22/03)
Page 10 of 13

Exhibit K
Page 10 of 15

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

We also note that the Docket U-96-78 study was based on 1994 data. Since then, ACS-AN's network expanded by 70 percent; investment in aerial plant increased by 17 percent; and investment in buried plant increased by 25 percent.[21] This suggests that significant network changes have occurred since the last study, making it less likely we can rely on the results of the historic study.

ACS-AN also argues that the Docket U-96-78 study is accurate because the study predicted that 24 percent of the circuits would migrate from copper cable by 2000; and data shows that 22 percent of ACS-AN circuits migrated from copper feeder cable to carrier based technology.[22] However, while 22 percent of the circuits may have been converted to carrier-based technology, approximately 90 percent of the carrier-based circuits remain on metallic facilities. This does not provide clear evidence that the 1995 study was accurate. We are not convinced that the Docket U-96-78 study lives are accurate for the ACS-AN Metallic Cable Accounts. We will not use the Metallic Cable Account lives derived from that study for purposes of setting future depreciation rates.

The record does not support continuation of the existing Metallic Cable Account lives, preservation of the Order U-01-34(15) decision lives, or adoption of either the pending ACS-AN or the GCI proposal in this proceeding. We conclude that the best remaining option is to select a service life for each of the Metallic Cable Accounts at the low end of the FCC range (20 years for aerial, 25 years for underground, and 20 years for buried plant). We select from the low end of the FCC range because ACS-AN faces a high level of retail competition in much of its market. Using the low end of the FCC

---

[21]See *Prefiled Testimony of Terence J. Cooney on Behalf of ACS-Anchorage*, at 12, 15. The percent changes in aerial plant and buried plant reflect the 1995 to 2000 time interval; the changes in network expansion refers to the period between 1995 and the 2000 Depreciation Study.

[22]*Prefiled Reply Testimony of Terence J. Cooney on Behalf of the ACS LECS*, filed January 18, 2002, at 22-23.

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

U-01-34(24)- (08/22/03)
Page 11 of 13

range provides for a reasonable depreciation rate as it reflects a national standard adopted by a regulatory body with knowledge and experience with the telecommunications industry.

We recognize that the lives we have selected for the ACS-AN Metallic Cable Accounts are longer than those we adopted for ACS-AK[23] and for ACS-N.[24] We note however that there are material differences between ACS-AN and its affiliates. ACS-AN represents a more urban market than either ACS-AK or ACS-N. ACS-AN has only "migrated" approximately 22 percent of its copper feeder plant to carrier based technology compared to ACS-AK at 76 percent and ACS-N at 61 percent.[25] ACS-AK and ACS-N receive federal universal service support while ACS-AN does not, potentially affecting the rate of investment in new technology. The companies face different climate and other environmental factors (e.g., permafrost) that may also affect the rate of retirement. While ACS-AN faces greater competition than ACS-AK and ACS-N, it is not evident that this greater level of competition has necessarily led to a faster rate of retirement of metallic cable facilities then its affiliate companies. We conclude that it is reasonable for us to develop different lives for the ACS-AN Metallic Cable Accounts compared to those for ACS-AK and ACS-N.

---

[23] ACS of Alaska, Inc. d/b/a Alaska Communications Systems, ACS Local Service, and ACS (ACS-AK).

[24] ACS of the Northland, Inc. d/b/a Alaska Communications Systems, ACS Local Service, and ACS (ACS-N).

[25] *Prefiled Reply Testimony of Terence J. Cooney on Behalf of the ACS LECS*, filed January 18, 2002, at 23.

U-01-34(24)- (08/22/03)
Page 12 of 13

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

**Filing Required**

We require ACS-AN to update its Depreciation Study Results Section schedules consistent with the decisions in this order by September 10, 2003. GCI and the AG shall file any objections to those depreciation schedules by September 19, 2003.

## ORDER

THE COMMISSION FURTHER ORDERS:

1. By 4:00 p.m., September 10, 2003, ACS of Anchorage, Inc. d/b/a Alaska Communications Systems, ACS Local Service, and ACS shall file revised depreciation schedules consistent with this order.

2. By 4:00 p.m., September 19, 2003, GCI Communication Corp. d/b/a General Communication Inc., and d/b/a GCI, and the Office of the Attorney General shall file any objections to the revised depreciation schedules.

DATED AND EFFECTIVE at Anchorage, Alaska, this 22nd day of August, 2003.

BY DIRECTION OF THE COMMISSION
(Commissioner Dave Harbour and Kate Giard, not participating,
and Commissioner G. Nanette Thompson, dissenting.)

(S E A L)

U-01-34(24)- (08/22/03)
Page 13 of 13

STATE OF ALASKA

THE REGULATORY COMMISSION OF ALASKA

Before Commissioners:
Mark K. Johnson, Chair
Kate Giard
Dave Harbour
James S. Strandberg
G. Nanette Thompson

In the Matter of the Investigation of the Local Exchange Revenue-Requirement, Depreciation, Cost-of-Service, Rate Design Studies, and Tariff Rate Revisions Designated as TA429-120 and TA431-120 Filed by ACS OF ANCHORAGE, INC. d/b/a ALASKA COMMUNICATIONS SYSTEMS, ACS LOCAL SERVICE, and ACS

U-01-34

ORDER NO. 24

### DISSENTING STATEMENT OF COMMISSIONER G. NANETTE THOMPSON

TO ORDER NO. 24. entitled:

### ORDER ADDRESSING DEPRECIATION ISSUES AND REQUIRING FILINGS
(Issued August 22, 2003)

I dissent from the majority's decision to adopt a 9.2-year projection life for the Digital Circuit Equipment Account. Based on a review of the record, the Federal Communication Commission (FCC) ranges for this account, as for the others disputed here, is more reasonable. Since 1980, the FCC has set ranges of reasonable depreciation rates for incumbent price-cap companies to simplify the process and eliminate the need for depreciation studies.[1] The FCC lives are based on a review of actual data from many states. The FCC analyzes the data using forward-looking concepts.

---

[1] In Re 1998 Biennial Regulatory Review—Review of Depreciation Requirements, CC Docket No. 98-137.

U-01-34(24) Dissenting Statement of
Commissioner G. Nanette Thompson (08/22/03)
Page 1 of 2

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

1    Use of a projection life from the low end of the FCC ranges provides
2 ACS-AN[2] with ability to recover its investment within a reasonable time frame. The
3 record does not provide evidence that allows me to find that ACS-AN's plans to expedite
4 its investment schedule are anything more than speculative. Cross-examination on
5 GCI's[3] position revealed the unreliability of the data upon which GCI's position was
6 based. Cross-examination of the ACS-AN's witnesses likewise revealed the unreliability
7 of ACS-AN's methodology. A decision to adopt the low-end of the FCC range is
8 consistent with our other decisions in this order and more reasonable than any of the
9 other options in the record.

_____
G. Nanette Thompson, Commissioner

---

[2] ACS of Alaska, Inc. d/b/a Alaska Communications Systems, ACS Local Service, and ACS (ACS-AK).

[3] GCI Communication Corp. d/b/a General Communication, Inc., and d/b/a GCI.

U-01-34(24) Dissenting Statement of
Commissioner G. Nanette Thompson (08/22/03)
Page 2 of 2

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533