PUR Slip Copy                                                                Page 20
2004 WL 2492569 (N.J.B.P.U.)
**(Cite as: 2004 WL 2492569 (N.J.B.P.U.))**

The Board further rejects AT&T's renewed argument concerning the Board's review of depreciation lives and cost of capital without further analysis of other inputs to VNJ's LINE prices at this time. In its opposition to AT&T's Motion, Verizon argues that the Board properly exercised agency discretion to reopen the LINE proceeding to adjust the cost of capital and depreciation inputs in light of the FCC's TRO directives. Verizon also argues that AT&T has misinterpreted the Seventh Circuit's decision in <u>AT&T Communications, Inc. Illinois Bell Tel. Co., 349 F.3d 402, 408 (7th Cir. 2003)</u>, and that nothing in that decision precludes the limited action taken by the Board. The Board agrees with Verizon and notes that it has previously addressed this very issue and determined that its decision to limit its review to two UNE rate elements was both lawful and procedurally sound. [FN226] In its Motion for Reconsideration AT&T merely reiterates its former argument in opposition to the Board's decision. Said argument having already been carefully considered and rejected by the Board and in the absence of newly presented evidence, the Board declines to reconsider its decision.

LOOP PRICING

Positions of the Parties

**\*25** In its Motion for Reconsideration, Verizon requests that the Board reopen its LINE proceeding with respect to loop pricing. VNJ maintains that the recent D.C. Circuit decision in USTA II invalidates the Board's previous decision related to the level of Integrated Digital Loop Carrier ('IDLC ') utilized in the network. According to VNJ, the D.C. Circuit's decision had the effect of substantially revising the business of providing UNEs to CLECs from one that relies primarily on the LINE Platform of elements ('UNE-P') to one that utilized LINE loops ('UNE-L') and transport. [FN227] As Verizon sees it, the USTA II decision effectively eliminates unbundled switching as a network element required to be provided to CLECs at TELRIC rates. [FN228]

VNJ also asserts that the Board's March 6, 2002 UNE Order, and the rates set pursuant thereto ' were premised on the Board's assumption that a forward-looking network would utilize a high level of IDLC to provide UNE-P to CLECs. However, the Company argues that IDLC is incapable of providing the unbundled loops which will, in VNJ's opinion, constitute the sole means by which UNEs are provided to CLECs going forward. Therefore, VNJ argues that the Board must reopen the UNE proceeding to reconsider UNE-L rates. [FN229]

In reply to the RPA's opposition brief, VNJ rejects the notion that it is precluded from raising the IDLC issue by the Stipulation and Agreement it entered into with the Board in settlement of the civil matter entitled Verizon New Jersey v. New Jersey Board of Public Utilities et al., since this Agreement does not preclude other issues being revisited by the Board. [FN230] Moreover, VNJ alleges that the RPA's claim that the doctrines of waiver and judicial estoppel prohibit the Board from re-evaluating its IDLC assumption. VNJ argues that it never represented to the FCC that the Board-established UNE rates were TERLIC compliant. [FN231] VNJ also claims that it is entirely appropriate for it to request that the Board modify its prior decision in light of a specific change in circumstances that 211 supports the review, namely, the USTA II decision. [FN232]

AT&T opposes a reopening of the UNE-L rate issue by reiterating its argument that the Board may not address discrete rate components in this proceeding, but must leave existing rates in place or address all UNEs in setting new rates. [FN233] AT&T also disputes VNJ's interpretation of the USTA II decision. AT&T asserts that the D.C. Circuit set aside the FCC's nationwide finding that CLECs would be impaired without unbundled access to mass market ILEC switching because the FCC had unlawfully delegated to state commissions its authority to make a 'granular' impairment determination and the FCC's justification for its nationwide impairment finding was insufficient. AT&T claims that the Court did not eliminate UNE-P, as VNJ suggests, but in fact remanded the 234 unbundled switching issue to the FCC for further rulemaking. [FN234]

**\*26** MCI briefly addressed the IDLC issue by asserting that VNJ's request for a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUR Slip Copy                                                            Page 21
2004 WL 2492569 (N.J.B.P.U.)
**(Cite as: 2004 WL 2492569 (N.J.B.P.U.))**

reopening of the IDLC issue should only be granted as part of a complete reopening if the UNE 211 proceeding record. [FN235]

The RPA opposes Verizon's request to reopen the record with respect to the IDLC issue. The RPA argues that the Stipulation and Agreement between VNJ and the Board arising out of the law suit entitled Verizon New Jersey, Inc. v. Board of Public Utilities, et al. embodied an agreement between the parties that only two issues, cost of capital and depreciation, would be re-examined by the Board. According the RPA, VNJ is precluded by this Agreement from requesting that the Board revisit any other aspect of UNE rates. [FN236]

The RPA also argues that Verizon is precluded by the doctrines of waiver and judicial estoppel from claiming that the Board's resolution of the IDLC issue in its March 6, 2002 final UNE Order resulted in non-TELRIC rates. [FN237] The RPA argues that Verizon's representations to the FCC that the UNE rates set by the Board in 2002 were TELRIC-compliant, which resulted in VNJ receiving FCC approval to offer long-distance service in New Jersey under Section 271 of the 1996 Telecommunications Act, preclude Verizon 238 from taking a different position now simply because its interests have changed. [FN238]

Board Discussion

We disagree that VNJ's request for a limited reopening of the proceeding to examine the Board's IDLC assumptions is warranted at this time. The Board rejects Verizon's far-reaching interpretation of the USTA II decision offered in support of its request. Nowhere in this decision does the D.C. Circuit expressly eliminate UNE-P as a viable means for providing telephone service for CLECs or require that UNE-P customers be migrated to UNE-L. Rather, as AT&T points out, the Court invalidated the FCC's mass-market switching impairment finding for procedural reasons and due to a lack of sufficient basis in the record. The Court then remanded the matter to the FCC for further rulemaking. Thus, it is at best premature to assume, as VNJ apparently does, that CLEC's are now effectively required to migrate to UNE-L. Such an assumption would require the Board to anticipate, in an entirely speculative manner, what action the FCC will take on this issue. This the Board declines to do.

It follows that Verizon has provided no grounds for reopening the Board's UNE proceeding with regard to IDLC at this time. Should new federal rules or other FCC action necessitate such a reopening in the future, the Board is prepared to revisit the issue at that time. [FN239]

VERTICAL FEATURE SWITCHING COSTS

During the hearings held by the Board in connection with this proceeding, AT&T submitted rebuttal testimony alleging that VNJ had improperly weighted five of the vertical features in the vertical feature study resulting in an overstatement of the switch port costs by $1.25 per month. [FN240] AT&T argued that in the absence of actual cost data, the three features should have a zero cost value attributed to them. In response, VNJ proffered testimony asserting that the Telcordia SCIS model submitted in this proceeding produced reasonable costs estimates for the vertical features at issue. [FN241] Although not identified in the Order reopening the UNE matter, the Board determined that reviewing the issue of vertical feature costs would further its efforts to ensure that lawful, TELRIC compliant rates were produced. The Board therefore determined that review of this issue was proper. [FN242]

*27 After careful and thorough review of both the AT&T and VNJ methodologies, the Board concluded that both approaches failed to properly capture the appropriate feature costs for the switch technologies where no actual cost data is available. The Board rejected VNJ's proxy approach as unjustifiably leading to higher switching costs. The Board similarly rejected AT&T's methodology as failing to capture actual vertical feature costs that VNJ incurred in the provision of service. [FN243]

In response to this dispute, Board Staff developed an alternative cost allocation that utilized the known feature costs for each switch technology. In its analysis,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUR Slip Copy                                                                    Page 22
2004 WL 2492569 (N.J.B.P.U.)
**(Cite as: 2004 WL 2492569 (N.J.B.P.U.))**

Staff examined the actual known cost data that was developed in the SCIS model for both originating and terminating features where complete cost data was available by switch technology for each feature being offered. Based on the data, Staff developed two separate cost allocation factors: one for Originating Features and one for Terminating features. The resulting ratios were used to allocate the known feature costs by switch technology to the switch technology or technologies where actual cost data was unavailable. [FN244]

The Board found that Staff's weighting methodology was more accurate than AT&T's or Verizon's, because it took into account that fact that each switch technology has its own unique cost characteristics and recognizes that there is a variation in costs among the switch types utilized by VNJ. Staff's methodology also takes into account the variation in costs between both originating and terminating features by using a specific allocation factor for each type of feature. The Board also invited the parties to submit comments on Staff's methodology. [FN245]

Positions of the Parties

On May 14, 2004 AT&T and VNJ submitted comments in response Staff's alternative switch methodology. Both AT&T and VNJ criticize the methodology. According to AT&T, Staff's approach incorrectly includes Warm Line and Home Intercom features in developing its ratios. Moreover, AT&T argues that an alternative methodology cannot bridge the gap caused by the lack of actual SCIS cost algorithms. [FN246] AT&T asks the Board to disallow what it describes as the undocumented costs pending a revised model with properly documented cost algorithms.

VNJ avers that Staff's approach understates the forward-looking cost that the Company could reasonably be expected to incur. [FN247] Therefore, according to VNJ, the Board should accept the SCIS calculations because they represent a more reasonable approach than Staff's alternative methodology. Alternatively, VNJ suggests that Staff should modify its ratio to, as VNJ sees it, more accurately estimate the relationship between the total forward looking feature costs for the three switch technologies, i.e., develop a ratio based upon total originating and terminating feature costs instead of separate ratios for originating and terminating features. [FN248] In support of its position, VNJ contends that because the originating and terminating feature investment is recovered in the UNE port charge, there is no rational basis for separately calculating originating and terminating feature investment relationshipS. [FN249]

**\*28** In its petition for reconsideration, Verizon reiterates its main arguments concerning Staff's modifications to the SCIS Model and requests that the Board modify its Order to establish vertical feature costs based upon the methodology in the Telcordia SCIS Model. VNJ also asks the Board to reconsider its decision with respect to the Board's alternative switching methodology. [FN250] According to the Company, the Board's alternative methodology was presented after the close of the evidentiary record and therefore the Board should adopt the SCIS methodology as submitted by Verizon NJ. [FN251] In support of its position, the Company asserts that it is unaware of any state agency that has modified the SCIS methodology for calculating SCIS Cost. [FN252] The Company believes the Board Staff's 'alternative methodology' for establishing vertical feature switch costs understates the forward looking costs that Verizon NJ can reasonably expect to incur in connection with the provision for switching of UNEs. [FN253] VNJ also argues that Staff's methodology is internally inconsistent, because it ignores the circumstances where the application of the SCIS surrogate assumption results in conservative cost estimates. [FN254]

In reply to AT&T's opposition to its motion, VNJ reiterates its arguments concerning the appropriate estimation of vertical feature Costs. [FN255] VNJ further argues that AT&T's approach unnecessarily excludes valuable data from the SCIS cost model regarding cost relationships between different switching technologies. [FN256] As a result, according to VNJ, AT&T's approach to calculating feature costs lacks predictive accuracy. [FN257] VNJ also submitted the certification of Eugene J Goldrick, who explained that AT&T's criticism of the Board's alternative methodology are generally invalid. While not acknowledging that Staff's methodology should be adopted, Mr. Goldrick states that the 'Board's method is statistically sound because

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

it considers all of the available cost information.' [FN258]

   AT&T and MCI also ask the Board to reject Staff's alternative switching methodology and adopt AT&T approach originally advocated in the case which produced a cost of zero for the three features. [FN259] case law from various jurisdictions, AT&T claims in its Comments that, pursuant to basic concepts of procedural fairness, the Board should assign a zero value to any vertical feature cost for which VNJ's SCIS model provides no cost algorithm, since VNJ has failed to carry its burden of proof with respect thereto. [FN260]

   In further argument in opposition to Staff's alternative methodology, AT&T offers the affidavit of Matthew G. Mercurio. [FN261] Dr. Mercurio opines that Staff's methodology is flawed in two ways. First, according to Dr. Mercurio, Staff has failed to apply its own methodology in an internally consistent manner because the overall investment ratios derived by Staff were not based on the same number of vertical features for each switch type. [FN262] Secondly, AT&T disputes Staff's assumption that the average vendor-to-vendor ratios of investment per line for the vertical features documented by SCIS are a good proxy for the vendor-to-vendor ratios for the three specific vertical features with missing cost documentation. [FN263]

Board Discussion

**\*29** In seeking reconsideration of the Board's decision VNJ generally argued that the Board's methodology failed to produce proper forward-looking feature costs. In their May 14, 2004 comments, both AT&T and VNJ generally assailed Staff's alternative methodology. Both the AT&T and VNJ criticisms are unfounded. In the Board's 2004 LINE Order, the Board described the development of Staff's alternative methodology. [FN264] in developing the ratios, Staff included all known cost data, but excluded data from vertical features where data was incomplete so that the resulting ratios would be unbiased.

   In approving Staff's alterative methodology, the Board acknowledged that in the absence of complete cost data, estimates based upon sound cost allocation techniques are appropriate. While the parties generally disagree with Staff's alternative methodology, VNJ, through the affidavit of Eugene J Goldrick, acknowledges that Staff's alternative methodology is, in fact, statistically sound. The Board agrees. Moreover, the Board adheres to its previous explanation as to why it favors Staff's analysis of actual known cost data and its computation of ratios used to derive cost values missing from the VNJ cost models.

   All parties to this proceeding acknowledge or fail to dispute that VNJ incurs real costs in providing the vertical features at issue herein. Given this reality, the Board's failure to attribute any costs whatsoever to the provision of these services would indisputably result in LINE rates that did not accurately reflect the correct forward-looking costs incurred by VNJ for the provision thereof, in direct violation of the FCC's TELRIC standard. Yet this is precisely what AT&T and MCI ask the Board to do. While purporting to highlight alleged errors in Staff's methodology (the validity of which Verizon disputes), AT&T would have the Board rectify these alleged deficiencies by dramatically deviating from the TELRIC standard and ignoring known service costs in calculating UNE rates. The Board disagrees that it is required to violate TELRIC in this manner. [FN265]

   We also reject AT&T's criticism that Staff did not apply its own methodology consistently. [FN266] AT&T rejects Staff's inclusion of costs for both the Home Intercom and Warm Line vertical services in the development of its allocation factors. According to AT&T, the aforementioned features should not have been included because the SCIS documentation only contained costs for one or two switch technologies, not all three.

   We reject such criticism as unfounded. As explained in the Board's 2004 UNE Order, Staff's methodology is predicated on observing all available costs to develop an allocation factor to estimate costs where such cost data is unavailable. To exclude available observations would be to introduce an unjustified bias to the results.

            © 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUR Slip Copy                                                                Page 24
2004 WL 2492569 (N.J.B.P.U.)
**(Cite as: 2004 WL 2492569 (N.J.B.P.U.))**

Similarly, we reject AT&T's criticism of Staff's methodology as being valid only if the average vendor-to-vendor ratios for the documented costs were a good proxy for the three vertical features with missing cost data. The only way to validate AT&T's assumption would be to compare the actual documented cost data for all features. However, since the cost data contained missing algorithms for three features, necessitating the need for cost estimates, this would be impossible. The Board acknowledges that any method available for the calculation of vertical feature costs for which no actual data is available depends on the substitution of an estimated proxy value for the missing data. Even if that estimate does not perfectly reflect the precise missing numeric values, the Board found, and still finds, that Staff's methodology produced the most accurate cost values in comparison to any other approach offered into the record by any party.

**\*30** Although VNJ suggests that the Board should consider revising its allocation method to include both originating and terminating features to develop a single ratio as opposed to two separate ratios, we decline to do so. In arriving at this decision, we agree with Staff that the there is a discernible difference in costs for the originating and terminating features. It is therefore appropriate to consider the variations in the costs when developing the allocation factors. By doing so, we are able to more accurately estimate the costs of vertical features in the absence of actual cost data. In the Board's May 7, 2004 Decision and Order we recognized this fact when we found that Staff's weighting methodology is more accurate than AT&T's and VNJ's methodologies because it takes into account the fact that each switch technology has its own unique cost characteristics and recognizes that there is a variation in costs among the switch types utilized by VNJ. [FN267] To deviate from this would surely result in a less accurate portrayal of the costs.

No argument or evidence presented by the parties on motions for reconsideration represents any new or additional evidence supporting reconsideration, or changes the Board's view regarding the deficiencies in both Verizon's and AT&T's approaches to addressing this issue. Nor is the Board swayed from its determination that Staff's algorithm produces the most accurate and fair cost values available.

CONCLUSION

The Board finds that no party has shown sufficient cause for reconsidering any aspect of the Board's 2004 UNE Order. For this reason, the Board HEREBY DENIES Verizon's Motion for Reconsideration and Request for Limited Reopening and DENIES AT&T's Petition for Reconsideration. The Board further DENIES the Ratepayer Advocate's Motion to Strike, DENIES AT&T's Motion to Strike and further ADMITS, into evidence the affidavit of Matthew G. Mercurio.

In issuing the foregoing Order the Board is aware that the FCC is currently in the process of formulating new rules for the implementation of Section 251(c)(3) of the 1996 Act, on remand from the D.C. Circuit. [FN268]

As an alternative to further challenges to UNE rates as set forth in this docket, any interested party that wishes to pursue a review of all inputs and assumptions used in determining LINE rates may file a petition with the Board to initiate such a review. Should any party choose to file such a petition, Staff will convene a meeting with all interested parties shortly thereafter to determine the appropriate course of action.

Service List VNJ -- Review of UNE Rates, Terms and Conditions Docket
No.TO00060356

Bruce D. Cohen, Esq. Dawn M. Czapla Verizon New Jersey, Inc. 540 Broad Street Newark, NJ 07101 Bruce.d.cohen@verizon.com Dawn.mczapla@verizon.com

Anthony Centrella, Director Board of Public Utilities Division of Telecommunications Two Gateway Center Newark, NJ 07102 anthony.centrella @bpu.state.nj.us

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUR Slip Copy                                                                Page 25
2004 WL 2492569 (N.J.B.P.U.)
(Cite as: 2004 WL 2492569 (N.J.B.P.U.))

**\*31** Harold Bond Board of Public Utilities Division of Telecommunications Two Gateway Center Newark, NJ 07102 harold.bond@bpu.state.nj.us

John DeLuca James Murphy Board of Public Utilities Division of Telecommunications Two Gateway Center Newark, NJ 07102 john.deluca @bpu.state.nj.us jim.Murphy@bpu.state.nj.us

Dr. Fred Grygiel Chief Economist Board of Public Utilities Two Gateway Center Newark, NJ 07102 fred.qrgiel@bpu.state.nj.us

Jacqueline O'Grady Executive Assistant Board of Public Utilities Economist Office Two Gateway Center Newark, NJ 07102 jackie.ogrady@bpu.state.nj.us

Susan Vercheak, D.A.G. Elise Goldblat, D.A.G. Department of Law and Public Safety Division of Law 124 Halsey Street Newark, NJ 07102 Susan.vercheak @law.dol.lps.state.nj.us Elise.goldblat@law.dol.lps.state.nj.us

Carol Artale Legal Specialist Board of Public Utilities Two Gateway Center Newark, NJ 07102 Carol.artale@bpu.state.nj.us

James C. Meyer, Esq. Riker, Danzig, Schereer, Hyland & Perretti, LLP One Speedwell Avenue Morristown, NJ 07962-1981 imeyer@riker.com

Martin C. Rothfelder, Esq. The Rothfelder Law Offices 625 Central Avenue Westfield, NJ 07090 rothfelder@rlo-law.com

Sue Benedek, Esq. Russell R. Gutshall Sprint 1201 Walnut Bottom Road Carlisle, PA 17013 sue.e.benedek@mail.sprint.com russell.r.gutshall@mail.sprint.com

Steven P. Weissman, Esq. CWA, District One One Executive Drive, Ste. 200 Somerset, NJ 08873 weissmint@aol.com

Terry Monroe, Vice President CompTel 1900 M Street, N.W., Suite 800 Washington, DC 20036 tmonroe@comptel.org

Cherie Kiser, Esq. Mintz, Levin, Cohn, Ferris, Glovsky & Popes, P.C. 701 Pennsylvania Ave., N.W. Washington, DC 20004 ckiser@mintz.com

Cynthia McCoy, Esq. AT&T Corp 900 US Highway 202/206 Bedminster, NJ 07921-2691 ctmccoy@att.com

Mark L. Mucci, Esq. LeBoeuf, Lamb, Leiby & McRae One Riverfront Plaza Newark, NJ 07102 mzmucci@llgm.com

Francis R. Perkins, Esq. Meyner & Landis One Gateway Center Newark, NJ 07102 fperkins@ix.netcom.com

James H. Laskey, Esq. Norris, McLaughlin & Marcus 721 Route 202-206 P.O. Box 1018 Somerville, NJ 08076-1018 ihlaskey@nmmlaw.com

Walter Reinhard, Esq. Norris, McLaughlin & Marcus 721 Route 202-208 Bridgewater, NJ 08807 wgreinhard@nmmlaw.com

James Rothschild Ratepayer Advocate Consultants 115 Scarlet Oak Drive Wilton, CT jimrothschild@rothshildfinancial.com

Enrico Soriano, Esq. Kelley, Drye & Warren 1200 19th St., N.W., 5th Floor Washington, DC 20006 esoriano@kelleydrye.com

Murray E. Bevan, Esq. Courter, Kobert, Laufer & Cohen, P.C. 1001 Route 517

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUR Slip Copy                                                        Page 26
2004 WL 2492569 (N.J.B.P.U.)
**(Cite as: 2004 WL 2492569 (N.J.B.P.U.))**

Hackettstown, NJ 07840 cklc@qoes.com

Lee B. Schroeder Vice President -- Regulatory 1111 Stewart Ave. Bethpage, NY 11714-3581 Ischroed@cablevision.com

Dennis C. Linken, Esq. Stryker, Tans and Dill 2 Penn Plaza-East Newark, NJ 07105 dlinken@strykertams.com

Richard Rindler, Esq. Swidler & Berlin 3000 K Street, N.W., Ste. 300 Washington, DC 20007-5116 rmrindler@swidlaw.com

**\*32** Roxanne Vivanco New Jersey Citizen Action 400 Main Street Hackensack, NJ 07601 roxanne@njcitizenaction.org.

Karen D. Alexander President New Jersey Cable Telecommunications Association 124 West State Street Trenton, NJ 08608 kalexander@cablenj.org

Hesser G. McBride, Esq. Wilentz, Goldman & Spitzer 90 Woodbridge Center Drive Woodbridge, NJ 07095 hmcbride@wilentz.com

Alan M. Shoer, Director Regulatory Affairs Conversent Communication, LLC 222 Richmond Street Providence, RI 02903 ashoer@conversent.com

David M. Levy, Esq. Sidley Austin Brown & Wood LLP 1501 K Street, N.W. Washington, DC 20006 dlevy@sidley.com

Robin F. Cohn, Esq. Philip J. Macres, Esq. Swidler, Berlin, Shereff & Friedman, LLP 3000 K St., N.W., Suite 300 Washington, DC 20007 rfcohn@swidlaw.com pjmarces@swidlaw.com

Chana S. Wilkerson, Senior Attorney MCI -- Law and Public Policy 1133 1 9th Street, NW Washington, DC 20036 chana.s.wilkerson@mci.com

Mark A. Keffer, Esq. AT&T Corp. 3033 Chain Bridge Road Room 3D Oakton, VA 22185 mkeffer@att.com

Philip S. Shapiro AT&T Corp. 15105 Wetherburn Drive Centerville, VA 20120-3925 psshapiro att.com

Ava Marie Madeam, Esq. Christopher White, Esq. Jose River-Benitez, Esq. Joshua Siedemann, Esq. Division of Ratepayer Advocate 31 Clinton Street, 11th Floor Newark, NJ 07102 amadeam@rpa.state.nj.us cwhite@rpa.state.nj.us jrivera@rpa.state.nj.us jseidema@rpa.state.nj.us

Susan Baldwin 48 Franklin Street Watertown, MA 02472 smbaldwin@comcast.net

Bhaveeta Kapoor, D.A.G. Brian Lipman, D.A.G Margaret Comes, D.A.G. Department of Law and Public Safety Division of Law 124 Halsey Street Newark, NJ 07102 bhaveeta.kapoor@law.dol.lps.state.nj.us brianlipman@law.dol.lps.state.nj.us margaret.comes@law.dol.lps.state.nj.us

William John Kearns, Jr., Esq. 630 Beverly Rancocoas Road Willingboro, NJ 08046-3718 kearns@att.net

Richard Eckhart, Vice President State Regulatory Sprint Corporation Mail Stop MOKCMD 0316 901 East 104th Street Kansas City, MO 64131 Chad.r.eckhart@mail.sprint.com

Alan Shoer Conversent Communications of New Jersey, LLC 222 Richmond Street, Suite 301 Providence, R1 02903 ashoer@conversent.com

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUR Slip Copy                                                      Page 27
2004 WL 2492569 (N.J.B.P.U.)
**(Cite as: 2004 WL 2492569 (N.J.B.P.U.))**

Nancy Becker, President Advantage New Jersey 132 West State Street Trenton, NJ 08016 nbecker@nbeckerassoc.com

Norman Brandinger, President GOES Telecom 271 Main Street, Suite C Hackettstown, NJ 07840-2032 norm@goestele.com

Richard P. Deangelis, Jr. Esq. Courter Kobert Laufer & Cohen P.C. 100 1 Route 517 Hackettstown, NJ 07840 ckic@goes.com

Edie Brower, Deputy Director Division of Consumer Affairs Office of Director 123 Halsey Street, 7th Floor Newark, NJ 07101

Sidney A. Sayovitiz, Esq. Schenck Price Smith & King LLP 10 Washington Street P.O. Box 905 Morristown, NJ 07963-0895

Mary E. Bernesby, Esq. Schenck Price Smith & King LLP 10 Washington Street P.O. Box 905 Morristown, NJ 07963-0905 meb@spsk.com

Richard E. Young, Esq. Sidley & Austin 1722 1 Street NW Washington, DW 20006 Ryoung@sidley.com

**\*33** Thomas Chu Board of Public Utilities Division of Telecommunications Two Gateway Center Newark, NJ 07102 Thomas.chu@bpu.state.nj.us

FOOTNOTES

FN1 See Decision and Order, In the Matter of the Investigation Regarding Local Exchange Competition For Telecommunications Services, Docket No. TX95120631 (Dec. 2, 1997) ('Generic Order').

FN2 Implementation of the Local Competition Provisions in the Telecommunications Act of 1996: Interconnection between Local Exchange Carriers and Commercial Mobile Radio Service Providers, CC Docket Nos. 96-98, 95-185, First Report and Order, 11 FCC Rod 15499, 15616-775 (1996) 'Local Competition Order'), aff'd in part and vacated in part sub nom. Competitive Telecommunications Ass'n v. FCC, 117 F.3d 1068 (8th Cir. 1997) and Iowa Utils. Bd. v. FCC, 120 F.3d 753 (8th Cir. 1997), aff'd in part and remanded, AT&T v. Iowa Utils. Bd., 525 U.S. 366 (1999), on remand, Iowa Utils. Bd. v. FCC, 219 F.3d 744 (8th Cir. 2000), reversed in part sub nom. Verizon Communications Inc. v. FCC, 535 U.S. 467 (2002); Order on Reconsideration, 11 FCC Rcd 13042 (1996); Second Order on Reconsideration, 11 FCC Rcd 19738 (1996); Third Order on Reconsideration and Further Notice of Proposed Rulemaking, 12 FCC Rcd 12460 (1997), further reconsideration pending.

FN3 See AT&T Communications of New Jersey, Inc., et al. v. Bell Atlantic New Jersey, Inc., at al., Civ. Nos. 975762 (KSH) and 98-0109.

FN4 See AT&T Communications of New Jersey, Inc., et al. v. Bell Atlantic-New Jersey, Inc., et al. , Civ. Nos. 97576-2-and 98-0109 (KSH) (D. N.J. June 6, 2000).

FN5 See Decision and Order, I/M/O the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic-New Jersey, Inc., Docket No. TO00060356 (March 6, 2002)('Final Order') (executed on behalf of the Board by Commissioners Frederick F. Butler, Carol J. Murphy and Connie 0. Hughes).

FN6 See Decision and Order, I/M/O the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic-New Jersey. Inc., Docket No. TO00060356 (September 13, 2002). ('Order on Reconsideration') at 9-12 (summarizing generally the parties' arguments for reconsideration).

FN7 Verizon New Jersey Inc. v. New Jersey Board of Public Utilities, at al., Civil Action No. 02-5353 (JAP). MCI filed a Counterclaim and a Cross-claim on December 20, 2002. VNJ and the Board filed Answers to MCI's Counterclaim and Cross-claim. By

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Orders dated March 21, 2003, the Court granted AT&T leave to intervene and RPA leave to participate as amicus curiae.

FN8 Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (codified in various sections of 47 U.S.C. § 151 et seq. (the '1996 Act').

FN9 On February 25, 2003, the Board filed a Motion to Dismiss Counts Two and Three. Supporting and responsive briefs were also filed with regard to that Motion to Dismiss Counts Two and Three.

FN10 Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers, Federal Communications Commission, CC Docket Nos. 01-338, 96-98,98-147, Report and Order and Order on Remand, Further Notice of Proposed Rulemaking, (rel. Aug. 21, 2003) (Triennial Review Order' or 'TRO').

FN11 See Order, I/M/O the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic-New Jersey, Inc., Docket No. TO00060356 (December 23, 2003) ('Review Order') at 3.

FN12 Review Order at 4. On January 9, 2004, Commissioner Connie O. Hughes issued a provisional Order reflecting a revised procedural schedule which modified the dates by which parties were to file discovery and testimony. Order, I/M/O the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic-New Jersey Inc., Docket No. TO00060356 (January 9, 2004).

FN13 See January 14, 2004 Order issued by Judge Pisano in Verizon New Jersey Inc. v. the New Jersey Board of Public Utilities. et al., Civil Action No. 02- 5353 (JAP). On April 1, 2004, Judge Pisano executed a Revised Order Dismissing Plaintiff Verizon New Jersey Inc.'s Claims Without Prejudice. The Revised Order confirmed that the January 14, 2004 Order was not intended to be a final appealable order.

FN14 See AT&T's December 29, 2003 Emergency Petition filed with the Board, for Reconsideration of Order Reopening Proceeding in Docket Number TO00060356 ('AT&T's Motion for Reconsideration').

FN15 December 30, 2003 Letter Motion of MCI filed with the Board, to hold in abeyance all further proceedings in Docket Number TO00060356 ('MCI's Motion for a Stay') at 1.

FN16 MCI's Motion for Stay at 1.

FN17 See Order Denying Motions, I/M/O the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic-New Jersey, Inc., Docket No. TO00060356 (January 26, 2004) ('1/26/04 Order').

FN18 The Board also continued forward with its separate TRO proceeding. I/M/O the Implementation of the Federal Communications Commission's Triennial Review Order, Docket No. TO03090705. However, subsequent to the decision issued by the United States Court of Appeals for the District of Columbia Circuit ('D.C. Circuit') in United States Telecom Association Y. Federal Communications Commission, 359 F.3d 554 (D.C. Cir. 2004) ('USTA II') (decided March 2, 2004), which vacated certain portions of the TRO, including the FCC's subdelegation to state commissions of decision-making authority over Impairment determinations, VNJ filed a Motion for a Stay of the Board's TRO proceeding, except for the hot cuts related portion of the proceeding. By Order dated March 17, 2004, in I/M/O the Implementation of the Federal Communications Commission's Triennial Review Order, Docket No. TO03090705, the Board granted VNJ's Motion for a Stay conditioned upon VNJ's agreement to forebear seeking relief from the FCC on the basis that the Board did not timely complete its TRO obligations as specifically outlined in the Board's March 17, 2004 Order.

FN19 VNJ submitted its pre-filed Initial testimony on January 6, 2004 and provided the cost models and supporting worksheets on January 8, 2004. Rebuttal testimony was filed on January 23, 2004 and VNJ's Surrebuttal testimony was filed on February 6,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUR Slip Copy                                                          Page 29
2004 WL 2492569 (N.J.B.P.U.)
**(Cite as: 2004 WL 2492569 (N.J.B.P.U.))**

2004. VNJ presented pre-filed testimony of the following witnesses: Dr. James H. Vander Weide on the cost of capital issues, Marsha S. Prosini on the issue of the Telcordia Switching Cost Information System ('SCIS ') Cost Model sponsored by VNJ, David Garfield on the SCIS Cost Model and Dr. John M. Lacey on depreciation. AT&T presented pre-filed testimony of John I. Hirshleifer on the cost of capital issues, Michael R. Baranowski on the SCIS Cost Model and Richard B. Lee on depreciation. The RPA presented pre-filed testimony of James Rothschild on the cost of capital issues and Susan M. Baldwin on depreciation. MCI did not file or introduce testimony of any witness in this proceeding.

FN20 Specifically, the following parties filed initial briefs: VNJ, the RPA, AT&T, MCI, Conversant Communications of New Jersey, LLC jointly with Covad Communications Company ('Conversent and Covad' or "CCNJ-CCC') and the Communication Workers of America ('CWA'). VNJ, the RPA, AT&T and MCI filed reply briefs.

FN21 In the Matter of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic New Jersey, Inc., Decision and Order, Docket No. TO00060356 (May 7, 2004) ('2004 UNE Order').

FN22 Id. at 37-39.

FN23 Comments of AT&T Communications of NJ, L.P. on Staff's Alternative Methodology for Switch Vertical Feature Costs, In the Matter of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic New Jersey. Inc., Docket No. TO00060356 (May 14, 2004)CAT&T Comments '); Letter dated May 14, 2004 to Kristi Izzo, Secretary of the Board, from Hesser G. McBride, Jr., In the Matter of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic New Jersey. Inc., Docket No. TO00060356 ('Verizon Comments').

FN24 Motion for Reconsideration and Request for a Limited Reopening of the Board's Unbundled Network Element Rate Setting Proceeding, In the Matter of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic Now Jersey, Inc., Docket No. TO00060356 (May 24, 2004) ('VNJ Motion').

FN25 Petition of AT&T Communications of NJ, L.P. for Reconsideration, In the Matter of the Board's Review Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic New Jersey, Inc., Docket No. TO00060356 (May 24, 2004) ('AT&T Motion').

FN26 Letter dated June 9, 2004 to Kristi Izzo, Secretary, Board of Public Utilities, from James H. Laskey, In the Matter of the Board's Review of Unbundled Network Elements Rates. Terms and Conditions of Bell Atlantic New Jersey. Inc., Docket No. TO00060356 'MCI Opposition'); Letter dated June 9, 2004 to Kristi Izzo, Secretary, New Jersey Board of Public Utilities from Christopher J. White, Esq., In the Matter of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic New Jersey, Inc., Docket No. TO00060356 ('RPA Opposition').

FN27 Reply of AT&T Communications of NJ, L.P. to Verizon New Jersey Inc. Motion for Reconsideration and Request for Reopening, In the Matter of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic Now Jersey, Inc., Docket No. TO00060356 (June 9, 2004) CAT&T Opposition'); Brief of Verizon New Jersey Inc. In Opposition to the Petition for Reconsideration of AT&T Communications of NJ, L.P., In the Matter of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic New Jersey, Inc., Docket No. TO00060356, (June 9, 2004) (VNJ Opposition')

FN28 Reply Brief of Verizon New Jersey Inc. to the Briefs in Opposition to the Motion for Reconsideration of Verizon, New Jersey Inc., In the Matter of the Board's Review of Unbundled Network Elements Rates. Terms and Conditions of Bell Atlantic New Jersey, Inc., Docket No. TO00060356 (June 18, 2004) ('VNJ Reply'); Reply of AT&T Communications of NJ, L.P. to Oppositions to Petition for Reconsideration, In the Matter of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic New Jersey. Inc., Docket No. TO00060356 (June 18, 2004) CAT&T Reply').

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN29 Letter dated June 24, 2004 to Kristi Izzo, Board Secretary, from Marla T. Novas-Ruiz, Esq., In the Matte of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic N Jersey, Inc., Docket No. TO00060356.

FN30 The Board acknowledges that its rules do no explicitly permit reply briefs in connection with this type of proceeding. However, the Board believes that under the circumstances of this proceeding the fullest possible record informs the Board's analysis and final decision, and furthers the public interest. Moreover, all parties have been afforded adequate opportunity to respond to all evidence presented in the record, including the reply briefs and accompanying certifications submitted by AT&T and VNJ. Given this opportunity, no party has demonstrated that it has been unfairly prejudiced by the inclusion of all relevant evidence in the record. For these reasons, the Board exercises its administrative discretion under N.J.A.C. 14:1-1.2(a) to permit the filing of reply briefs by the moving parties, and also permits the certifications of Eugene Goldrick and Matthew G. Mercurio, offered by VNJ and AT&T respectively, to be entered into the record of this proceeding.

FN31 Reply of Verizon New Jersey to Request of Division of Ratepayer Advocate to Strike Reply to Oppositions to Petitions for Reconsideration In the Matter of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic New Jersey, Inc., Docket No. TO00060356 (July 7, 2004); Reply of AT&T Communications of NJ, L.P. to Request of Division of Ratepayer Advocate to Strike Reply to Oppositions to Petitions for Reconsideration, In the Matter of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic New Jersey, Inc., Docket No. TO00060356 (July 8, 2004).

FN32 Letter dated July 14, 2004 to Kristi Izzo, Secretary of the Board of Public Utilities from Christopher J. White Esq., In the Matter of the Board's Review of Unbundled Network Elements Rates. Terms and Conditions of Bell Atlantic New Jersey, Inc., Docket No. TO00060356.

FN33 Motion of AT&T Communications of NJ, L.P. to Strike Portions of Verizon's June 18 Reply Submission or, In the Alternative, to Allow AT&T to File Supplemental Response, In the Matter of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic New Jersey, Inc., Docket No. TO00060356 (July 8, 2004).

FN34 Id. at 4.

FN35 Id. at 5-6.

FN36 Letter dated July 21, 2004 to Kristi Izzo, Secretary of the Board from Hesser G. McBride, Jr., In the Matte of the Board's Review of Unbundled Network Elements Rates, Terms and Conditions of Bell Atlantic N Jersey. Inc., Docket No. TO00060356.

FN37 Id. at 2.

FN38 VNJ Motion at 24, citing I/M/O Petition of WorldCom, Inc. Pursuant to Section 252(e)(5) of the Communications Act for Preemption of the Jurisdiction of the Virginia State Corporation Commission Regarding Interconnection Disputes with Verizon Virginia Inc. and for Expedited Arbitration, Petition of AT&T Communications of Virginia, Inc. Pursuant to Section 252(e)(5) of the Communications Act for Preemption of the Jurisdiction of the Virginia State Corporation Commission Regarding Interconnection Disputes with Verizon Virginia Inc., CC Docket Nos. 00-218, 00-251, Memorandum Opinion and Order, (August 28, 2003) ('Virginia Arbitration Order').

FN39 Id. at 28.

FN40 Id. at 29.

FN41 Id. at 31.

FN42 Id. at 33.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN43 Id. at 37.

FN44 Id. at 29.

FN45 Id. at 29, citing TRO at ¶ 689.

FN46 Id. at 29, citing TRO at ¶ 690.

FN47 Id. at 29, citing TRO ¶¶ 680, 685, 689.

FN48 Id. at 29.

FN49 Id. at 29-30.

FN50 Id. at 30.

FN51 Id.

FN52 Id.

FN53 VNJ Reply at 20-22.

FN54 AT&T Opposition at 7.

FN55 Id.

FN56 Id.

FN57 Id.

FN58 Id. at 9.

FN59 Id.

FN60 RPA Opposition at 9-10.

FN61 Id. at 9.

FN62 Id.

FN63 MCI Opposition at 2.

FN64 Id.

FN65 2004 UNE Order at 28.

FN66 Id.

FN67 AT&T IB at 10-13.

FN68 2004 UNE Order at 29, citing Virginia Arbitration Order at ¶ 115.

FN69 AT&T IB at 14.

FN70 VNJ Motion at 31.

FN71 Id.

FN72 Id., citing Transcript of 4/2/04 Board Agenda Meeting, p.9.

FN73 Id. at 31.

FN74 Id. at 32.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN75 VNJ Reply at 23-24.

FN76 Id. at 23.

FN77 See AT&T Opposition at 12-13.

FN78 AT&T Opposition at 13.

FN79 Id. at 12-13.

FN80 Id. at 12

FN81 Id.

FN82 Id. at 12-13, citing Virginia Arbitration Order £ 112.

FN83 Id. at 13.

FN84 Id. See also VNJ 113 at 52 n.160 (describing FCC's 1999 determination regarding low end of range for digital switching equipment).

FN85 Id.

FN86 RPA Opposition at 10.

FN87 Id.

FN88 Id.

FN89 Id. at 9, fn. 19.

FN90 Id.

FN91 Id.

FN92 2004 UNE Order at 25, 28-29.

FN93 Id. at 25.

FN94 Id.; AT&T 113 at 7.

FN95 2004 UNE Order at 29.

FN96 See TRO at 168, Virginia Arbitration Order at ££ 112-113.

FN97 The Board agrees with the RPA that the doctrines of waiver and judicial estoppel are applicable In an administrative context. See State v. Gonzalez 142 N.J. 618, 632 (1995). However, given our decisions on the issues herein, we find it unnecessary at this juncture to determine whether VNJ is precluded from presenting arguments as to the TELRIC compliance of depreciation lives or the Board's Integrated Digital Loop Carrier ('IDLC') assumptions. By so ruling, the Board does not waive, and expressly reserves, its right to assert the applicability of these doctrines to any position taken by VNJ or any other party herein in any future or related proceeding.

FN98 VNJ Motion at 33.

FN99 Id.

FN100 Id.

FN101 Id.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN102 Id. at 33-34.

FN103 Id. at 34.

FN104 Id.

FN105 Id. at 33.

FN106 Id. at 34-35.

FN107 Id. at 35.

FN108 Id. at 36.

FN109 AT&T Opposition at 14.

FN110 AT&T Opposition at 16.

FN111 Id. at 15.

FN112 RPA Opposition at 10.

FN113 RPA Opposition at 13.

FN114 2004 UNE Order at 28-29.

FN115 See AT&T IB at 15-20; RPA IB at 7-9.

FN116 AT&T 113 at 11-13; RPA IB at 10-12.

FN117 See RPA opposition at 7. We reject AT&T's assertion, made in the cost of capital context, that such an acknowledgement improperly imposes the standard of review utilized by the FCC in its Section 271 proceedings (See AT&T Reply at 11-14). AT&T argues in essence that the FCC's lack of adequate time and resources to devote to its section 271 determinations necessitated Its application of a relaxed or 'TELRIC-light' standard which is not applicable herein. We find this theory to be lacking in legal or evidentiary support.

FN118 See, e.g. TRO at £ 688.

FN119 AT&T IB at 20-21.

FN120 Id. at 21.

FN121 VNJ Motion at 37.

FN122 Id.

FN123 Id.

FN124 id.

FN125 AT&T Opposition at 46-48.

FN126 Id. at 53-55.

FN127 Id. at 48-53.

FN128 Id. at 49-51.

FN129 VNJ motion at 5.

FN130 Id.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN131 Id. at 6.

FN132 Id. at 7-9.

FN133 Id. at 8.

FN134 Id. at 8-9.

FN135 Id. at 10.

FN136 Id. at 11.

FN137 Id. at 11-14.

FN138 Id. at 11, fn. 28.

FN139 Id. at 15.

FN140 Id.

FN141 Id. at 15-16.

FN142 Id. at 18-19.

FN143 Id. at 19.

FN144 Id. at 20-23.

FN145 VNJ Reply at 6-8.

FN146 Id. at 9.

FN147 Id. at 10-11.

FN148 Id. at 11.

FN149 Id. at 11-12.

FN150 Id. at 14-16.

FN151 Id. at 14-15.

FN152 Id. at 16-19.

FN153 Id. at 17.

FN154 Id. at 18-19.

FN155 AT&T Reply at 15.

FN156 Id. at 16-17.

FN157 Id.

FN158 Id. at 16.

FN159 Id. at 16-17.

FN160 AT&T Motion at 11.

FN161 Id. at 11-12.

FN162 Id. at 12-14.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN163 Id. at 13.

FN164 Id. at 13-14.

FN165 Id. at 14-16.

FN166 Id.

FN167 Id. at 15.

FN168 Id.

FN169 Id. at 16.

FN170 Id. at 16.

FN171 AT&T Opposition at 18-25.

FN172 Id.

FN173 Id. at 27.

FN174 Id. at 31-36.

FN175 Id. at 36-37.

FN176 AT&T Reply at 6-7.

FN177 Id. at 8-10.

FN178 Id.

FN179 Id. at 11-15.

FN180 Id. at 15-21.

FN181 Id.

FN182 Id. at 21-24.

FN183 MCI Opposition at 2.

FN184 Id. at 4.

FN185 Id.

FN186 Id. at 2.

FN187 Id.

FN188 RPA Opposition at 5.

FN189 Id. at 6-8.

FN190 Id. at 11-12.

FN191 Id. at 7.

FN192 Id.

FN193 Id. at 8, fn. 17.

FN194 Id. at 8, fn. 18.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN195 Id. at 11-12.

FN196 VNJ Reply at 5.

FN197 Id. at 5-11.

FN198 Id. at 12-16.

FN199 2004 UNE Order at 17-19.

FN200 Verizon and AT&T argue that they were deprived procedural due process by the Board's failure to provide prior notice of its references to regulated rate proceedings as part of its analysis. The Board notes, however, without agreeing that any party was deprived due process, that VNJ and AT&T have now been afforded ample opportunity to respond substantively to the Board's actions and have taken full advantage of this opportunity, filing motions for reconsiderations, briefs in opposition thereto, and reply briefs. The Board has also considered and addressed their arguments herein. We therefore reject the suggestion that the Board has violated the procedural rights of any party to this proceeding.

FN201 VNJ Motion at 5.

FN202 2004 UNE Order at 19.

FN203 AT&T Motion at 20; AT&T IB at 39.

FN204 VNJ Motion at 42.

FN205 Id.

FN206 See VNJ Opposition at 5-6.

FN207 VNJ Opposition at 15, citing Local Competition Order at £ 11.

FN208 2004 UNE Order at 19-20.

FN209 Id. at 20.

FN210 VNJ IB at 17.

FN211 AT&T IB at 63.

FN212 Id.

FN213 VNJ Motion at 15.

FN214 AT&T IB at 38, 56

FN215 According to the evidentiary record, it is Verizon, not the CLECs, that requires short-term, one-month UNE contracts, leading to the logical conclusion that Verizon itself views such contracts as reducing rather than increasing its business risk. (AT&T 113 at 64).

FN216 RPA Opposition at 8, fn. 18.

FN217 VNJ Motion at 18-19.

FN218 2004 UNE Order at 15.

FN219 RPA Opposition at 11-12.

FN220 2004 UNE Order at 20.

FN221 Id.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN222  Id.

FN223  TRO at £ 681.

FN224  AT&T Opposition at 27-28.

FN225  RPA Opposition at 8, fn. 17.

FN226  1/26/04 Order at 12-14.

FN227  VNJ Motion at 42-43.

FN228  Id.

FN229  Id.

FN230  VNJ Reply at 33-35.

FN231  Id.  at 34.

FN232  Id.

FN233  AT&T Opposition at 42-46.

FN234  Id.  at 44.

FN235  MCI Opposition at 1.

FN236  RPA Opposition at 5-6.

FN237  Id.

FN238  Id.

FN239 Given its interpretation of the USTA II decision and the current state of controlling federal law, the Board need not address the limitations and preclusive effect of the Board's December 19, 2003 Stipulation and Agreement arising out of its law suit with Verizon or the technical feasibility of providing unbundled two wire loops using IDLC, except to note that significant disagreement exists between Verizon and AT&T on the technical issue.

FN240 Baranowski RT at £ 19.  See also  AT&T IB at 72.

FN241 Prosini ST at 4-9 to 5-7.

FN242 2004 LINE Order at 35.

FN243 Id.  at 36.

FN244 Id.  at 37.

FN245 Id.

FN246 AT&T Comments at 2.

FN247 VNJ Comments at 1.

FN248 VNJ Comments at 2.

FN249 VNJ Comments at 3.

FN250 VNJ Motion at 38-41.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

FN251 Id. at 39.

FN252 Id.

FN253 Id.

FN254 Id. at 40.

FN255 VNJ Reply at 26-30.

FN256 Id. at 30.

FN257 Id.

FN258 Certification of Eugene J. Goldrick, In the Matter of the Board's Review of Unbundled Network Elements Rates. Terms and Conditions of Bell Atlantic-New Jersey. Inc., Docket No. TO00060356 (June 18, 2004) ('Goldrick Cart.').

FN259 AT&T Comments at 6; AT&T Opposition at 44; MCI Opposition at 3.

FN260 AT&T Comments at 5.

FN261 Affidavit of Dr. Matthew G. Mercurio on Behalf of AT&T Communications of NJ, L.P., In the Matter of the Board's Review of Unbundled Network Elements Rates. Terms and Conditions of Bell Atlantic-New Jersey. Inc., Docket No. TO00060356 (July 5, 2004) ('Mercurio Affidavit').

FN262 Mercurio Affidavit at 4.

FN263 Mercurio Affidavit at 5.

FN264 2004 UNE Order at 37.

FN265 The case law cited AT&T cites in its Comments In support of its contention that the Board must disregard the feature costs at issue Is Inapplicable to the facts herein. In San Antonio. Texas v. United States, 631 f.2d 831, 841-44 (D.C. Cir. 1980), the Court invalidated one part of an Interstate Commerce Commission ('ICC') rulemaking because a rate additive imposed by the [CC was completely unsupported by the record and resulted in double counting of costs. See also, Celanese Chemical Co, v. United States, 632 F.2d 568, 575-76 (5th Cir. 1980). Neither case stands for the notion, asserted by AT&T, that the Board may not determine which of various methodologies for calculating vertical feature costs presented by the parties produces cost values that most nearly adhere to the TELRIC standard required by the FCC. Staff's methodology clearly meets this criterion, since neither AT&T's nor Verizon's are based on any substantive evidence in the record.

FN266 Mercurio Affidavit at 4.

FN267 2004 UNE Order at 37.

FN268 I/M/O Unbundled Access to Network Elements, Review of the Section 251 Unbundling Obligations of Incumbent Local Exchange Carriers]f1, CC Docket No. 01-338, WC Docket No. 04-313, Order and Notice of Proposed Rulemaking, Adopted July 21, 2004.

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.