

PUR Slip Copy                                                              Page 1
2004 WL 3094811 (Ala.P.S.C.)
(Cite as: 2004 WL 3094811 (Ala.P.S.C.))

Re CenturyTel of Alabama, LLC
Docket 29075

Alabama Public Service Commission
November 29, 2004

**\*1** ORDER

BY THE COMMISSION:

I. Introduction and Background

On or about September 9, 2003, CenturyTel of Alabama, LLC ('CenturyTel ') petitioned the Commission to establish a Wholesale Avoidable Cost Discount Rate of 9.2 percent for the Resale of its Local Exchange Service in Alabama. In support of said Petition, CenturyTel submitted the prefiled direct testimony of Mr. Gary Clark, an Economic Analyst for CenturyTel. Mr. Clark asserted that the discount rate of 9.2 percent was justified based on CenturyTel's current cost structure. [FN1]

Pursuant to a Scheduling Order entered by the Commission in this cause on November 7, 2003, CenturyTel's Petition was set for hearing on December 10, 2003. [FN2] The Commission's November 7, 2003 Scheduling Order also established an intervention deadline of November 17, 2003 and required that all testimony to be relied upon by any such intervenors be prefiled no later than November 24, 2003.

The Commission received and granted Petitions to Intervene in this cause from AT&T Communications of the South Central States, LLC ('AT&T'); ITC Delta--Com Communications, Inc. ('DeltaCom'); Seven Bridges Communications, LLC ('Seven Bridges'); and BellSouth Telecommunications, Inc. ('BellSouth'). However, only DeltaCom actively participated in the proceedings by submitting prefiled testimony and conducting cross-examination during CenturyTel's direct presentation of its case. [FN3] The prefiled testimony submitted by DeltaCom was on behalf of Mr. Don J. Wood, an Economic and Financial Consultant with the firm of Wood and Wood, and Mr. Jerry Watts, DeltaCom's Vice President of Government and Industry Affairs. The only additional testimony that was prefiled was rebuttal testimony submitted by CenturyTel on December 8, 2003 on behalf of Mr. Clark and Mr. Bill Hanchey, CenturyTel's Director of Governmental Affairs for Alabama.

Following the December 12, 2003 hearing, the Commission staff determined that additional information was needed from CenturyTel in order to properly determine a Wholesale Avoidable Cost Discount Rate. In particular, the Commission staff requested a CenturyTel profit and loss statement and balance sheet for 2003; the number of lines being resold by CenturyTel in Alabama; applicable orders from other states; customer service cost study detail; cost studies for all applicable accounts and itemization of the revenue subject to the avoidable cost discount rate for the eleven (11) months ended November 2003. CenturyTel additionally provided updated financial information reflecting the twelve months of operations ending December 31, 2003. It was determined that an additional proceeding allowing for open discussion of the information sought by staff and provided by CenturyTel would be necessary to preserve due process for all parties. The Commission accordingly entered a Scheduling Notice on March 8, 2004 scheduling a further hearing in this matter for March 30, 2004.

At the further hearing of March 30, 2004, CenturyTel sponsored the testimony of Mr. Ken Buchan, CenturyTel's Manager of Regulatory Finance, Mr. Gary Clark and Mr. Carlton Terrell, CenturyTel's Director of Customer Service Support. DeltaCom sponsored the testimony of Mr. Don J. Wood. Following the March 30, 2004 proceeding,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUR Slip Copy                                                               Page 2
2004 WL 3094811 (Ala.P.S.C.)
(Cite as: 2004 WL 3094811 (Ala.P.S.C.))

CenturyTel and DeltaCom each submitted simultaneous post hearing briefs.

II. Summary of the Record

*2 Mr. Clark, of CenturyTel, asserted that the cost study submitted by CenturyTel in support of its proposed discount rate of 9.2 percent defined Avoidable Retail Cost as the difference in total cost when a service is offered in a 100 percent wholesale environment rather than the retail environment. Mr. Clark maintained that CenturyTel had developed a single wholesale discount factor for both its Alabama companies, CenturyTel of Southern Alabama and CenturyTel of Northern Alabama. Mr. Clark represented that the single discount percentage was appropriate due to the fact that CenturyTel of Southern Alabama and CenturyTel of Northern Alabama submit a combined annual report to the Commission containing composite expenses and revenues. He also noted that the customer service functions for CenturyTel of Southern Alabama and CenturyTel of Northern Alabama are handled from a single location using the same personnel, procedures and methods. [FN4]

Mr. Clark asserted that CenturyTel's originally submitted cost study was based on operations for the six months ended December 31, 2002 as filed with the Commission in the company's annual report. Mr. Clark stated that the six months of actual data was utilized due to the fact that CenturyTel acquired its Alabama properties from Verizon effective July 1, 2002. Mr. Clark also explained that the exchange portion of the CenturyTel operating expenses was determined by using the separations factors set forth at 47 C.F.R. Part 36. [FN5]

Mr. Clark maintained that all of CenturyTel's operations expenses were considered in the Avoidable Cost Study compiled by CenturyTel. He represented that marketing services, general support and corporate operations expenses and uncollectible revenues were treated as having avoidable aspects due to the fact that such costs are required regardless of whether the service in question is offered on a retail or wholesale basis. [FN6]

With respect to avoidable marketing expenses, Mr. Clark testified that CenturyTel utilized the Federal Communications Commission's ('FCC') established default avoidable cost ratios of 25 percent for product management and 90 percent for sales and product advertising expenses. Mr. Clark asserted that such an approach was consistent with the Commission's December 1997 Order in Docket 25677 specifying that default avoidable cost ratio should be utilized unless specific cost studies are performed. [FN7]

Mr. Clark further testified that the avoidable cost study for customer service expenses was compiled first by determining the avoidable percentage of service order activities from a study of the time required in two representative business offices to process service orders. The total number of orders processed for one month was then calculated by service order type: install, change, disconnect, suspend and restore. The number of orders processed by order type was then multiplied by the minutes per order to arrive at a total order time by order type. The total order time was multiplied by the estimated avoidable time ratio for each service order type to determine the total avoidable time for each order type. The total avoidable time for all order types was then divided by the total order time for all order types to derive an estimated 40 percent avoidable for the service order portion of customer service. [FN8] Mr. Clark applied the 40 percent avoidable customer service factor to arrive at an overall customer services avoidable cost ratio of 53.072 percent. [FN9]

*3 Mr. Clark considered end user payments and collections as 100 percent avoidable since CenturyTel will only be dealing with resellers. Similarly, Mr. Clark determined that 70 percent of end user inquiry expenses would be avoidable since CenturyTel would be answering only reseller inquiries. Mr. Clark maintained, however, that only 20 percent of revenue accounting expenses would be avoidable since the same detail would be generated for resellers as is presently the case for individual customers. [FN10]

Regarding indirect expenses avoidable costs, Mr. Clark maintained that indirect

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

expenses include general support and corporate operations expenses which are presumed to be avoidable in the same proportion as direct expenses to total expenses. Mr. Clark asserted that the CenturyTel study performed the necessary allocations internally based on the treatment of direct expenses. [FN11]

Based on the foregoing, Mr. Clark testified that CenturyTel arrived at its proposed wholesale discount factor of 9.2 percent. Mr. Clark asserted that CenturyTel's resulting rate is lower than the 16.3 rate previously established by the Commission for GTE/Verizon because the rate approved for GTE/Verizon was based on 1997 GTE expenses and revenue levels instead of the 2002 cost/revenues used in the CenturyTel study. Mr. Clark represented that the CenturyTel study identified an acceptable wholesale discount rate for CenturyTel based on prevailing interpretations of all prevailing rules and regulations. [FN12]

Upon his review of the testimony submitted by CenturyTel, Deltacom's witness, Mr. Wood, testified that 47 C.F.R. § 51.609 has very specific requirements with respect to treating ILEC costs as avoided or proving a specific cost in accounts will not be avoided. Mr. Wood noted that the Commission has applied that standard in previous dockets established to determine wholesale discount rates, including Docket 25677 wherein the Commission determined the wholesale discount rate for GTE/Verizon. In that proceeding, Mr. Wood noted that the Commission required a detailed analysis of the individual costs in different accounts, work activities and equipment at a very specific and granular level. Within each account, Mr. Wood maintained that the Commission has previously required complete documentation of inputs and assumptions and has at no time accepted key input values on the basis of 'well, somebody said so.' [FN13] Mr. Wood surmised that CenturyTel had woefully failed to include the supporting data normally required by the Commission in wholesale discount proceedings. Mr. Wood thus concluded that the Commission had insufficient information to determine the validity of CenturyTel's claimed discount rate. [FN14]

In further support of his claims regarding the insufficiency of CenturyTel supporting documentation, Mr. Wood noted that CenturyTel's supporting cost study was a minimal three pages in length. Mr. Wood further noted that CenturyTel offered no evidence in support of its cost study assumptions and produced a paper printout of some, but not all the important assumptions underlying the study. [FN15]

*4 Mr. Wood also represented that CenturyTel's analysis was based on only six months worth of information as opposed to the whole year's worth of expense and revenue records normally required by the Commission; relied on 'FCC developed values' that had been vacated; modified previous Commission assumptions of avoided costs based on undocumented studies; and included an insufficient analysis of the revenues included in the study. [FN16] Mr. Wood thus asserted that CenturyTel had failed to provide supporting rationale for a conclusion that its current resale discount percentage of 16.3 percent should be reduced to 9.2 percent. Mr. Wood accordingly recommended that the Commission reject CenturyTel's Petition as being inadequately supported. [FN17]

III. Findings and Conclusions

A. CenturyTel's Application of 47 C.F.R. Part 36 Jurisdictional Separations Factors

DeltaCom's witness, Mr. Wood asserted that prior to determining an avoided cost percentage in each applicable expense account, CenturyTel first applied Part 36 Jurisdictional Separations to such accounts. [FN18] Thus, instead of applying an avoided cost percentage to the entirety of each applicable account as previously required by the Commission, CenturyTel took intrastate versus interstate jurisdictional separations and divided its expenses into local versus non local categories. Mr. Wood asserted that there is no definition of 'local' versus 'non local' under Part 36 and no guidelines in Part 36 respecting how to perform a local versus non local separations. According to Mr. Wood, it is entirely inappropriate to conduct a separations analysis at all in a proceeding of this nature. [FN19]

CenturyTel asserted that the application of separation factors was necessary for its operations because unlike its Alabama predecessor GTE/Verizon, CenturyTel does

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUR Slip Copy                                                                    Page 4
2004 WL 3094811 (Ala.P.S.C.)
**(Cite as: 2004 WL 3094811 (Ala.P.S.C.))**

not have separate work centers for purely local functions and thus has all its expenses in single accounts. [FN20] Mr. Clark could not explain on cross-examination, however, as to how Part 36 rules could be used to divide expenses into local and non local categories. Mr. Clark in fact admitted that he had never even looked at the Part 36 rules in preparing his study. [FN21] When asked how he performed the study without such information, Mr. Clark stated that he contacted the CenturyTel office in Monroe and asked for the factors to use to separate local expenses from the total. [FN22] Mr. Clark admitted that if Part 36 does not delineate between local and non local categories for expenses, his study would be impacted due to the fact that there would have to be some totally unknown method for developing the local portion of the expenses under review. [FN23]

The Commission finds that 47 C.F.R. Part 36 does not delineate between local and non local, but is instead used to separate intrastate and interstate amounts. Further, this Commission, the FCC and other commissions across the country have established wholesale discount rates based on the differences between retail and wholesale functions, not between the local versus non local distinction. Further, the FCC has held that there is no statutory basis for limiting resale to basic telephone services and has made crystal clear that avoided costs are those costs that an ILEC would no longer incur if it were to cease retail operations and instead provide all of its services through retailers. [FN24] The Commission accordingly concludes that consistent with the foregoing FCC criteria and the previous policy of this body, CenturyTel's application of the Part 36 Jurisdictional Separations factors was inappropriate and is thus disallowed.

*5 B. The Avoidable Cost Assumptions Utilized by CenturyTel

CenturyTel asserted that the avoidable cost percentages used in its study were those previously approved by the Commission for GTE, except for customer service expenses for which CenturyTel performed its own study. [FN25] During the continued hearing of March 30, 2004, CenturyTel maintained that the service order portion of the avoidable customer service expense was determined through a CenturyTel study. CenturyTel asserted that said supporting study was explained in great detail and independently verified by Mr. Carlton Terrell, CenturyTel's Director of Customer Services. [FN26]

With respect to other avoidable cost factors for accounts such as private management sales, product advertising, call completion and dialed number services, CenturyTel represented that the factors utilized were the so called FCC default factors agreed to by the Commission for GTE/Verizon. [FN27] CenturyTel asserted that in arriving at the discount factor for the general support and corporate expenses, CenturyTel presumed the avoidable portions in the same ratio of direct expenses to total expenses. [FN28]

DeltaCom alleged CenturyTel's attempt to import the avoided cost percentages from the GTE study was not appropriate. In particular, DeltaCom asserted that CenturyTel had provided absolutely no documentation or justification as to why it would be reasonable to take those factors specific to GTE and its cost structure and import them into the present case without a detailed analysis of CenturyTel's cost structure. [FN29]

Deltacom also challenged CenturyTel's use of an avoided cost assumption of 53.072 percent for customer service account 6623 as opposed to the Commission's previously approved avoided cost rate of 90 percent for GTE. According to DeltaCom, CenturyTel did not provide sufficient documentation of the validity of the study relied upon for the development of that factor through the testimony of either Mr. Clark or Mr. Terrell. [FN30] In particular, DeltaCom pointed out that Mr. Terrell conceded that he did not review the retail order processing times included in the study and was not in charge of the individuals who were conducting the 1997/1998 study that served as the basis of CenturyTel's claims. [FN31]

The Commission finds that 47 C.F.R. § 51.609 provides the formula for determining avoided retail costs. Specifically, CenturyTel must include its direct costs as recorded in Uniform System of Accounts 6611 (Product Management), 6612 (Number

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Sales), 6613 (Product Advertising), 6621 (Call Completion Services), 6622 (Number Services), and 6623 (Customer Services). Additionally, costs included in Account 6611 through 6613 and Account 6621 through 6623 may be included in wholesale rates only to the extent that CenturyTel proves to this Commission that specific costs in these accounts will be incurred and are not avoidable with respect to services sold at wholesale or that the specific costs in these accounts are not included in the retail prices of resold services.

**\*6** Contrary to the arguments of CenturyTel, this Commission previously set the avoided cost percentages for each GTE/Verizon account based on a detailed analysis of GTE's cost and cost structure and did not use FCC defaults which were vacated by the Eighth Circuit prior to the Commission's December 22, 1997 decision in Docket 25677. Further, DeltaCom correctly noted that 47 C.F.R. § 51.609 became effective on January 1, 2003 and placed the burden on CenturyTel to prove to this Commission why certain costs are not avoided. With the exception of Account 6623 (Customer Service), CenturyTel did not provide a cost study and instead relied upon the now vacated FCC defaults. Pursuant to the current FCC rules, the Commission finds that the direct cost recorded in USOA accounts 6611 through 6613 and 6621 through 6622 are 100 percent avoidable. The Commission finds, however, that CenturyTel's proposed avoidable cost factor of 53.072 percent for Account 6623 is justified based on the supporting study and documentation thereof submitted by CenturyTel.

C. Account 5301, Uncollectible Revenues

At the March 30, 2004 hearing, CenturyTel revised its position with regard to uncollectibles for Account 5301. In particular, Mr. Clark modified his original recommendation of utilizing an avoided retail percentage of 100 percent for uncollectibles to 40 percent on the basis of a separate study.

DeltaCom asserted that CenturyTel's reliance on the uncollectibles study was inappropriate because the study was inappropriately verified and apparently conducted by unqualified personnel. DeltaCom further argued that Mr. Clark arrived at the 40 percent avoided cost factor for uncollectibles based on his assumption that only local services are subject to resale. [FN32] DeltaCom reiterated its previous arguments that CenturyTel's attempts to identify expenses associated purely with 'local' services were misguided and fundamentally flawed. [FN33]

D. Non Cost Factor Considerations

Through the testimony of Mr. Hanchey of CenturyTel and Mr. Watts of DeltaCom, a number of policy arguments unrelated to the determination of avoided costs were advanced in the proceedings in this cause. [FN34] While the policy arguments in question are important for purposes of considering the overall condition of the telecommunications market in Alabama, the Commission finds that such arguments are largely irrelevant for purposes of establishing an appropriate wholesale discount rate for CenturyTel. Indeed the FCC clarified in its Local Competition Order that 'an avoided cost study may not calculate avoided cost based on non cost factors or policy arguments, nor may it make disallowances for reasons not provided in § 252(d)(3).' [FN35] We find that FCC policy controlling in this proceeding and have arrived at a wholesale discount rate for CenturyTel which excludes such extraneous considerations.

IV. ORDERING CLAUSES

Based on the foregoing, the Commission concludes that the appropriate wholesale avoidable cost discount rate for CenturyTel of Alabama, LLC is 16.1%. Said discount rate is calculated pursuant to Appendix A attached hereto.

**\*7** IT IS SO ORDERED BY THE COMMISSION.

IT IS FURTHER ORDERED BY THE COMMISSION, That jurisdiction in this cause is hereby retained for the issuance of any further order or orders as may appear to be just and reasonable in the premises.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUR Slip Copy                                                          Page 6
2004 WL 3094811 (Ala.P.S.C.)
**(Cite as: 2004 WL 3094811 (Ala.P.S.C.))**

 IT IS FURTHER ORDERED, That this Order shall become effective as of the date hereof.

 DONE at Montgomery, Alabama, this 29th day of November, 2004.

FOOTNOTES

FN1 As reflected in the CenturyTel Petition, CenturyTel acquired the assets and the Local Exchange Certificate of Public Convenience and Necessity of Verizon South, Inc., f/k/a as GTE South, Inc. and Contel of the South, Inc. as of July 1, 2002. In connection with said acquisition, CenturyTel assumed, on an interim basis, the Avoidable Cost Discount rate of 16.3 which the Commission established for Verizon pursuant to Order entered in Docket 25677 on December 22, 1997. (In re: Generic Local Resale Docket).

FN2 Pursuant to Commission Notice of November 26, 2003, the December 10, 2003 hearing was rescheduled for December 12, 2003.

FN3 Counsel for Seven Bridges entered an appearance at the December 12, 2003 hearing but did not actively participate. AT&T and BellSouth did not enter an appearance in this cause.

FN4 Tr. at p. 33.

FN5 Id.  at pp. 33-34.

FN6 Id.; (See  Accounts 6112 -- 6790).

FN7 Id.  at pp. 34-35.

FN8 Id.

FN9 Id.  at pp. 35-36.

FN10 Id.  at p. 36.

FN11 Id.  at p.36.

FN12 Id.  at pp. 37-38.

FN13 Id.  at p. 151-152.

FN14 Id.  at p. 154

FN15 Id.  at p. 172

FN16 Id.  at pp. 172 -- 176.

FN17 Id.  at pp. 181-182.

FN18 Id.  Tr. at p. 264.

FN19 Id.  at p. 264.

FN20 Id.  at 297 -- 298.

FN21 Tr. at pp. 314, 317.

FN22 Id.  at p. 314

FN23 Id.  at p. 318.

FN24 Id; In the Matter of Implementation of the Local Competition Provisions of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

PUR Slip Copy                                                              Page 7
2004 WL 3094811 (Ala.P.S.C.)
**(Cite as: 2004 WL 3094811 (Ala.P.S.C.))**

Telecommunications Act of 1996, First Report and Order, CC Docket No. 96-98 at £ 877 (August 8, 1996) (The 'Local Competition Order').

FN25 Tr. p. 27-28.

FN26 Tr. pp. 28, 233, 236.

FN27 Tr. pp. 29, 69-70.

FN28 Id. at p. 29.

FN29 Tr. at p. 162.

FN30 Tr. pp. 249-250.

FN31 Id. at p. 249-250.

FN32 Tr. at p. 326.

FN33 See DeltaCom Post Hearing Brief at pp. 16-17.

FN34 See Tr. pp. 89-91, 93-94, 139.

FN35 See Local Competition Order at £ 914.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.