**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ALASKA**

| | |
|---|---|
| GCI COMMUNICATION CORP., d/b/a GENERAL COMMUNICATION, INC., d/b/a GCI,<br><br>     Petitioner and<br>     Cross Petition Respondent,<br><br>         -vs-<br><br>KATE GIARD, in her official capacity as Chairwoman of the Regulatory Commission Of Alaska;<br>DAVE HARBOUR, in his official capacity as Commissioner of the Regulatory Commission Of Alaska;<br>MARK K. JOHNSON, in his official capacity as Commissioner of the Regulatory Commission Of Alaska;<br>ANTHONY PRICE, in his official capacity as Commissioner of the Regulatory Commission Of Alaska;<br>JAMES S. STRANDBERG, in his official capacity as Commissioner of the Regulatory Commission Of Alaska,<br><br>     Respondents and<br>     Cross Petition Respondents,<br><br>and<br><br>ACS OF ANCHORAGE, INC., d/b/a ALASKA COMMUNICATIONS SYSTEMS, ACS LOCAL SERVICE, and ACS,<br><br>     Respondent and<br>     Cross Petitioner. | Case No. A05-003 CV (RRB)<br><br>**ACS OF ANCHORAGE, INC.'S OPPOSITION TO GCI'S MOTION FOR JUDICIAL NOTICE AND SUPPLEMENTATION OF RECORD** |

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

1

## I. Introduction.

Petitioner GCI Communication Corp. ("GCI") has moved to supplement the administrative record with an excerpt from the 2003 Form 10K filed by ACS' parent company with the Securities and Exchange Commission, and GCI asks the court to take judicial notice of the debt costs (interest rates) incurred by ACS when it restructured some of its debt in 2003.[1] GCI's motion should be denied for three reasons: First, it is not appropriate to take judicial notice of the Form 10K for the purpose GCI proposes. The cost of ACS aggregate debt is a subject of dispute, and that dispute cannot be resolved simply by looking at the Form 10K. Second, it is not appropriate to supplement the agency record in this proceeding, which is essentially an administrative appeal. Third, GCI could have presented the Form 10K to the RCA in the proceedings below, and by failing to do so, it has waived any right to present it now.

## II. The Interest Rates Referenced in the Form 10K Are Not Appropriate Matters for Judicial Notice.

Evidence Rule 201 provides for taking judicial notice of adjudicative facts. Paragraph (b) of the rule provides,

> A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

The Advisory Committee Notes to the rule make clear that "[a] high degree of indisputability is the essential prerequisite" to judicial notice. Since "fair procedure in

---

[1] Debt cost is one component of the equation for determining the cost of capital, which in turn is factored into the calculation of the UNE loop rate at issue in this proceeding.

resolving disputes of adjudicative facts...includes rebuttal evidence, cross-examination, usually confrontation, and argument (either written or oral or both)," the traditional methods of proof may be dispensed with "only in clear cases." Fed. R. Evid. 201, Advisory Committee Notes.

Consistent with these general principles, courts have permitted judicial notice of SEC filings only in narrow circumstances for a very limited purpose. In this regard, GCI misstates the relevant law. In Kramer v. Time Warner, Inc., 937 F.2d 767, 769-70 (2nd Cir. 1991), it was held that a court could take judicial notice of filings in a securities fraud case for purposes of deciding a motion to dismiss "a complaint alleging material misrepresentations and omissions in such documents." In that specific context, "the documents are the very documents that are alleged to contain the various misrepresentations or omissions and **are relevant not to prove the truth of their contents but only to determine what the documents stated**." Id., at 774 (emphasis added). See also Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999). "When considering public documents in the context of a motion to dismiss...the court may not accept a document to decide facts that are in dispute." In re Cardinal Health Inc. Securities Litigation, ___ F.Supp.2d___, 2006 WL 932017 (S.D. Ohio 2006). By permitting judicial notice in the context of a motion to dismiss in a securities fraud case, courts can consider documents not formally attached to the complaint without converting the Rule 12(b)(6) motion into a motion for summary judgment, and they can weed out meritless claims in circumstances where the plaintiff quoted only selected or misleading portions of such documents in the complaint. Id., at 773-74.

The three cases cited by GCI at page 7 of its memorandum[2] all concern the question of taking judicial notice of SEC filings for purposes of deciding a motion to dismiss in a securities fraud case. Thus, they provide no support for GCI's request to take judicial notice of ACS' Form 10K for purposes of establishing the truth and accuracy of the debt costs referenced in that document.

In contrast to the securities fraud cases, the courts follow a different tack when SEC filings are offered to prove the truth of the matters stated therein. In <u>Hennessy v. Penril Datacom Networks, Inc.</u>, 69 F.3d 1344, 1354 (7th Cir. 1995), a sex discrimination case, the plaintiff urged the court to take judicial notice of the defendant company's SEC Form 10K for purposes of determining the number of the defendant's employees. (The issue was relevant because under the Civil Rights Act the amount of punitive damages assessable against the defendant was dependent on the number of its employees.) The district court declined the request for judicial notice and the court of appeals affirmed. Noting that "indisputability is a prerequisite" to judicial notice, the court found that the contents of the Form 10K were subject to dispute and that "the fact in question here was not cable of accurate and ready determination by resort to the 10K." <u>Id.</u>, at 1054-55.

In this case, the aggregate cost of ACS' restructured debt is, at best, a subject of dispute. The excerpt does not quantify an aggregate cost for ACS' total debt, nor does it quantify an effective interest on the components of ACS' financing. As

---

[2] <u>In re White Electronic Designs Corporation Securities Litigation</u>, 416 F.Supp.2d 754 (D. Ariz. 2006); <u>In re Network Associates, Inc. II Securities Litigation</u>, 2003 WL 24051280 (N.D. Cal. 2003); <u>Plevy v. Haggerty</u>, 38 F.Supp.2d 816 (C.D. Cal. 1998).

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536

4

documented by the attached affidavit and spreadsheet,[3] the true cost of ACS' debt financing can be more accurately determined by calculating an effective interest rate, which includes other financing costs such as issuance costs and the expense of amortization of bond discounts. [Butcher Affidavit with Spreadsheet, Ex. A.] When all of the costs of ACS' financing are factored in, ACS' weighted average cost of debt based on the average debt balances over the year 2003 totals 10.52%.[4] That cost is consistent with the 10.5% aggregate cost testified to by ACS witness David Blessing before the RCA. [Record on Appeal (CD-ROM), Box 3, at 746.]

Thus, the very interpretation of the Form 10K is a subject of dispute. Accordingly, it cannot fairly be said that ACS' debt cost is "capable of accurate and ready determination" as required by Evidence Rule 201(b)(2). Given this dispute, it would be unfair for the court to take judicial notice and deprive ACS of the opportunity to cross-examine GCI's witnesses or to present rebuttal testimony, documentary evidence, and argument on the debt cost issue. ACS' Form 10K is not an appropriate matter for judicial notice, and GCI's motion should be denied.

---

[3] Consistent with the general rule against supplementing the administrative record on appeal, the affidavit and spreadsheet are not offered as evidence for consideration by this court in deciding the substantive merits of GCI's appeal. They are offered only for purposes of opposing the instant motion by demonstrating that the interpretation of the Form 10K is a subject of dispute.

[4] Given that interest rates fluctuate over time, it is appropriate to base a determination of forward-looking interest costs on average debt balances rather than on a static snapshot of the debt balances existing at a single point in time. [Butcher Affidavit, Ex. A.] Thus, while GCI argues that the Form 10K evidences a declining interest rate environment as of year-end 2003, the recent increases in interest rates demonstrate that the costs of financing are subject to constant and often unpredictable fluctuations.

### III. It Is Not Appropriate to Supplement the Administrative Record at this Juncture.

As GCI correctly recognizes, judicial review of an administrative decision ordinarily is confined to the record before the agency. "The focal point for judicial review is the administrative record already in existence, 'not some new record made initially in the reviewing court.'" Asarco v. U.S. Environmental Protection Agency, 616 F.2d 1153, 1159 (9th Cir. 1980), quoting Camp v. Pitts, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244 (1973). Consistent with this general approach, federal district court reviews of state utility commission decisions in UNE proceedings under the Telecommunications Act are based on the administrative record. E.g., Bellsouth Telecommun., Inc. v. ITC Deltacom Commun., Inc., 62 F.Supp.2d 1302, 1307 (M.D. Ala. 1999).

There is no justification for departing from that accepted procedure in this case. In fact, the consideration of additional evidentiary material outside the record would contradict the limited nature of the court's reviewing role. This court is to review the RCA's factual determinations only to determine whether they are supported by substantial evidence in the record, U.S. West Commun., Inc. v. Jennings, 304 F.3d 950, 958 (9th Cir. 2002), but a review of new evidentiary material would inevitably place this court in the position of having to substitute its judgment for that of the RCA based on a different record. See Asarco, 616 F.2d at 1160. While a court may go outside the evidentiary record for very limited purposes such as considering background material or seeking further explanation from the agency, "[c]onsideration of the evidence to determine the correctness or wisdom of the agency's decision is not permitted...." Id.,

at 1160. "Judicial consideration of evidence relevant to the substantive merits of the agency action" is not permitted. Id.

In this instance, ACS' debt restructure was only briefly mentioned in the testimony before the RCA, and as GCI acknowledges, the RCA based its determination of the cost of debt on other factors. [GCI Memo., at 9, n.11. See Box 04, at 1341-43 (Order No. 42); Box 04, at 1836-48 (Order No. 46).] The RCA selected a 10.33% cost of debt because it reflected the risks of operating in the Anchorage market under the competitive conditions assumed by the TELRIC methodology. The RCA stated,

> Facilities-based competition....is far different from the competition ACS-AN currently experiences because of the potential for substantial decrease in cash flow generated from ACS-AN's plant....We, therefore, decided that there was increased financing risk in a TELRIC competitive market, because ACS-AN's cashflow would be substantially lowered, after losing GCI as its largest customer.

[Box 04, at 1847 (Order No. 46).] Accordingly, the RCA elected to adjust the cost of debt to reflect that risk. [Id.] Given the stated rationale for the RCA's decision, consideration of the Form 10K at this juncture would require this court to engage in a different analysis and substitute its judgment for that of the RCA. Such an approach to appellate review is not appropriate under the law.

GCI nonetheless argues that it is only offering the Form 10K "for the limited purposes of establishing that the RCA did not have all the relevant facts at the arbitration," [GCI Memo., at 8], but it is clear that GCI's purpose is to attack the RCA's substantive determination of the cost of capital and its component cost of debt. GCI itself acknowledges that its goal is "to allow the Court to fairly and accurately evaluate **the merits of ACS' claim** on judicial review" respecting "the reasonableness of the

RCA's decision to adopt a 10.33% aggregate debt cost for the cost of capital calculation." [GCI Memo., at 8 (emphasis added).] Under GCI's reading of <u>Asarco</u>, the introduction of new contradictory evidence could always be justified on the grounds that the agency did not have all the facts. However, such an expansive reading of <u>Asarco</u> would negate any meaningful limitations on the introduction of new evidence in administrative appeals. In the context of UNE proceedings, where state regulatory commissions are required to engage in the inherently predictive exercise of determining forward-looking costs, those determinations would always be subject to attack based on evidence showing whether the commissions' forward-looking predictions proved accurate in light of future events.

The issue here is whether the RCA's factual determinations were supported by substantial evidence. As a matter of administrative law and procedure, GCI should not be permitted to reopen its case by supplementing the factual record at this stage of the proceedings. This court's review of the RCA's decisions must be based on the record presented to and considered by the RCA.

### IV. GCI Had An Opportunity to Present ACS' Form 10K to the RCA in the Proceedings Below.

Instead of waiting more than two years before asking this court to supplement the agency record, GCI could have sought to present ACS' Form 10K directly to the RCA. ACS' Form 10K for the year ending December 31, 2003, was filed with the SEC on March 30, 2004. As of that time, the RCA had not yet rendered its initial UNE rate decision. That decision was not issued until June 25, 2004. [Box 04, at 1321-1405

(Order No. 42).] GCI then petitioned to the RCA for reconsideration of that decision, and that petition included a challenge to the RCA's cost of capital and cost of debt determinations. [Box 04, at 1420-50.] The RCA's decision on that petition was not rendered until August 20, 2004. [Box 04, at 1834-70 (Order No. 46).] The RCA did not approve the parties' final interconnection agreement until December 7, 2004, and the docket was not closed until February 10, 2005. [Box 04, at 2150-56 (Order No. 51); Box 04, at 2447-52 (Order No. 52).]

If GCI wanted to supplement the evidentiary record, it had ample opportunity to seek to do so at numerous stages before the RCA. ACS' Form 10K is a public document, available to GCI at the time it was filed in March 2004. As of that point in time, the RCA's initial rate decision was still three months away, and the docket remained open until February 2005, almost a year after the Form 10K was made public. Despite challenging the RCA's cost of capital decision in a petition for reconsideration, GCI neglected to present the Form 10K and assert a challenge on that basis. More than two years have now passed since ACS filed the Form 10K.

Given its own failure to present the Form 10K to the RCA despite ample opportunity to do so, GCI has no basis for complaining now that "the RCA did not have all the relevant facts concerning ACS' debt re-financing at the arbitration." [GCI Memo., at 3.] Nor can GCI justify its delay by arguing that its proposed supplementation has only been necessitated by the citation in ACS and the RCA's opposition briefs to testimony relating to ACS' restructured debt cost. [ See GCI Memo, at 3.] That testimony was presented to the RCA in 2003 [Box 3, at 746 (Blessing Prefiled Direct Testimony)], and

9

if GCI needed to supplement the record to respond to it, it should have sought to do so before the RCA rendered its final rate decision. Having denied the RCA the opportunity in the first instance to consider the Form 10K, GCI should be deemed to have waived any right to supplement the record at this late juncture.

### V. Conclusion.

For the reasons stated, GCI's motion for judicial notice and to supplement the administrative record should be denied, and the Form 10K proffered by GCI should not be considered by the court in rendering its decision in this case.

DATED at Anchorage, Alaska, this 16th day of June, 2006.

TINDALL BENNETT & SHOUP, P.C.
Attorneys for Respondent ACS
of Anchorage, Inc.

By: _____
Richard W. Maki
ABA No. 8211126

I HEREBY CERTIFY that on the 16th day of June, 2006, a true and correct copy of the foregoing was served electronically on the following:

Mark Moderow
Martin M. Weinstein
GCI Communication Corp.
2550 Denali Street, Suite 1000
Anchorage, AK 99503

Robert A. Royce
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, AK 99501

By: _____
Tindall Bennett & Shoup, P.C.

TINDALL BENNETT & SHOUP, P.C.
508 WEST 2ND AVENUE, THIRD FLOOR
ANCHORAGE, ALASKA 99501
(907) 278-8533
FAX (907) 278-8536