Martin M. Weinstein
General Communication, Inc.
2550 Denali Street, Suite 1000
Anchorage, Alaska 99503
Phone: 907-868-6561
Email:   mweinstein@gci.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GCI COMMUNICATION CORP., d./b/a GENERAL COMMUNICATION, INC. d/b/a GCI<br><br>Petitioner<br><br>v.<br><br>KATE GIARD, in her official capacity as Chairwoman of the Regulatory Commission Of Alaska;<br><br>DAVE HARBOUR, in his official capacity as Commissioner of the Regulatory Commission Of Alaska;<br><br>MARK K. JOHNSON, in his official capacity As Commissioner of the Regulatory Commission of Alaska;<br><br>ANTHONY PRICE, in his official capacity As Commissioner of the Regulatory Commission of Alaska;<br><br>JAMES S. STRANDBERG, in his official Capacity as Commissioner of the Regulatory Commission of Alaska;<br><br>And, | Case No. A05-003 CIV(RRB)<br><br><br><br><br><br><br><br><br><br>**AFFIDAVIT OF<br>PETER POUNDS** |

Case No. Case No. A05-003 CIV (RRB)
Affidavit of Peter Pounds
June 23, 2006
Page 1 of 6

| | |
|---|---|
| ACS OF ANCHORAGE, INC. d/b/a ALASKA COMMUNICATIONS SYSTEMS, ACS LOCAL SERVICE, and, ACS; | ) ) ) ) |
| Respondents. | ) ) |

STATE OF ALASKA        )
                                        )  ss.
THIRD JUDICIAL DISTRICT  )

Peter Pounds, being duly sworn upon oath, deposes and states as follows:

1. I am employed by GCI Communication Corp. as a Senior Financial Analyst. In this capacity, I work with GCI's debt and equity analysts and perform miscellaneous other special projects related to GCI's finances. I am a certified public accountant by training and also a CFA charterholder (chartered financial analyst).

2. I have reviewed the Affidavit of Ms. Laurie Butcher that is filed as Exhibit A to ACS' Opposition To GCI's Motion For Judicial Notice And Supplementation Of Record. Ms. Butcher's affidavit is noteworthy both for what it says and what it does not say. First, as to what it says, Ms. Butcher presents a new spreadsheet analysis of ACS' weighted average cost of its debt for the entire year 2003. This new analysis does not narrowly focus on the issue regarding what ACS' cost of debt was from the re-financing it conducted in the summer of 2003. Ms. Butcher seems to be well aware of the fact that the August refinancing by ACS was done at interest rates substantially below 10.5%

Case No. Case No. A05-003 CIV (RRB)
Affidavit of Peter Pounds
June 23, 2006
Page 2 of 6

as clearly evidenced by the SEC Form 10-K it filed for the fiscal year ended December 31, 2003, GCI Exh. N. This seems to be why she has changed the topic from the interest rates from the August refinancing onto a different and purportedly less damning "average" interest rate calculation for the year 2003.

3. Although Ms. Butcher's new spreadsheet analysis purports to show the average effective interest rate for all of 2003 at ACS, it includes information regarding what the effective interest rate was for the August refinancing. There are three line items on Ms. Butcher's spreadsheet that relate to the August refinancing, which are highlighted below:

| Debts from 8-26-03 Refinance | Amount of Indebtedness | % of Year Outstanding | Average Balance | Effective Int. Rate | Annual Interest Paid |
|---|---|---|---|---|---|
| Term Loan B | 200,000,000 | 35.068% | 70,136,986 | 5.223% | 10,446,000 |
| Senior Notes Due 2011 | 182,000,000 | 35.068% | 63,824,658 | 10.649% | 19,381,180 |
| Senior Notes OID | (5,856,000) | 101.811% | (5,962,024) | | 0 |
| Total | 376,144,000 | | | 7.93% | 29,827,180 |

The actual "amount of indebtedness" set forth in the spreadsheet ties directly to the ACS 2003 10-K. The "Average Balance" comes directly from Ms. Butcher's spreadsheet and appears reasonable since it assumes the average debt balance ACS had from the August 26th refinancing for the entire year. The effective interest rate on these debt amounts comes directly from Ms. Butcher's spreadsheet and appears reasonable. The only "error" that is noted in the presentation of the August 26th refinancing was that the Original Issued Discount appears to be the full amount and not the average amount for the year, which

Case No. Case No. A05-003 CIV (RRB)
Affidavit of Peter Pounds
June 23, 2006
Page 3 of 6

was likely an unintended error that slightly increased ACS' effective interest rate.

4.   Ms. Butcher's spreadsheet shows that the amount that was borrowed in the August 2003 refinancing was approximately $376,144,000 (according to the 2003 10-K) and using the "Effective Interest Rates" provided by Ms. Butcher, the weighted average cost of Debt for the August 2003 refinance was approximately 7.93%, which as stated earlier, is substantially below 10.5%.

5.   I wish to add, however, that Ms. Butcher's new spreadsheet analysis contains some fairly significant and unexplained discrepancies between the stated interest rates and the effective interest rates for some of the debt shown in the spreadsheet. It is typical to have a difference between the stated interest rate and effective interest rate that is relatively minor and in most cases less than 1%. However, when you look at Ms. Butcher's spreadsheet, the "Tranche A" debt, for example, has a stated interest rate of 3.584% but allegedly has an effective interest rate of 11.343%, which is more than triple the stated rate. A similar pattern exists for "Tranche B" and "Tranche C." These debts are a significant if not overwhelming reason for the high interest rate ACS claims for the total year in 2003, and yet ACS has not provided one shred of information regarding the debt issuance costs and interest rate hedging instrument fees that allegedly are the cause for the difference. Without a

Case No. Case No. A05-003 CIV (RRB)
Affidavit of Peter Pounds
June 23, 2006
Page 4 of 6

thorough investigation of these costs, which I understand is beyond the province of this Court's purview, ACS' claim that its weighted average cost of debt for 2003 was 10.52% is not credible.

6.     Lastly, I wish to discuss what Ms. Butcher's spreadsheet does not show. Nowhere in her affidavit or spreadsheet does Ms. Butcher contradict the accuracy of the interest rates ACS reported in its SEC Form 10-K for its refinancing in 2003. Ms. Butcher's spreadsheet simply additionally provides the effective interest rates for these debt amounts, which as discussed above, still show that ACS' debt cost from the refinancing in August 2003 was substantially lower than 10.5%. Furthermore, the spreadsheet includes a lot of irrelevant information about ACS' old debt and averages all of that debt with the refinanced amounts in August 2003. This analysis does not change or contradict the interest rates that ACS obtained for its new debt in the summer of 2003.

7.     This concludes my statement.

**DATED** at Anchorage, Alaska this 23rd day of June 2006.

_Peter Pounds_
Peter Pounds

**SUBSCRIBED AND SWORN** to before me this 23 day of June 2006.

_Thelma Bates_
Notary Public for and in the State of Alaska
My Commission expires: 11-15-2007

Case No. Case No. A05-003 CIV (RRB)
Affidavit of Peter Pounds
June 23, 2006
Page 5 of 6

State of Alaska
NOTARY PUBLIC
Thelma Bates
My Commission Expires November 15, 2007

GCI Communication Corp.
2550 Denali Street, Suite 1000
Anchorage, AK 99503
(907) 265-5600

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing was electronically served on the counsel of record identified below this 23rd day of June, 2006.

Robert Royce
Assistant Attorney General
Department of Law
1031 W. 4th Avenue, Suite 200
Anchorage, Alaska 99501

Richard Maki
Tindall Bennett & Shoup
508 West 2d Avenue, Third Floor
Anchorage, Alaska 99501

By:  /s Martin M. Weinstein
     Martin M. Weinstein

GCI Communication Corp.
2550 Denali Street, Suite 1000
Anchorage, AK 99503
(907) 265-5600

Case No. Case No. A05-003 CIV (RRB)
Affidavit of Peter Pounds
June 23, 2006
Page 6 of 6