1997 WL 618920 (F.C.C.), 13 F.C.C.R. 1755, 13 FCC Rcd. 1755, 9 Communications Reg. (P&F) 1146

Federal Communications Commission (F.C.C.)

Memorandum Opinion and Order

IN THE MATTER OF PETITION FOR COMMISSION ASSUMPTION OF JURISDICTION OF LOW TECH DESIGNS, INC.'S PETITION FOR ARBITRATION WITH AMERITECH ILLINOIS BEFORE THE ILLINOIS COMMERCE COMMISSION
CC Docket No. 97-163

PETITION FOR COMMISSION ASSUMPTION OF JURISDICTION OF LOW TECH DESIGNS, INC.'S PETITION FOR ARBITRATION WITH BELLSOUTH BEFORE THE GEORGIA PUBLIC SERVICE COMMISSION
CC Docket No. 97-164

PETITION FOR COMMISSION ASSUMPTION OF JURISDICTION OF LOW TECH DESIGNS, INC.'S PETITION FOR ARBITRATION WITH GTE SOUTH BEFORE THE PUBLIC SERVICE COMMISSION OF SOUTH CAROLINA
CC Docket No. 97-165

FCC 97-362
Adopted: October 7, 1997
Released: October 8, 1997

*1755 By the Commission:

*1756 I. INTRODUCTION

1. This Memorandum Opinion and Order addresses three petitions Low Tech Designs, Inc. (LTD) filed with the Commission on July 11, 1997, for "assumption of jurisdiction" of arbitration proceedings, [FN1] pursuant to section 252(e)(5) of the Communications Act of 1934, as amended. [FN2] Section 252(e)(5) authorizes the Commission to preempt a state commission in any proceeding or matter in which the state commission "fails to act to carry out its responsibility" under section 252. [FN3] Section 252 sets out the procedures by which telecommunications carriers may request and obtain interconnection, resale services or unbundled network elements from an incumbent local exchange carrier (LEC) either through voluntary negotiations or through mediation or arbitration by state commissions. [FN4]

2. LTD contends that the Illinois Commerce Commission (Illinois Commission), the Georgia Public Service Commission (Georgia Commission), and the Public Service Commission of South Carolina (South Carolina Commission) each failed to fulfill its duty under section 252(b) to arbitrate failed negotiations between LTD and Illinois Bell Telephone Company d/b/a Ameritech Illinois (Ameritech), BellSouth Telecommunications, Inc. (BellSouth), and GTE South, Inc. (GTE), respectively. Each of the three state commissions dismissed or denied LTD's arbitration petition on the ground that LTD did not satisfy a statutory prerequisite to invoke compulsory arbitration under section 252(b). [FN5] For the reasons discussed below, we find that LTD has not proven that the Illinois, Georgia, or South Carolina commissions "failed to act" on its requests for arbitration, within the meaning of our *1757 rules implementing section 252(e)(5). [FN6] We therefore deny LTD's petitions and do not preempt the jurisdiction of these state commissions. As the petitions raise common issues for the Commission's consideration, we address LTD's three petitions in this Memorandum Opinion and Order. [FN7]

II. BACKGROUND

A. Statutory Provisions

3. Congress adopted sections 251 and 252 of the Act to foster local exchange competition by imposing certain requirements on incumbent LECs that are designed to facilitate the entry of competing telecommunications carriers. Section 251 describes the various requirements designed to

EXHIBIT 20

PAGE 1 of 17

promote market entry, including incumbent LECs' obligations to provide to requesting telecommunications carriers interconnection, unbundled network elements and services for resale. [FN8] Section 252 sets forth the procedures by which telecommunications carriers may request and obtain interconnection, unbundled network elements and services for resale from an incumbent LEC pursuant to section 251. [FN9] Specifically, section 252 establishes a scheme whereby telecommunications carriers may obtain interconnection with the incumbent according to agreements fashioned through (1) voluntary negotiations among the carriers, (2) mediation by state commissions, and (3) arbitration by state commissions. [FN10] These interconnection agreements must then be submitted for approval to the appropriate state commission. [FN11]

*1758 4. Section 252(e)(5) directs the Commission to assume responsibility for any proceeding or matter in which the state commission " fails to act to carry out its responsibility" under section 252:
(5) COMMISSION TO ACT IF STATE WILL NOT ACT. -- If a State commission fails to act to carry out its responsibility under this section in any proceeding or other matter under this section, then the Commission shall issue an order preempting the State commission's jurisdiction of that proceeding or matter within 90 days after being notified (or taking notice) of such failure, and shall assume the responsibility of the State commission under this section with respect to the proceeding or matter and act for the State commission. [FN12]

B. Commission's Regulations

5. In our Local Competition Order, we adopted "interim procedures" to exercise our preemption authority under section 252(e)(5) in order to "provide for an efficient and fair transition from state jurisdiction should we have to assume the responsibility of the state commission ...." [FN13] We concluded that we would not take an "expansive view" of what constitutes a state commission's "failure to act" for purposes of section 252(e)(5). [FN14] Rather, we interpreted "failure to act" to mean a state's failure to complete its duties in a timely manner. We limited the instances under which Commission preemption pursuant to section 252(e)(5) is appropriate to "where a state commission fails to respond, within a reasonable time, to a request for mediation or arbitration, or fails to complete arbitration within the time limits of section 252(b)(4)(C)." [FN15] Under our rules, "[t]he party seeking preemption [pursuant to section 252(e)(5)] must prove that the state [commission] has failed to act to carry out its responsibilities under section 252 of the Act." [FN16] Further, we concluded that once we assume jurisdiction of a matter pursuant to section 252(e)(5), "any and all further action regarding that proceeding or matter will be before the Commission," rather than before the state commission *1759 that has failed to act. [FN17] The United States Court of Appeals for the Eighth Circuit, in its review of the Local Competition Order, acknowledged that the Commission has authority, pursuant to section 252(e)(5), to preempt a state commission's jurisdiction if that commission fails to fulfill its duties under section 252 of the Act. [FN18]

C. Procedural History

1. LTD's Petition for Arbitration Before the Illinois Commission

6. LTD asked Ameritech to commence negotiations for interconnection on August 23, 1996. [FN19] Ameritech acknowledged LTD's request on August 27, 1996. [FN20] LTD maintains that it was a "new entrant telecommunications carrier not certificated in Illinois" at the time it initiated negotiations with Ameritech. [FN21]

7. On January 30, 1997, following unsuccessful negotiations with Ameritech, LTD filed a petition for arbitration with Ameritech before the Illinois Commission. [FN22] LTD stated therein that it initially intended to enter the local exchange market under the resale provisions of the Act and that it also intended to offer enhanced call processing services by utilizing unbundled network elements. [FN23] LTD's Illinois petition set forth six issues related to access to and interconnection with Ameritech's AIN. The seventh issue related to Ameritech's duty under the Act to negotiate in good faith. [FN24] The arbitration petition did not set forth any issues relating to resale, and noted that resale issues, and other issues that the parties had not yet *1760 discussed, would be presented at a later time if the parties were unable to negotiate an agreement. [FN25]

8. The Hearing Examiner appointed to consider the dispute scheduled an initial pre-hearing conference for February 11, 1997, at which a detailed schedule for the arbitration was established. [FN26] On February 14, 1997, the Hearing Examiner granted Ameritech's motion to strike the issue in

EXHIBIT 20
PAGE 2 of 17

the petition relating to Ameritech's duty to negotiate in good faith. [FN27] One week later, the parties presented oral arguments and the Hearing Examiner directed LTD to respond to two data requests from Ameritech. [FN28]

9. On February 24, 1997, Ameritech filed its response to the arbitration petition, as well as a motion to deny the petition. Ameritech argued that LTD lacked standing to arbitrate pursuant to section 252 because LTD was not a "telecommunications carrier" as defined in the Act. [FN29] Ameritech further asserted that LTD's petition was not a request for interconnection, access to unbundled elements network elements, resale, or any other matter that can be arbitrated under the Act. [FN30] On February 28, 1997, the Illinois Commission staff and LTD each filed a response to Ameritech's motion to deny the petition; the Illinois Commission staff supported the motion, and LTD opposed it. [FN31] Ameritech filed a reply and proposed order on March 4, 1997. [FN32] The Hearing Examiner issued a Proposed Order on March 10, 1997 that recommended that the Illinois Commission dismiss LTD's arbitration petition on the ground that LTD was not a "telecommunications carrier" as defined by the Act. [FN33] Briefs and reply briefs were filed on March 17 and 21, 1997, respectively. [FN34]

*1761 10. The Illinois Commission issued an arbitration decision on March 31, 1997 dismissing LTD's petition. [FN35] It dismissed the petition on the ground that LTD was not a "telecommunications carrier," as defined in the Act, and, therefore, was not entitled to compulsory arbitration with Ameritech under section 252(b). [FN36] Although LTD was not certified to operate in Illinois, the Illinois Commission concluded that this was not dispositive of the case. [FN37] Rather, the Illinois Commission concluded that LTD was not a "telecommunications carrier," as defined in section 3(44) of the Act, because it did not provide, at the time of the arbitration, "telecommunications service," as defined in section 3(46) of the Act. [FN38] The Illinois Commission concluded that "[i]t is not a burdensome requirement under the 1996 Act for an entity to show some evidence that it has the financial, managerial, and technical ability to serve the public, by showing that -- at least somewhere in this country -- the entity is a telecommunications carrier actively engaged in the provision of telecommunications service." [FN39] The Illinois Commission did not address the other issues raised in Ameritech's motion to deny the petition. [FN40]

2. LTD's Petition for Arbitration Before the Georgia Commission

11. LTD asked BellSouth to commence negotiations for interconnection in Georgia pursuant to the 1996 Act on August 12, 1996. [FN41] BellSouth acknowledged LTD's request on August 19, 1996, and stated that it was ready to begin negotiations with LTD. LTD maintains that it was a "new entrant telecommunications carrier not certificated in Georgia" at the time that it initiated negotiations with BellSouth. [FN42]

*1762 12. On January 16, 1997, after unproductive negotiations with BellSouth, LTD filed a petition for arbitration with BellSouth before the Georgia Commission. [FN43] BellSouth filed an answer and motion to dismiss the arbitration petition on February 14, 1997. [FN44] A pre-arbitration conference was held on March 10, 1997, at which the question of whether LTD was a "telecommunications carrier" proposing a "telecommunications service" was discussed. [FN45] The Hearing Officer issued a pre-hearing order on March 28, 1997, ruling, among other things, that the issue of whether LTD was a "telecommunications carrier" proposing a "telecommunications service" had not been resolved and would be among the issues decided by the Georgia Commission. [FN46] The parties next engaged in discovery and filed written testimony in late March and early April. [FN47]

13. On April 9, 1997, BellSouth filed a second motion to dismiss the arbitration, in which it challenged LTD's status as a "telecommunications carrier." [FN48] LTD filed its response on April 11, 1997, and the Georgia Commission heard oral argument on this issue at the outset of the arbitration hearing on April 17, 1997. [FN49] The parties filed supplemental briefs on this issue. On May 19, 1997, the Georgia Commission issued an order dismissing the arbitration. [FN50] The Georgia Commission dismissed without prejudice LTD's arbitration petition on the ground that LTD was not a telecommunications carrier in Georgia and, therefore, was not entitled to initiate arbitration before the Georgia Commission under section 252(b). [FN51] The Georgia Commission stated that it would not consider an entity to be a telecommunications carrier in Georgia until that entity obtains a certificate of authority from the Georgia Commission, pursuant to a provision in Georgia's Telecommunications and Competition Development Act of 1996 that prohibits a telecommunications company from providing *1763 telecommunications service without a certificate of authority from the state commission. [FN52] The Georgia Commission also concluded that an entity must propose to offer a telecommunications service in order to be eligible to enforce section 251 and 252's

EXHIBIT 20
PAGE 3 of 17

requirements through compulsory arbitration. [FN53] The Georgia Commission noted that LTD's proposed service did not appear to be a telecommunications service, but that LTD would have an opportunity in the hearing on its application for a certificate of authority to establish that its proposed service is a telecommunications service. [FN54]

14. On May 27, 1997, LTD filed with the Georgia Commission a Motion for Reconsideration, Rehearing and Oral Argument of Commission Order Dismissing the Arbitration. [FN55] LTD asked for a complete arbitration or, alternatively, a formal rehearing and oral argument. Further, LTD asked the Georgia Commission to approach the Commission jointly with LTD, to obtain rulings regarding eligibility for arbitration of the least cost routing service LTD proposed to offer, should the Georgia Commission deny LTD's other requests. [FN56] On July 7, 1997, the Georgia Commission issued an order denying LTD's motion, and affirming the May 19, 1997 order dismissing LTD's arbitration petition for lack of jurisdiction because LTD has not obtained a certificate of authority in Georgia, and therefore, is not a telecommunications carrier. [FN57] The Georgia Commission also adopted in the Reconsideration *1764 Order a recommendation of the Consumers' Utility Counsel Division of the Governor's Office of Consumer Affairs that if and when LTD obtains a certificate of authority to provide telecommunications service in Georgia, it will not have to wait an additional 135 days, after becoming certificated, to file a new petition for arbitration pursuant to section 252(b)(1). [FN58]

3. LTD's Petition for Arbitration Before the South Carolina Commission

15. LTD filed for certification by the South Carolina Commission in March 1996, shortly after passage of the 1996 Act. [FN59] The South Carolina Commission rejected LTD's application for failure to file proposed tariffs, and LTD did not refile its application. [FN60]

16. LTD asked GTE to commence negotiations for interconnection on August 12, 1996. [FN61] GTE acknowledged LTD's request on August 19, 1996, and stated that it was ready to begin interconnection negotiations with LTD in South Carolina. [FN62] LTD maintains that it was a "new entrant telecommunications carrier not certificated in South Carolina" at the time it initiated negotiations with GTE. [FN63]

17. On or about January 17, 1997, after unsuccessful negotiations with GTE, LTD filed a petition for arbitration with the South Carolina Commission. [FN64] The petition requested that the South Carolina Commission arbitrate several issues between LTD and GTE to establish an interconnection agreement. [FN65] LTD was aware of a provision of South Carolina *1765 law, passed in May, 1996, [FN66] that defined a "new entrant LEC" as a "telecommunications company holding a certificate of public convenience and necessity issued by the commission pursuant to Section 58-9-280(B) after December 31, 1995, to provide local exchange service within a certificated geographic service area of the State." [FN67] LTD admitted in its arbitration petition that it was not certificated in South Carolina and asked for relief, for arbitration purposes, from South Carolina's certification requirement. [FN68]

18. GTE filed a response in opposition to the arbitration petition on or about February 3, 1997, and LTD filed an answer to GTE's response on or about February 7, 1997. [FN69] On March 4, 1997, the South Carolina Commission issued an order denying LTD's arbitration petition, on the basis that LTD lacked the required state certification. [FN70] It rejected LTD's argument that the South Carolina statutory certification requirement was a "barrier to entry" under section 253(a) [FN71] and instead maintained that the statutory provision was a "requirement[] necessary to ... protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers," consistent with section 253(b). [FN72]

D. LTD's Petitions for Commission "Assumption of Jurisdiction"

19. LTD requests in its petitions that the Commission "assume jurisdiction" of the arbitration proceedings it requested before the Illinois, Georgia, and South Carolina commissions, pursuant to section 252(e)(5). It alleges that the three state commissions "failed to fulfill [their] duty to arbitrate failed negotiations" between LTD and Ameritech, BellSouth, and GTE, respectively, pursuant to section 252(b). [FN73] It does not allege, however, that any of the state commissions "failed to act" upon its arbitration request in a timely manner, nor that *1766 any of the arbitration decisions were untimely rendered. [FN74] Rather, it challenges the substantive bases upon which each state commission determined that LTD was not entitled to invoke compulsory arbitration with the relevant incumbent LEC under the Act.

20. LTD describes itself in each of the petitions as a "new entrant requesting telecommunications

EXHIBIT 20
PAGE 4 of 17

carrier attempting to enter the local telecommunications services market." [FN75] Its stated intention is to offer resold local exchange services and new telecommunications services using unbundled network elements. [FN76] LTD maintains in the petitions filed with the Commission, as it did in its arbitration petitions, that it is a "telecommunications carrier," as "defined and anticipated by Sections 3(49) [sic] and 252(a)(1) of the Act, respectively, and applicable FCC rules and interpretations." [FN77]

21. LTD raises identical arguments in its petitions requesting that the Commission preempt the Georgia and South Carolina arbitration proceedings, as the Georgia and South Carolina commissions dismissed or denied LTD's arbitration petition based on its failure to obtain certification pursuant to state statutory requirements. LTD states that "entities" entitled to negotiate with an incumbent LEC under sections 251 and 252 of the Act should have the right to arbitrate with the incumbent LEC in the event the negotiations are not successful, regardless of whether a carrier has complied with a state's certification requirements. [FN78] It contends that the Commission agreed with LTD's view that the right to negotiate and arbitrate should not be dependent upon state certification requirements when the Commission concluded in the Local Competition Order that state certification was not a preliminary requirement for good faith negotiations between requesting telecommunications carriers and incumbent LECs. [FN79] LTD further maintains that, because arbitrations result from the failure to *1767 obtain a negotiated interconnection agreement, state laws denying arbitration to a new entrant that has been in negotiations with an incumbent LEC violate section 253(a) of the Act. [FN80] LTD contends that such state laws "ha[ve] the effect of prohibiting 'any entity,' such as an uncertificated new entrant telecommunications carrier, [from] the ability to offer telecommunications services." [FN81] LTD also asserts that the Georgia and South Carolina commissions' practice of approving negotiated agreements between incumbent LECs and new entrant telecommunications companies, without requiring the new entrant companies to be certificated, but refusing to arbitrate an unsuccessfully negotiated agreement between an incumbent LEC and an uncertificated entity, violates the "competitively neutral basis" requirement of section 253(b). [FN82]

22. Finally, LTD offers several "business reasons" why small "new entrant telecommunications carriers," such as LTD, should not be required to obtain state certification in advance of arbitration. LTD claims that it cannot say with certainty that it has a complete and viable business plan and will be able to offer a full range of telecommunications services in a particular state until it is able to obtain, through arbitration, the unbundled network elements and rates it needs. Further, it contends that its inability to finalize a business plan prior to the completion of arbitration will negatively affect its ability to attract investors. [FN83] LTD maintains that it should not be required to incur the expense of obtaining certification until it is certain that it can obtain the unbundled network elements necessary for the provisioning of services. [FN84]

23. LTD's petition with respect to the Illinois arbitration alleges that the Illinois Commission's decision is "flawed" because the Illinois Commission dismissed the petition on *1768 the ground that LTD was not providing telecommunications services in another state. [FN85] LTD argues that the Illinois Commission would not consider LTD to be a "telecommunications carrier" under the Act until LTD is providing a telecommunications service somewhere, but that LTD, as a new entrant, is unable to provide telecommunications service until it can reach an interconnection agreement with an incumbent LEC. [FN86] It maintains that the requirement that a new entrant must be offering services in order to arbitrate precludes new entrants from entering the market in violation of section 253(a). [FN87] LTD also contends that the Commission's definition of "telecommunications carrier" in the Local Competition Order supports its contention that new entrant requesting carriers such as LTD, that have engaged in negotiations with incumbent LECs for the purpose of offering public telecommunications for a fee, are "telecommunications carriers" under the Act. [FN88]

E. Responses of the State Commissions and the Incumbent LECs

24. The Georgia, South Carolina, and Illinois commissions urge the Commission to dismiss or deny LTD's petition involving their state proceeding. They contend that they carried out their responsibility with respect to LTD's arbitration petitions, that they did not "fail[] to act" for purposes of section 252(e)(5), and that the Commission lacks jurisdiction to conduct an arbitration on LTD's behalf. [FN89] The Illinois Commission asserts that, under the Commission's interpretation of "failure to act" in the Local Competition Order, LTD has the burden of establishing that the Illinois Commission failed to respond to LTD's request for arbitration within a reasonable time frame. [FN90] It specifically contends that LTD has not met this burden and that a "disagreement with a state commission over an

EXHIBIT 20
PAGE 5 of 17

interpretation of the law is not a 'failure to act' as that term is used in § 252(e)(5)." [FN91]

25. The Georgia and South Carolina commissions also respond to LTD's section 253 argument. They contend that their state certification requirements do not constitute "barriers to entry" under section 253 and that these requirements are consistent with the Act *1769 and the Commission's rules. [FN92] In response to LTD's argument that it is inconsistent for the state commission to approve negotiated agreements when the requesting party is non-certificated, but to dismiss or deny LTD's arbitration petition, both state commissions contend that they are required to expend a substantially greater amount of time and administrative resources to conduct an arbitration, than to approve a negotiated agreement. [FN93] They contend that they are entitled to ascertain whether a company can qualify to provide the proposed service before undertaking a costly and potentially lengthy arbitration. [FN94] The South Carolina Commission further notes that all entities eventually must file a certification application and undergo examination before they can provide local service. [FN95]

26. The Georgia Commission also states that LTD's motion for reconsideration was based, in part, on the argument that it should be considered a reseller and that the dismissal of its arbitration petition violates section 251(b). [FN96] The Georgia Commission asserts that it properly determined that LTD is not certificated as a local service reseller in Georgia, and that its arbitration petition was premised upon its request that certain AIN and related items be made available as unbundled network elements under section 251(c). [FN97] Further, the Georgia Commission was not persuaded that arbitration may be pursued under section 252(b) by a non-certificated entity even if that entity pressed claims solely under section 251(b)'s resale obligations. It states that the Commission, pursuant to section 253(b), must defer to Georgia's statutory requirement that a reseller of local exchange services must obtain a certificate. [FN98] Finally, the Georgia Commission reiterated the commitment in its arbitration *1770 decision to treat a new petition for arbitration filed by LTD as timely if LTD obtains a certificate to provide telecommunications services in Georgia. [FN99]

27. Ameritech, BellSouth, and GTE also contend that there is no basis for Commission preemption of the Georgia, South Carolina and Illinois arbitration proceedings, respectively, under section 252(e)(5) of the Act or section 51.801(b) of the Commission's rules. [FN100] They state that the state commissions neither failed to initiate an arbitration proceeding in a timely manner, nor failed to reach a decision within the time limit established by the Act. [FN101] BellSouth and GTE further state that LTD's sole remedy is to seek review of the arbitration decision in the United States District Court, pursuant to section 252(b)(6). [FN102] They argue that the Commission should not address the merits of the arbitration decisions, but if it does so, that it lacks authority to preempt Georgia and South Carolina's certification requirements. [FN103] They urge the Commission to reject LTD's argument that the certification requirement is not "competitively neutral." BellSouth also advances the argument that a state commission should not be required to devote its resources to arbitrate a dispute at the request of a person who may never qualify to offer telecommunications services in that state. [FN104] BellSouth contends that this reasoning is consistent with the Act's definition of "telecommunications carrier." [FN105]

*1771 28. LTD, in response to the oppositions of the state commissions and the incumbent LECs to its petitions, states that none of the parties produced evidence that the arbitration decisions resolved the differences between LTD and the relevant incumbent LEC, nor did they contend that LTD's petition was defective in any matter that would justify its dismissal or denial. [FN106] It contends that the basis upon which the Georgia Commission dismissed and the South Carolina Commission denied its petition, i.e., its alleged failure to satisfy state certification requirements, "is at odds with the pro-competitive intent of the Act." [FN107] It summarily asserts that these state commissions should not be permitted to use their section 253(b) authority as a tool to dismiss or deny "properly filed arbitration requests." [FN108]

29. LTD states that section 252(a)(1) supports its contention that it is a "telecommunications carrier" entitled to arbitration under section 252(b). [FN109] Specifically, it contends that a party requesting interconnection, services or network elements from an incumbent LEC is necessarily a "requesting telecommunications carrier." It further relies on the following sentence in the legislative history of the Act to support its view that arbitration should be available to a new entrant such as LTD if negotiations with the relevant incumbent LEC fail: "the duties imposed under new section 251(b) make sense only in the context of a specific request from another telecommunications carrier or any other person who actually seeks to connect with or provide services using the LEC's network." [FN110]

30. LTD disputes the Georgia Commission, BellSouth and GTE's contention that it is required to seek review of the state commissions' arbitration decisions in federal district court. It maintains that

EXHIBIT 20
PAGE 6 of 17

section 252(e)(6) only requires district court review for parties that have been aggrieved by a state commission determination involving an interconnection agreement or a statement of generally available terms, and that Commission assumption of *1772 jurisdiction over LTD's arbitrations is the only remedy available to it. [FN111] It also states that the parties "ignore" 47 C.F.R. § 51.301(c) (4), which precludes an incumbent LEC from conditioning negotiation on a requesting telecommunications carrier first obtaining state certification, and repeats its argument that state commissions should likewise be required to arbitrate failed negotiations even if the requesting party is not certificated. [FN112] LTD further contends that the Eighth Circuit's decision in Iowa Utils. Bd. supports its position to the extent that it describes the entities that are able to avail themselves of arbitration as "competing companies, requesting new entrant, and competing telecommunications carriers," and recognizes that a final agreement, whether accomplished through negotiation or arbitration, "must" be approved by the state commission. [FN113]

### III. DISCUSSION

31. Section 252(e)(5) directs the Commission to preempt the jurisdiction of a state commission in any proceeding or matter in which a state commission "fails to act to carry out its responsibility under [section 252]." [FN114] Pursuant to our preemption jurisdiction under section 252(e)(5), we adopted rules to implement this statutory provision. For the reasons discussed below, we conclude that LTD has not proven that, because the Illinois, Georgia, and South Carolina commissions dismissed or denied LTD's arbitration petitions on the basis that LTD did not satisfy a statutory prerequisite to invoke compulsory arbitration under section 252(b), these state commissions "failed to act" on its arbitration requests. We find, based on the record before us, that these three state commissions did not "fail to act" under our rules *1773 implementing section 252(e)(5), because they responded to LTD's requests for arbitration and rendered a final decision in each arbitration in a timely manner. We therefore deny LTD's petitions for Commission preemption of the Illinois, Georgia, and South Carolina arbitration proceedings.

32. LTD advances essentially two arguments in each of its petitions for Commission preemption pursuant to section 252(e)(5). First, LTD contends that the Georgia, Illinois, and South Carolina commissions "failed to act," because they did not conduct an arbitration that resolved the issues raised in the arbitration petitions. [FN115] Second, LTD challenges the substantive bases upon which each state commission determined that LTD has not satisfied a statutory prerequisite to invoke arbitration under section 252(b). [FN116]

33. Neither of these arguments provides a basis for preemption under our rules implementing section 252(e)(5). With respect to the first argument, we conclude that these three state commissions have not "failed to act" under our rules implementing section 252(e)(5) solely because they dismissed or denied LTD's arbitration request on the ground that LTD is not entitled to invoke arbitration under section 252(b). [FN117] In the Local Competition Order, we stated that we would not take an "expansive view" of what constitutes a state commission's failure to act, noting our belief that "states [would] meet their responsibilities and obligations under the 1996 Act." [FN118] We therefore determined that we would preempt a state commission's jurisdiction for "failure to act" under section 252(e)(5) only in those "instances where a state commission fails to respond, within a reasonable time, to a request for mediation or arbitration, or fails to complete arbitration within the time limits of section *1774 252(b)(4)(C)." [FN119] Thus, under our current rules, a state commission does not "fail to act" when it dismisses or denies an arbitration petition on the ground that it is procedurally defective, the petitioner lacks standing to arbitrate, or the state commission lacks jurisdiction over the proceeding.

34. Applying our rules in these instances, we find that the Illinois, Georgia, and South Carolina commissions responded to LTD's request for arbitration by immediately initiating proceedings. After establishing pleading cycles and affording the parties an opportunity to present their arguments on the issue of whether LTD is entitled to invoke arbitration under section 252(b), each of the state commissions considered the issue and determined that LTD had not satisfied the statutory requirements to proceed with arbitration. [FN120]

35. Moreover, LTD does not claim that the Georgia and South Carolina commissions acted outside of any statutory time frame. Although LTD contends that the Illinois Commission failed to complete its arbitration duty within the statutory time limits of section 252(b)(4)(C), [FN121] we note that the Illinois Commission issued its Arbitration Decision approximately seven months after Ameritech received LTD's request for interconnection, well within any statutory deadline. [FN122]

EXHIBIT 20
PAGE 7 of 17

36. We further conclude that LTD's second argument does not provide a ground for preemption under our rules implementing section 252(e)(5). Because section 51.801 of our rules does not focus on the validity of state commission decisions, we do not see a basis under our rules for examining the underlying reasoning of these state commissions' decisions. *1775 We therefore cannot conclude that the Illinois, Georgia, and South Carolina commissions have " failed to act" under our rules implementing section 252(e)(5). Accordingly, we do not preempt the state commissions' jurisdiction and assume responsibility for these arbitrations.

37. We also reject LTD's argument that it has no forum in which to challenge the substantive bases of the state commissions' decisions that LTD is not entitled to invoke compulsory arbitration under section 252(b). LTD's argument is based on its interpretation of the language in section 252(e)(6), which it interprets to mean that federal district court review is available only "for parties that have been aggrieved by a State Commission determination involving an actual interconnection agreement or statement of generally available terms." [FN123] The Eighth Circuit, in its review of the Local Competition Order, recently stated that an aggrieved party should seek federal district court review pursuant to section 252(e)(6) "to attain review of state commission determinations under the Act." [FN124] Thus, under the Eighth Circuit's holding in Iowa Utils. Bd., LTD still may challenge these state commission determinations in federal district court pursuant to section 252(e)(6).

38. Finally, we note that, among its arguments, LTD contends that the legal requirements imposed by these state commissions violate section 253(a) and section 253(b). [FN125] LTD's petitions, however, do not seek preemption of these legal requirements pursuant to section 253(d). [FN126] Rather, LTD's petitions request only that the Commission assume responsibility for these arbitration proceedings pursuant to section 252(e)(5). We find that LTD has no set forth adequate record evidence that demonstrates that the legal requirements imposed by the Illinois, Georgia, and South Carolina commissions "prohibit or have the effect of prohibiting the ability of [LTD] to provide any interstate or intrastate telecommunications service." [FN127] For instance, LTD simply asserts that these state legal requirements are barriers to entry, but offers no record evidence to demonstrate that it cannot comply with the *1776 requirements. [FN128] LTD merely alleges in its Georgia and South Carolina preemption petitions, for example, that it has chosen not to obtain state certification for its own business reasons. [FN129] LTD has not provided a sufficient factual basis to demonstrate that these legal requirements materially inhibit or limit the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment. [FN130] Accordingly, we do not express any views in this Memorandum Opinion and Order on the merits of LTD's section 253 arguments. Nevertheless, we note our concern about state requirements that "prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." [FN131] If LTD chooses to file a section 253 petition, we would place such a petition on public notice pursuant to section 253(d). [FN132] Upon review of the record received from all interested parties, we would take appropriate action under section 253(d). [FN133]

39. In sum, we conclude that LTD has not met its burden of demonstrating that the Illinois Commission, Georgia Commission, or South Carolina Commission has "failed to act" within the meaning of our rules implementing section 252(e)(5). Rather, these three state commissions have met the requirements of our rules by responding in a timely manner to LTD's request for arbitration and rendering a final decision in the arbitration, dismissing or denying the petitions on the basis that LTD did not satisfy a statutory prerequisite to invoke arbitration under section 252(b). We therefore do not preempt the jurisdiction of these state commissions pursuant to the authority granted us in section 252(e)(5).

*1777 IV. CONCLUSION

40. For the foregoing reasons, we deny LTD'S petitions for Commission assumption of jurisdiction of LTD's arbitration proceedings with Ameritech in Illinois, BellSouth in Georgia, and GTE in South Carolina.

V. ORDERING CLAUSES

41. Accordingly, IT IS ORDERED that, pursuant to section 252 of the Communications Act of 1934, as amended, and section 51.801(b) of the Commission's rules, 47 U.S.C. § 252 and 47 C.F.R. § 51.801 (b), the three petitions for Commission assumption of jurisdiction filed by Low Tech Designs, Inc. on July 11, 1997, are DENIED.

EXHIBIT __20__

PAGE __8__ of __17__

FEDERAL COMMUNICATIONS COMMISSION

William F. Caton
Acting Secretary

FN1. Petition for Commission Assumption of Jurisdiction of Low Tech Designs, Inc.'s Petition for Arbitration with Ameritech Illinois Before the Illinois Commerce Commission, CC Docket No. 97-163 (LTD Illinois Petition); Petition for Commission Assumption of Jurisdiction of Low Tech Designs, Inc.'s Petition for Arbitration with BellSouth Before the Georgia Public Service Commission, CC No. Docket 97-164 (LTD Georgia Petition); Petition for Commission Assumption of Jurisdiction of Low Tech Designs, Inc.'s Petition for Arbitration with GTE South Before the Public Service Commission of South Carolina, CC Docket No. 97-165 (LTD South Carolina Petition).

FN2. Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56 (1996 Act), codified at 47 U.S.C. §§ 151 et seq. Hereafter, all citations to the 1996 Act will be to the 1996 Act as it is codified in the United States Code. The 1996 Act amended the Communications Act of 1934. We will refer to the Communications Act of 1934, as amended, as "the Communications Act" or "the Act."

FN3. 47 U.S.C. § 252(e)(5).

FN4. See generally 47 U.S.C. § 252.

FN5. The Illinois and Georgia commissions dismissed LTD's arbitration petitions, and the South Carolina Commission denied LTD's arbitration petition.

FN6. Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, First Report and Order, CC Docket No. 96-98, 11 FCC Rcd 15499, 16128 (1996), para. 1285 (Local Competition Order), aff'd in part and vacated in part sub nom. Competitive Telecommunications Ass'n v. FCC, 117 F.3d 1068 (8th Cir. 1997), aff'd in part and vacated in part sub nom. Iowa Utils. Bd. v. FCC, 120 F.3d 753 (8th Cir. 1997) (Iowa Utils. Bd.), Order on Reconsideration, 11 FCC Rcd 13042 (1996), Second Order on Reconsideration, 11 FCC Rcd 19738 (1996), Third Order on Reconsideration and Further Notice of Proposed Rulemaking, FCC 97-295 (rel. Aug. 18, 1997), further recon. pending; see also 47 C.F.R. §§ 51.801(b), 51.803(b).

FN7. LTD requests in its petitions that the Commission consolidate the three arbitration proceedings, on the assumption that the Commission would preempt the state commission proceedings.

FN8. See generally 47 U.S.C. § 251(c). For purposes of this order, the interconnection, access to unbundled elements, services for resale and other items for which incumbent local exchange carriers have a duty to negotiate pursuant to section 251(c)(1) are sometimes referred to collectively as "interconnection."

FN9. See generally 47 U.S.C. § 252.

FN10. See 47 U.S.C. § 252(a), (b).

FN11. 47 U.S.C. § 252(e)(1).

FN12. 47 U.S.C. § 252(e)(5).

FN13. Local Competition Order, 11 FCC Rcd at 16127, para. 1283. We adopted the procedures for exercising our section 252(e)(5) preemption authority on an interim basis in order to allow us "to learn from the initial experiences and gain a better understanding of what types of situations may arise that require Commission action." Id. at 16128, para. 1284.

FN14. Id. at 16128, para. 1285.

EXHIBIT 20
PAGE 9 of 17

FN15. Id. at 16128, para. 1285; see also 47 C.F.R. § 51.801(b). Such instances would not encompass those in which an interconnection agreement is "deemed approved" under section 252(e)(4) as a result of state commission inaction. Local Competition Order, 11 FCC Rcd at 16128, para. 1285; see also 47 C.F.R. § 51.801(c).

FN16. 47 C.F.R. § 51.803(b); see also Local Competition Order, 11 FCC Rcd at 16128, para. 1285.

FN17. Local Competition Order, 11 FCC Rcd at 16129, para. 1289; see also 47 C.F.R. § 51.805(a).

FN18. Iowa Utils. Bd., 120 F.3d at 804.

FN19. LTD Illinois Petition at 2.

FN20. Id.

FN21. Id.

FN22. Id.

FN23. Response of the Illinois Commerce Commission at 1 (Illinois Commission Response). It was the Illinois Commission's understanding that LTD intended to offer enhanced call processing services by obtaining access to Ameritech's Advanced Intelligent Network (AIN) and by interconnecting LTD's software with Ameritech's AIN. Id.

FN24. Id. at 2.

FN25. Low Tech Designs, Inc. Petition for Arbitration Pursuant to Sec. 252(b) of the Telecommunications Act of 1996 to Establish Wholesale Rates and an Interconnection Agreement for Access to and Rates for Unbundled Network Elements with Illinois Bell Telephone Company d/b/a Ameritech Illinois, No. 97- AB-001, Arbitration Decision (March 31, 1997) at 1 (Illinois Commission Arbitration Decision) (Exhibit 2 to Illinois Commission Response).

FN26. Illinois Commission Arbitration Decision at 1.

FN27. Id.

FN28. Id.

FN29. Illinois Commission Response at 2.

FN30. Id. at 2; see also Illinois Commission Arbitration Decision at 1-2; Opposition of Ameritech Illinois To Petition For Commission Assumption of Jurisdiction at 2-3 (Ameritech Opposition).

FN31. Illinois Commission Arbitration Decision at 1; Ameritech Opposition at 2.

FN32. Illinois Commission Arbitration Decision at 2.

FN33. Id. at 2; Ameritech Opposition at 3.

FN34. Illinois Commission Arbitration Decision at 2; Ameritech Opposition at 2- 3.

FN35. See Illinois Commission Arbitration Decision, Exhibit 2 to Illinois Commission Response.

FN36. Id. at 5.

FN37. Id. at 2.

FN38. Id. at 4-5. Section 3(44) of the Act defines a "telecommunications carrier" as "any provider of

EXHIBIT 20
PAGE 10 of 17

telecommunications services ...." Section 3(46), in turn, defines "telecommunications service" as "the offering of telecommunications for a fee directly to the public, or to such classes of users as to be effectively available to the public, regardless of the facilities used." 47 U.S.C. § 3(44), 3(46).

FN39. Id.

FN40. Id. at 5-7.

FN41. LTD Georgia Petition at 2.

FN42. Id.

FN43. Id.

FN44. In re Petition by Low Tech Designs, Inc. for Arbitration of Rates, Terms and Conditions with BellSouth Telecommunications, Inc. Under the Telecommunications Act of 1996, Docket No. 7270, Order Dismissing Arbitration (May 19, 1997) at 2 (Georgia Commission Order) (Appendix A to Comments of the Georgia Public Service Commission in Opposition to Low Tech's Petition (Georgia Commission Opposition)).

FN45. Id.

FN46. Id.

FN47. Id.

FN48. Georgia Commission Order at 2. According to LTD, BellSouth had previously acknowledged that LTD was a "telecommunications carrier" under the Act in its initial response to LTD's Petition for Arbitration. LTD Georgia Petition at 2 n.1. LTD did not provide the Commission with a copy of that response in its petition for preemption under section 252(e)(5).

FN49. Georgia Commission Order at 2.

FN50. Georgia Commission Order.

FN51. Id. at 1, 3-6.

FN52. Id. at 3; see also Ga. Code Ann. § 46-5-163(a). The Georgia Commission concluded that Georgia's certification requirement is not preempted by the Act and is consistent with 47 U.S.C. § 253(b). Georgia Commission Order at 3. The Georgia Commission acknowledged that under FCC rules, a telecommunications carrier may initiate negotiations with an incumbent LEC without first obtaining a state certificate of authority, but noted that the Commission issued no such rule with respect to arbitrations. Id. at 4; see also Local Competition Order, 11 FCC Rcd 15577, para. 154; 47 C.F.R. § 51.301(c)(4).

FN53. Georgia Commission Order at 4.

FN54. Id. at 5-6. LTD explained at the arbitration hearing that it proposed a least cost routing service in which the customer places a long-distance call relying upon LTD to identify and select the lowest price long-distance provider. The local exchange service would be provided by another carrier (such as BellSouth), and the interexchange service would be provided by the carrier to which LTD routed the call. LTD might place a charge on the customer's bill for the routing service, but the customer still would be billed for local and interexchange service by the other carriers. Based on the Act's definition of "telecommunications service" as the transmission, between or among points specified by the user, of information of the user's choosing, to the public for a fee, the Georgia Commission determined that LTD would not be providing a telecommunications service, because it would not be providing any transmission for the call. Georgia Commission Order at 5; see also 47 U.S.C. § 3(43), (46).

EXHIBIT 20
PAGE 11 of 17

FN55. In re Petition by Low Tech Designs, Inc. for Arbitration of Rates, Terms and Conditions with BellSouth Telecommunications, Inc. Under the Telecommunications Act of 1996, Docket No. 7270, Order Denying Motion for Reconsideration, Rehearing and Oral Argument (July 7, 1997) at 2 (Georgia Commission Reconsideration Order) (Appendix B to Georgia Commission Opposition); see also Georgia Commission Opposition at 3.

FN56. Georgia Commission Reconsideration Order at 2.

FN57. Id. at 3.

FN58. Id. at 4.

FN59. LTD South Carolina Petition at 1.

FN60. Id. LTD alleges that it was advised in a conversation with South Carolina Commission staff following the release of the Local Competition Order that the state commission would not adopt the Commission's 17 to 25 percent proxy discount rates for resold incumbent LEC retail services. Based on this information, LTD decided to delay offering resold telecommunications services, since GTE was only proposing an approximate 10 percent wholesale discount, and to concentrate on its unbundled network element negotiations with GTE and other incumbent LECs. Because LTD determined that it would not immediately be offering resold telecommunications services, it decided to delay refiling its certification application. Id. at 2.

FN61. Id. at 2.

FN62. Id.

FN63. Id.

FN64. Id. at 2-3.

FN65. See Arbitration to Establish Wholesale Rates and an Interconnection Agreement for Access to and Rates for Unbundled Network Elements with GTE South, Inc. Docket No. 97-152-C, Order No. 97-153, Order Denying Petition (March 4, 1997) at 1 (South Carolina Commission Order) (attached to Response of Public Service Commission of South Carolina to Petition For Commission (FCC) Assumption of Jurisdiction (South Carolina Commission Response)).

FN66. S.C. Code Ann., § 58-9-10(13) (Supp. 1996).

FN67. LTD South Carolina Petition at 3.

FN68. Id.

FN69. South Carolina Commission Order at 1.

FN70. See South Carolina Commission Order.

FN71. According to the South Carolina Commission, S.C. Code Ann. § 58-9-280(B) authorizes it to grant certification to applicants that propose to furnish local telephone service in the service territory of an incumbent LEC. The "applicants" who propose to operate as a telephone utility are defined as "new entrant local exchange carriers" in S.C. Code Ann. § 58-9-10(13), and LTD would be a "new entrant LEC." South Carolina Commission Order at 3.

FN72. Id. at 2.

FN73. LTD Illinois Petition at 1; LTD Georgia Petition at 1; LTD South Carolina Petition at 1.

FN74. State commissions are required to respond to a request for arbitration within a "reasonable

EXHIBIT 20

PAGE 12 of 17

time," Local Competition Order, 11 FCC Rcd 16128, para. 1285; 47 C.F.R. § 51.801(b), and to conclude an arbitration no later than nine months after the date on which the LEC receives a request for negotiation under section 252. 47 U.S.C. § 252(b)(4)(C).

FN75. LTD Illinois Petition at 1; LTD Georgia Petition at 1; LTD South Carolina Petition at 1.

FN76. LTD Illinois Petition at 1; LTD Georgia Petition at 1; LTD South Carolina Petition at 1. Specifically, LTD represents that it intends to utilize unbundled network elements with call related databases, for the purpose of providing a least cost routing service for long distance calls, available without presubscription and accessed by using an abbreviated dialing code. LTD Illinois Petition at 4; LTD Georgia Petition at 5; LTD South Carolina Petition at 6.

FN77. LTD Illinois Petition at 1; LTD Georgia Petition at 1; LTD South Carolina Petition at 1. LTD referenced in each petition section 3(49), which defines "transmission of energy by radio." We assume LTD intended to reference section 3(44), which defines "telecommunications carrier."

FN78. LTD Georgia Petition at 3; LTD South Carolina Petition at 3.

FN79. LTD Georgia Petition at 3; LTD South Carolina Petition at 3-4; see also Local Competition Order, 11 FCC Rcd at 15577, para. 154.

FN80. LTD Georgia Petition at 3; LTD South Carolina Petition at 4. Section 253(a) provides: "No State or local statute or regulation, or other State or local legal requirement, may prohibit or have the effect of prohibiting the ability of any entity to provide any interstate or intrastate telecommunications service." 47 U.S.C. § 253(a).

FN81. LTD Georgia Petition at 3-4; LTD South Carolina Petition at 4.

FN82. LTD Georgia Petition at 4; South Carolina Petition at 4. Section 253(b) provides:
Nothing in this section shall affect the ability of a State to impose, on a competitively neutral basis and consistent with section 254, requirements necessary to preserve and advance universal service, protect the public safety and welfare, ensure the continued quality of telecommunications services, and safeguard the rights of consumers.
47 U.S.C. § 253(b).

FN83. LTD Georgia Petition at 4-5; LTD South Carolina Petition at 5.

FN84. LTD Georgia Petition at 4-5; LTD South Carolina Petition at 5.

FN85. LTD Illinois Petition at 3-4.

FN86. Id. at 3-4.

FN87. Id. at 4.

FN88. Id. at 4, citing Local Competition Order, 11 FCC Rcd 15988, para. 992.

FN89. Georgia Commission Opposition at 4; South Carolina Commission Response at 1, 4; Illinois Commission Response at 2-4.

FN90. Illinois Commission Response at 3.

FN91. Id. at 3-4.

FN92. Georgia Commission Opposition at 4-5; South Carolina Commission Response at 2-3. The Georgia Commission notes that LTD filed its application for a certificate of authority to provide local exchange service two days before the scheduled arbitration hearing, but that LTD was required to resubmit its application because it failed to comply with a rule regarding the submission of trade

EXHIBIT 20
PAGE 13 of 17

secret information. Georgia Commission Opposition at 4 n.3. The South Carolina Commission notes that LTD failed to provide copies of proposed tariffs with its application for certification, and that denial of the application was not a barrier to entry because LTD could have satisfied the South Carolina Commission's application requirements by filing an "illustrative tariff." South Carolina Commission Response at 3.

FN93. Georgia Commission Opposition at 6; South Carolina Commission Response at 3-4.

FN94. Georgia Commission Opposition at 6; South Carolina Commission Response at 3-4.

FN95. South Carolina Commission Response at 3-4.

FN96. Georgia Commission Opposition at 6.

FN97. Id.

FN98. Id.

FN99. Id. at 6-7. The Georgia Commission stated that LTD will not have to wait an additional 135 to 160 days, after becoming certificated, to file a new petition for arbitration pursuant to section 252(b)(1) of the Act. Although the statutory period cannot be waived, in view of the fact that the case presented a jurisdictional issue of first impression and that LTD has been in ongoing negotiations with BellSouth, the Georgia Commission determined that LTD's request for negotiations should be deemed a continuing request sufficient to meet the 135 to 160 day period in section 252(b)(1). Id. Alternatively, the Georgia Commission stated that LTD's remedy is to seek judicial review of the arbitration decision. Id. at 2 n.1.

FN100. See Opposition of Ameritech Illinois to Petition for Commission Assumption of Jurisdiction (Ameritech Opposition); Opposition of BellSouth (BellSouth Opposition); Opposition of GTE Service Corporation and GTE South, Inc. (GTE Opposition).

FN101. Ameritech Opposition at 4-6; BellSouth Opposition at 5-6; GTE Opposition at 2.

FN102. BellSouth Opposition at 6-7; GTE Opposition at 3. Section 252(e)(6) provides, in pertinent part: "In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 and this section." 47 U.S.C. § 252(e)(6). BellSouth states that the Eighth Circuit "recently held that a Federal district court action is the exclusive means of reviewing state commissions applying Sections 251 and 252." BellSouth Opposition at 7 (emphasis in original).

FN103. BellSouth Opposition at 7-8; GTE Opposition at 3-4.

FN104. BellSouth Opposition at 7-9.

FN105. Id. at 7-8.

FN106. LTD filed Ex Parte Comments in each of the three dockets on August 12, 1997. We will refer to these comments as LTD Ex Parte Illinois Comments; LTD Ex Parte Georgia Comments; and LTD Ex Parte South Carolina Comments). See LTD Ex Parte Illinois Comments at 1; LTD Ex Parte Georgia Comments at 1; LTD Ex Parte South Carolina Comments at 1. LTD also claims that the Illinois Commission "failed to complete it's[sic] federally mandated arbitration duty within the time limits established in Section 252(b)(4)(C)." LTD Ex Parte Illinois Comments at 1-2.

FN107. LTD Ex Parte Georgia Comments at 2; LTD Ex Parte South Carolina Comments at 2.

FN108. LTD Ex Parte Georgia Comments at 2; LTD Ex Parte South Carolina Comments at 2.

EXHIBIT 20

PAGE 14 of 17

FN109. LTD relies upon the following language in section 252(a)(1): "Upon receiving a request for interconnection, services, or network elements pursuant to section 251, an incumbent local exchange carrier may negotiate and enter into a binding agreement with the requesting telecommunications carrier ...." LTD Ex Parte Illinois Comments at 3; LTD Ex Parte Georgia Comments at 2; LTD Ex Parte South Carolina Comments at 3.

FN110. LTD Ex Parte Georgia Comments at 3; LTD Ex Parte South Carolina Comments at 3; LTD Ex Parte Illinois Comments at 3 (all quoting Joint Statement of Managers S. Conf. Rep. No. 104-230, 104th Cong. 2d Sess. 121 (1996) (emphasis added).

FN111. LTD Ex Parte Georgia Comments at 3; LTD Ex Parte South Carolina Comments at 4. LTD bases its argument on the language of section 252(e)(6), which provides, in relevant part:
In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 and this section.
47 U.S.C. § 252(e)(6).

FN112. LTD Ex Parte Georgia Comments at 4; LTD Ex Parte South Carolina Comments at 4; LTD Ex Parte Illinois Comments at 4.

FN113. LTD Ex Parte Georgia Comments at 4-5; LTD Ex Parte South Carolina Comments at 4-5; LTD Ex Parte Illinois Comments at 4-5 (emphasis added). LTD states that the Eighth Circuit uses the terms "competing companies," "requesting new entrant," and then "competing telecommunications carrier" to describe the entities that are able to avail themselves of the local competition provisions of the Act. It further states that the Eighth Circuit affirms that LTD has "followed the entry path provided in the Act by deciding to be a competing company, becoming a requesting new entrant, and then a competing telecommunications carrier." Id.

FN114. 47 U.S.C. § 252(e)(5). The United States Court of Appeals for the Eighth Circuit, in its review of the Local Competition Order, acknowledged that the Commission has authority, pursuant to section 252(e)(5), to preempt a state commission's jurisdiction if it fails to fulfill its duties under section 252 of the Act. Iowa Utils. Bd., 120 F.3d at 804.

FN115. LTD Illinois Petition at 1; LTD Ex Parte Illinois Comments at 1, 2, 4-5; LTD Georgia Petition at 1; LTD Ex Parte Georgia Comments at 1, 5; LTD South Carolina Petition at 1; LTD Ex Parte South Carolina Comments at 1, 5.

FN116. See supra paras. 19-23.

FN117. Although each of these three state commissions determined that LTD was not a telecommunications carrier entitled to invoke arbitration under section 252(b), the three state commissions characterized in different ways what they viewed as the fundamental defect in the arbitration requests. The Illinois Commission dismissed LTD's petition on the ground that LTD lacked standing to arbitrate, because the Illinois Commission concluded that LTD was not a "telecommunications carrier," as defined by the Act. Illinois Commission Arbitration Decision at 1, 4. The Georgia Commission dismissed LTD's arbitration petition for lack of jurisdiction, because the Georgia Commission concluded that LTD was not a telecommunications carrier, and therefore, did not satisfy a state requirement to be deemed a telecommunications carrier entitled to invoke arbitration under section 252(b). Georgia Commission Order at 6. The South Carolina Commission indicated only that LTD had not met a threshold state statutory requirement for invoking arbitration under section 252(b). South Carolina Commission Order at 4.

FN118. Local Competition Order, 11 FCC Rcd at 16128, para. 1285. Of course, the Commission may revisit its rules, should the need arise, although we do not do so at this time.

FN119. Id. at 16128, para. 1285; see also 47 C.F.R. § 51.801(b).

EXHIBIT 20
PAGE 15 of 17

FN120. In South Carolina, LTD raised the issue of its lack of state certification in its arbitration request, asking for relief from South Carolina's certification requirement. Given LTD's lack of state certification, the South Carolina Commission established a pleading schedule to give the parties the opportunity to address the question of whether LTD may invoke arbitration under section 252 prior to issuing its decision on this question. See supra paras. 17-18. LTD did not raise the issue of whether it had met the statutory prerequisites to invoke arbitration in its requests for arbitration in Illinois and Georgia. In those states, a hearing examiner was appointed to the case, a pre-arbitration conference was held, and a schedule for the arbitration was established. See supra paras. 7, 12. After the relevant incumbent LEC raised the issue of whether LTD met the statutory requirements to invoke arbitration, the parties were afforded an opportunity to present their arguments on the issue. See supra paras. 9-10, 13-14.

FN121. LTD Illinois Ex Parte Comments at 1-2.

FN122. See supra paras. 6-10. LTD's argument appears to be essentially that a state commission has not acted until it has ruled on the merits of the issues raised in the arbitration petition. As discussed above, this argument does not provide a ground for preemption under our rules. See supra para. 33. We further note that the Georgia and South Carolina commissions issued their decisions approximately eight months and seven months, respectively, after the relevant incumbent LEC received LTD's request for interconnection. See supra paras. 11-18.

FN123. LTD Georgia Ex Parte Comments at 3; LTD South Carolina Ex Parte Comments at 4. Section 252(e)(6), which provides, in relevant part:
In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 and this section.
47 U.S.C. § 252(e)(6).

FN124. Iowa Utils. Bd., 120 F.3d at 804.

FN125. 47 U.S.C. § 253(a), (b); see also supra paras. 21, 23.

FN126. Section 253(d) directs the Commission to preempt, to the extent necessary, the enforcement of "any statute, regulation, or legal requirement that violates subsection (a) or (b) [of section 253]." 47 U.S.C. § 253(d).

FN127. 47 U.S.C. § 253(a).

FN128. See California Payphone Association Petition for Preemption of Ordinance No. 576 NS of the City of Huntington Park, California Pursuant to Section 253(d) of the Communications Act of 1934, CCB Pol 96-26, Memorandum Opinion and Order, FCC 97-251, at paras. 35, 40 (rel. Jul. 17, 1997) (Huntington Park Order) (concluding that mere assertions, without supporting evidence, are not adequate to invoke the Commission's preemption authority under section 253(d)).

FN129. See supra note 60 and para. 22.

FN130. See, e.g., Huntington Park Order, at para. 31.

FN131. 47 U.S.C. § 253(a).

FN132. Section 253 petitions ordinarily are placed on public notice so that any party may file comments and reply comments. In contrast, our rules permit only the applicable state commission and the parties to the state commission's proceeding to file responses to a section 252(e)(5) preemption petition. 47 C.F.R. § 51.803(a)(3); see also Common Carrier Bureau Announces Comment Deadline Regarding Low Tech Designs, Inc. Petitions for Assumption of Jurisdiction Pursuant to Section 252(e)(5) of Communications Act and Declares Those Proceedings "Permit-But-Disclose" for Ex Parte Purposes, CC Docket Nos. 97-163, 97-164, 97-165, Public Notice, DA 97-1573 (rel. July 24,

EXHIBIT 20
PAGE 16 of 17

1997).

FN133. See, e.g., Silver Star Telephone Company, Inc., Petition for Preemption and Declaratory Ruling, CCB Pol 97-1, Memorandum Opinion and Order, FCC 97- 336 (rel. Sep. 24, 1997). 1997 WL 618920 (F.C.C.), 13 F.C.C.R. 1755, 13 FCC Rcd. 1755, 9 Communications Reg. (P&F) 1146
END OF DOCUMENT

(C) 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 20
PAGE 17 of 17