KeyCite Citing                    Rank 1 of 1                           Database
                                                                        FCOM-FCC
2002 WL 31526765 (F.C.C.), 17 F.C.C.R. 22,884, 17 FCC Rcd. 22,884
(Cite as: 17 F.C.C.R. 22884)

H

Federal Communications Commission (F.C.C.)
Memorandum Opinion and Order
IN THE MATTER OF PETITION OF SUPRA TELECOMMUNICATIONS & INFORMATION SYSTEMS, INC., ("SUPRA") PURSUANT TO SECTION 252(E)(5) OF THE COMMUNICATIONS ACT FOR PREEMPTION OF THE JURISDICTION OF THE FLORIDA PUBLIC SERVICE COMMISSION
WC Docket No. 02-238
DA 02-3151
Adopted: November 14, 2002
Released: November 14, 2002

*22884 By the Chief, Wireline Competition Bureau:

I. INTRODUCTION

1. This Memorandum Opinion and Order addresses the petition of Supra Telecommunications & Information Systems, Inc. (Supra) for preemption of the jurisdiction of the Florida Public Service Commission (Florida Commission) with respect to an arbitration proceeding involving Supra and BellSouth Telecommunications, Inc. (BellSouth). [FN1] Supra asks the Commission (1) to preempt the jurisdiction of the Florida Commission, pursuant to the Commission's authority under section 252(e)(5) of the Act, (2) to assume jurisdiction over all unresolved issues between Supra and BellSouth, (3) to order the parties to mediate in accordance with section 252(a)(2) of the Act, and (4) in the event mediation fails, to conduct an arbitration proceeding, pursuant to section 252(b)(1) of the Act. [FN2] For the reasons set forth below, we deny *22885 Supra's petition.

2. Section 252(e)(5) requires the Commission to preempt the jurisdiction of a state commission in any proceeding in which the state commission "fails to act to carry out its responsibility" under section 252. [FN3] Section 252 sets forth the procedures by which telecommunications carriers may request and obtain interconnection, services, or unbundled network elements from an incumbent local exchange carrier. Under section 252, when these carriers cannot arrive at an interconnection agreement through voluntary negotiation, they may mediate and arbitrate their unresolved issues before the state commission. The state commission, in arbitrating the parties' disputes, must "resolve each issue set forth in the petition and the response" and must "conclude the resolution of any unresolved issues not later than 9 months after the date on which the local exchange carrier received the request [for interconnection]." [FN4] In addition, the state commission may require the parties "to provide such information as may be necessary for the State commission to reach a decision on the unresolved issues. If any party refuses or fails unreasonably to respond on a timely basis to any reasonable request from the State commission, then the State commission may proceed on the basis of the best information available to it from whatever source derived." [FN5] Supra argues that the Florida Commission failed to carry out its responsibility under section 252 to "act on a specific request for mediation or arbitration involving the merits of unresolved issues set forth in the parties' petition and response." [FN6]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 21
PAGE 1 of 8

(Cite as: 17 F.C.C.R. 22884, *22885)

3. In this order, we apply the standards set forth in prior commission decisions, as well as the recent opinion of the United States Court of Appeals for the District of Columbia Circuit in **Global NAPs Inc. v. FCC**. [FN7] When, as in this case, a state commission has acted on a timely basis to arbitrate an interconnection dispute, section 252(e)(6) provides the basis for federal court review; section 252(e)(5) provides no alternative forum for appeal. [FN8] We find that the Florida Commission acted on a timely basis when it arbitrated and approved a new interconnection agreement between Supra and BellSouth. Indeed, the Florida Commission's action is the basis for Supra's pending appeal to federal district court. [FN9] Accordingly, we deny *22886 Supra's petition.

II. BACKGROUND

4. The underlying arbitration proceeding before the Florida Commission has a long and complicated procedural history. The proceeding was initiated in September 2000 with the filing of an arbitration petition by BellSouth. After almost two years of continued negotiations, motions, briefings, and evidentiary hearings, the Florida Commission resolved the open issues and approved the resulting interconnection agreement, and the parties signed the agreement. The procedural history is set forth below. We highlight only those events that are relevant to our discussion.

5. On September 1, 2000, in the course of negotiations to replace its expiring interconnection agreement with Supra, BellSouth filed a petition with the Florida Commission, seeking arbitration under section 252(b) of the Act (Arbitration Petition). [FN10] On October 16, 2000, Supra filed a response to BellSouth's petition (Response). [FN11] The Arbitration Petition and Response identified dozens of disputed issues between BellSouth and Supra. The parties waived the section 252 requirement that the Florida Commission complete the arbitration within nine months. [FN12] The Florida Commission ordered the parties to meet to discuss resolution of the issues identified in the Arbitration Petition and Response. [FN13] According to Supra, the parties reached tentative agreement on a number of issues in June 2001, and filed a statement withdrawing these issues from the Florida Commission's consideration. [FN14] On September 26, 2001, the Florida Commission commenced an evidentiary hearing on the remaining unresolved issues. [FN15] Six months later, on March 26, 2002, the Florida Commission released an order (Arbitration Order), in which it resolved every open issue, as identified by the parties at the hearing. [FN16] On July 1, 2002, the Florida Commission issued a second order (Reconsideration Order) which resolved a motion for reconsideration filed by Supra, and required the parties to file, by July 15, 2002, an *22887 executed agreement that complied with the Florida Commission's orders. [FN17]

6. In response to the Reconsideration Order, the parties held a series of discussions aimed at finalizing their contract language. On July 15, 2002, BellSouth submitted its proposed final contract to the Florida Commission (Proposed Agreement) and a motion to compel Supra to sign the Proposed Agreement. [FN18] On that same date, Supra filed a motion requesting that the Florida Commission order BellSouth to continue negotiating. [FN19] Supra did not file an alternative proposed agreement. [FN20] On July 22, 2002, Supra filed an opposition to BellSouth's motion to compel (July 22 Motion), asking the Florida Commission to reject the Proposed Agreement and either to compel BellSouth to continue negotiating nine issues that had previously been withdrawn by the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 21
PAGE 2 of 8

parties but which Supra claimed remained in dispute, or to conduct an evidentiary hearing on these nine issues. [FN21] The parties had not presented these issues at the hearing, and the Florida Commission had not ruled on them in the Arbitration Order. [FN22]

7. On August 9, 2002, the Florida Commission issued an order (Final Order) which, among other things, granted BellSouth's motion to compel, denied Supra's July 22 Motion, [FN23] and required Supra to sign the Proposed Agreement or another approved BellSouth interconnection agreement. [FN24] The Final Order also provided that if the parties failed to submit a signed agreement by August 16, 2002, the existing interconnection agreement would terminate by close of business on that date. [FN25] On August 16, 2002, Supra filed the preemption petition under consideration here and, on the same day, signed the Proposed Agreement and submitted it *22888 to the Florida Commission. [FN26] On August 22, 2002, the Florida Commission issued an order approving the parties' final arbitrated interconnection agreement. [FN27] On September 23, 2002, Supra appealed this decision to federal district court. [FN28]

8. Supra argues that the Commission should preempt the authority of the Florida Commission because it failed to act to resolve all issues presented in the Arbitration Petition and Response. Specifically, Supra argues that the Florida Commission failed to act when - in its Final Order - it declined to arbitrate or compel further negotiation regarding the nine issues, which had been set forth in the Arbitration Petition and Response but were later withdrawn from the proceeding prior to the evidentiary hearing. These issues, Supra argues, had been resolved by the parties, but the Proposed Agreement submitted by BellSouth did not reflect the parties' agreed-to language. Supra maintains that the Florida Commission should have rejected the Proposed Agreement for this reason and compelled the parties to continue negotiating the remaining issues in dispute. By refusing to take either step, Supra argues that the Florida Commission failed to act to arbitrate issues that had been properly presented to it. [FN29]

III. DISCUSSION

9. We find that Supra has not demonstrated that the Florida Commission has failed to act, under section 252(e)(5), and therefore we will not preempt the Florida Commission's jurisdiction in this proceeding. Section 252(e)(5) directs the Commission to preempt the jurisdiction of a state commission in any proceeding or matter in which the state commission "fails to act to carry out its responsibility under [section 252]." [FN30] Under the Commission's rules, the party seeking preemption bears the burden of proving that the state commission has failed to act. [FN31] In the Local Competition First Report and Order, the Commission concluded that it would not take an "expansive view" of what constitutes a state commission's "failure to act" for purposes of section 252(e)(5). [FN32] Rather, the Commission limited the instances in which preemption pursuant to section 252(e)(5) is appropriate to "when a state commission fails to respond, within a reasonable time, to a request for mediation or arbitration, or fails to complete *22889 an arbitration within the time limits of section 252(b)(4)(C)." [FN33] In contrast, section 252(e)(6) authorizes a party "aggrieved" by a state commission's determination under section 252 to bring an action in federal district court. [FN34] As the United States Court of Appeals for the District of Columbia Circuit recently ruled,

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 21
PAGE 3 of 8

these sections are mutually exclusive, and paragraph (5) preemption applies only where the state commission fails or refuses to make a "determination" that is reviewable under paragraph (6). [FN35]

10. The Florida Commission's response to the parties' request for arbitration, and its conduct of an almost two-year proceeding, does not constitute a "failure to act" under the Act, as implemented by Commission precedent and rules. Indeed, none of the circumstances identified in the Local Competition Order as a "failure to act" were present here. [FN36] Specifically, the Florida Commission responded in a reasonable time to the request for arbitration, conducted a full evidentiary hearing on the contested issues, and approved a signed final agreement. While the Florida Commission took longer to resolve the issues than envisioned in the statute, it did so at the request of the parties. We note that Supra does not argue that this delay constitutes a failure to act.

11. Contrary to Supra's suggestion, the D.C. Circuit's ruling in **Global NAPs, Inc. v. FCC** does not support preemption under these circumstances. Rather, the court of appeals in that case upheld the Commission's determination that it lacked authority under section 252 to preempt where the state commission had taken a final action to dispose of a party's petition. In that instance, as explained by the court, "the Commission decided that it would not preempt an already completed state proceeding, at least where doing so would require the Commission to examine the underlying reasoning given by the state agency for terminating that proceeding." [FN37] Similarly, to preempt in this instance, the Commission would be required to examine the Florida Commission's decision to adopt BellSouth's language relating to the nine issues, which is a role for a reviewing court. [FN38]

*22890 12. We reject Supra's argument that the Florida Commission failed to act by not resolving the nine issues the parties had withdrawn from the proceeding. [FN39] The Florida Commission did, in fact, act upon the parties' initial request for arbitration, directing them to continue negotiations, providing a process for submission of evidence and argument on the issues identified by the parties at the evidentiary hearing, and approving the final agreement, which included contract language relating to the nine issues now highlighted by Supra. [FN40] It is this action by the Florida Commission that Supra now contests. We also reject Supra's suggestion that the Florida Commission's action was "incomplete" and thus represented a partial failure to act. [FN41] To the contrary, the Florida Commission acted on all issues presented to it - even the nine issues withdrawn by the parties - when it adopted the final contract. These circumstances are thus quite unlike those present in preemption proceedings involving the Virginia Commission, in which the Commission preempted that state's authority because the state commission expressly declined to take any action to resolve issues presented to it. [FN42]

13. Finally, we reject Supra's argument that we must preempt because the Florida Commission "failed to act" by violating Supra's procedural rights under the Act, Commission precedent, or Florida law. Specifically, Supra suggests that the Act requires that issues raised in the Arbitration Petition and Response, but later withdrawn by the parties, must nonetheless be the subject of an evidentiary hearing. [FN43] Supra also suggests that the Bureau's Virginia *22891 Arbitration Order mandates preemption because the Florida Commission did not follow the Bureau's process for resolving issues during an arbitration

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 21
PAGE 4 of 8

(Cite as: 17 F.C.C.R. 22884, *22891)

proceeding. [FN44] Finally, Supra argues that by issuing the Final Order - compelling Supra to sign the Proposed Agreement - the Florida Commission exceeded its authority under Florida law to choose language for the interconnection agreement. [FN45] As explained above, the Commission's authority to preempt a state commission under section 252(e)(5) is limited to circumstances where the state commission has "failed to act" within the meaning of section 252 of the Act. Once again, we find that the Florida Commission has acted. Accordingly, any grounds for seeking review of the Florida Commission's action - whether alleging substantive or procedural flaws - are properly addressed to a federal district court pursuant to section 252(a)(6) of the Act.

IV. CONCLUSION

14. For the foregoing reasons, we deny Supra's petition for preemption of the jurisdiction of the Florida Public Service Commission with respect to its arbitration of an interconnection agreement between BellSouth and Supra.

V. ORDERING CLAUSE

15. Accordingly, IT IS ORDERED that, pursuant to section 252 of the Communications Act of 1934, 47. U.S.C. § 252, as amended, and sections 0.91, 0.291, and 51.801(b) of the Commission's rules, 47 C.F.R. §§ 0.91, 0.291, and 51.801(b), the petition filed by Supra Telecommunications & Information Systems, Inc., on August 16, 2002, IS DENIED.

FEDERAL COMMUNICATIONS COMMISSION
William F. Maher, Jr.
Chief
Wireline Competition Bureau

FN1. Petition of Supra Telecommunications & Information Systems, Inc., ("Supra") Pursuant to Section 252(e)(5) of the Communications Act for Preemption of the Jurisdiction of the Florida Public Service Commission ("FPSC") Regarding the Florida Commission's Failure to Act on Supra's Request for Mediation Pursuant to Section 252(a)(2) or Subsequent Arbitration Pursuant to Section 252(b)(1) on Unresolved Issues Clearly and Specifically set Forth in the Parties' Petition and Response, WC Docket No. 02-238 (filed Aug. 16, 2002) (Supra Petition); see Pleading Cycle Established for Comments on Supra Telecommunications & Information Systems, Inc. Petition for Preemption Pursuant to Section 252(e)(5), WC Docket No. 02-238, Public Notice, DA 02-2054 (rel. Aug. 21, 2002) (Public Notice on Supra Preemption Petition). The Florida Commission filed comments in opposition to the Supra Petition on September 19, 2002, as did BellSouth on September 20, 2002. Supra filed reply comments on October 11, 2002.

FN2. Supra Petition at 1.
FN3. 47 U.S.C. § 252(e)(5).
FN4. 47 U.S.C. § 252(b)(4)(C).
FN5. 47 U.S.C. § 252(b)(4)(B).
FN6. Supra Petition at 1.
FN7. See Global NAPs, Inc. v. FCC, 291 F.3d 832, 836-37 (DC. Cir. 2002) (upholding Commission's conclusion that section 252(e)(5) does not authorize preemption to review substantive validity of state commission's dismissal of parties' claim); Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, CC Docket No. 96-98, First Report and Order, 11 FCC Rcd 15499, 16128, para. 1285 (1996) (Local Competition First Report and Order) (subsequent history omitted); 47 C.F.R. § 51.801(b).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 21
PAGE 5 of 8

(Cite as: 17 F.C.C.R. 22884, *22891)

FN8. See Global NAPs, Inc. v. FCC, 291 F.3d at 836-37.
FN9. Supra Reply at 9, 14.
FN10. Supra Petition at 7; Supra Petition, Exhibit C.
FN11. Supra Petition, Exhibit D; Supra Reply at 3.
FN12. Supra Reply at 8.
FN13. Supra Petition at 8; Supra Petition, Exhibit H, at 2.
FN14. Supra Petition, Exhibit E at 4-5; Supra Petition, Exhibit H at 2; BellSouth Opposition, Exhibit G; BellSouth Opposition, Exhibit V at 4; Supra Reply at 4.
FN15. Supra Petition, Exhibit E at 5; Supra Petition, Exhibit H at 2. Supra indicates that prior to the hearing, the Florida Commission added an issue of its own, regarding the appropriate template to govern the final agreement. Supra Petition, Exhibit E at 4.
FN16. Supra Petition at 10; BellSouth Opposition at 22; Florida Commission Comments at 8-9.
FN17. Supra Petition at 10; BellSouth Opposition at 10; Florida Commission Comments at 6-7. The Reconsideration Order also modified and reconsidered portions of the Arbitration Order. Supra Petition at 10.
FN18. Supra Petition at 22, 25-27; BellSouth Opposition at 11. BellSouth disputes Supra's assertion that the Proposed Agreement contains language that differs from the parties' agreement on these issues. BellSouth also indicates that it provided Supra its proposed interconnection agreement in March 2002, after the Florida Commission issued the Arbitration Order, and amended its proposal after the Florida Commission modified the Arbitration Order, providing Supra a copy of that version as well. BellSouth Opposition at 20-21.
FN19. BellSouth Opposition, Exhibit V; Supra Petition at 10. Supra's motion notified the Florida Commission that Supra had sought in good faith to comply with the Reconsideration Order, but that BellSouth had failed to negotiate in good faith toward completion of an agreement. BellSouth Opposition, Exhibit V; Supra Petition at 10.
FN20. Florida Commission Comments at 10. The Florida Commission states that Supra proposed a one-word change to the Proposed Agreement. Florida Commission Comments at 6, 10.
FN21. Supra Petition, Exhibit E, at 4, 6; Supra Petition at 21; Florida Commission Comments at 7; Supra Reply at 3. According to Supra, BellSouth failed to properly implement nine issues which the parties had resolved. Supra Petition, Exhibit E at 6.
FN22. Supra Petition at 10; BellSouth Opposition at 22; Florida Commission Comments at 7-9; Supra Reply at 4.
FN23. Supra Petition, Exhibit H at 16, 20-21.
FN24. Supra Petition, Exhibit H at 20-21.
FN25. Supra Petition, Exhibit H at 20-21.
FN26. Florida Commission Comments at 1.
FN27. Florida Commission Comments, Attachment A.
FN28. Supra Reply at 14. Supra also had appealed the Florida Commission's decision to terminate the previous interconnection agreement. Supra Reply at 9.
FN29. Supra also presents a subtly different theory, that its July 22 Motion may be considered a new request for negotiation and arbitration under section 252(b) of the Act, and argues that the Florida Commission failed to act by not granting

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 21
PAGE 6 of 8

(Cite as: 17 F.C.C.R. 22884, *22891)

this new request in accordance with section 252. Supra Petition at 11; Supra Reply at 5-7. See infra., n.39.
FN30. 47 U.S.C. § 252(e)(5).
FN31. 47 C.F.R. § 51.803(b); see also Local Competition First Report and Order, 11 FCC Rcd at 16128, para. 1285.
FN32. Local Competition First Report and Order, 11 FCC Rcd at 16127, para. 1283.
FN33. Local Competition First Report and Order, 11 FCC Rcd at 16128, para 1285; 47 C.F.R. § 51.801(b).
FN34. 47 U.S.C. § 252(e)(6).
FN35. **Global NAPs, Inc. v. FCC**, 291 F.3d at 836-37.
FN36. Local Competition First Report and Order, 11 FCC Rcd at 16128, para 1285; 47 C.F.R. § 51.801(b).
FN37. **Global NAPs, Inc. v. FCC**, 291 F.3d at 837.
FN38. See **Global NAPs, Inc. v. FCC**, 291 F.3d at 836-37. The D.C. Circuit explained that "**if the state agency takes final action disposing of the pending claim, that action can be undone only by direct judicial review in the appropriate forum.**" Id. at 837. To the extent the Proposed Agreement in fact contained BellSouth's preferred language on the nine issues, the Florida Commission's action was tantamount - proper or not - to resolving those issues in BellSouth's favor. Supra Petition, Exhibit H at 20. The Final Order found that "the best remedy is simply to impose BellSouth's primary request for relief, which is that Supra either sign the [Proposed Agreement], opt into another existing, approved agreement, or the existing agreement will be considered terminated, null, and void." **Id. Supra** argues that preemption in these circumstances would not constitute review of the Florida Commission's decision: "[T]he Florida Commission has made no decision on the merits of the nine (9) unresolved issues." Supra Reply at 6-7. For the reasons we have indicated, we disagree.
FN39. To the extent Supra characterizes its July 22 Motion as a new petition for arbitration under section 252, thus starting the clock again for the identified issues, we reject this argument because, for reasons discussed more fully in the text of this decision, the Florida Commission had resolved all issues clearly presented to it, including the nine issues Supra identifies in its July 22 Motion.
FN40. See Supra Petition, Exhibit H at 5, 14-16, 22. We note that Supra's July 22 Motion also identified approximately twenty-five issues - which the Florida Commission had arbitrated - on which the parties remained in disagreement at the time of the July 15 deadline for filing a new interconnection agreement with the Florida Commission. Supra Petition, Exhibit E at 6. To the extent Supra argues that the Florida Commission failed to act with regard to these additional twenty-five issues, we reject this argument for the same reasons we reject Supra's argument regarding the nine withdrawn issues.
FN41. See Supra Reply at 2-3.
FN42. See Petition of WorldCom, Inc. for Preemption of Jurisdiction of the Virginia State Corporation Commission Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996 and for Arbitration of Interconnection Disputes with Verizon-Virginia, Inc., Memorandum Opinion and Order, (MCI-VA Preemption Order), 16 FCC Rcd 6224, 6226, para. 4 (2001). See also Starpower Communications, LLC Petition for Preemption of Jurisdiction of the Virginia

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 21
PAGE 7 of 8

(Cite as: 17 F.C.C.R. 22884, *22891)

State Corporation Commission Pursuant to Section 252(e)(5) of the Telecommunications Act, Memorandum Opinion and Order (Starpower Preemption Order), 15 FCC Rcd. 11277 (2000). In both cases, the state commission expressly declined to act, making no ruling that resolved the parties' interconnection dispute. In fact, in Starpower Preemption Order, the Virginia Commission had stated, "'we find we should take no action,"' and had declined jurisdiction so that the parties could "'present their cases to the FCC."' Starpower Preemption Order, 15 FCC Rcd at 11278, 11280, paras. 4, 7 [internal citations omitted]. By contrast, the Florida Commission assumed jurisdiction and resolved all issues presented.

FN43. See Supra Petition at 18-20, 26.
FN44. Supra Reply at 4-7.
FN45. Supra Reply at 4-6. Supra asserts that the Florida Commission does not have regulations permitting it to choose language in a similar fashion as the Commission does under "final offer arbitration." Supra Petition at 13; Supra Reply at 19-20. See 47 C.F.R. § 51.807(d).

2002 WL 31526765 (F.C.C.), 17 F.C.C.R. 22,884, 17 FCC Rcd. 22,884
END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 21
PAGE 8 of 8