Found Document                          Rank 1 of 1                          Database
                                                                             FCOM-FCC
2000 WL 767701 (F.C.C.), 15 F.C.C.R. 11,277, 15 FCC Rcd. 11,277,
20 Communications Reg. (P&F) 974
(Cite as: 15 F.C.C.R. 11277)

▷

Federal Communications Commission (F.C.C.)

Memorandum Opinion and Order

IN THE MATTER OF STARPOWER COMMUNICATIONS, LLC PETITION FOR PREEMPTION OF
JURISDICTION OF THE VIRGINIA STATE CORPORATION COMMISSION PURSUANT TO SECTION
252(E)(5) OF THE TELECOMMUNICATIONS ACT OF 1996
CC Docket No. 00-52

FCC 00-216
Adopted: June 14, 2000
Released: June 14, 2000

*11277 By the Commission: Commissioner Furchtgott-Roth dissenting and issuing a
statement; Commissioner Powell issuing a statement

I. INTRODUCTION AND BACKGROUND

1. This Memorandum Opinion and Order addresses the petition of Starpower
Communications, LLC (Starpower) for preemption of the jurisdiction of the
Virginia State Corporation Commission (Virginia Commission) with respect to a
dispute concerning the interpretation and enforcement of its interconnection
agreements with Bell Atlantic-Virginia, Inc., (Bell Atlantic) and GTE South,
Incorporated (GTE). [FN1] Specifically, Starpower seeks preemption of the
jurisdiction of the Virginia Commission pursuant to section 252(e)(5) of the
Communications Act of 1934, as amended (the Act). [FN2] For the reasons set
forth below, we grant Starpower's petition.
2. Section 252(e)(5) requires the Commission to preempt the jurisdiction of a
state commission in any proceeding or matter in which the state commission
""fails to act to carry out its responsibility" under section 252. [FN3] Section
252 of the Act sets forth the procedures by which *11278 telecommunications
carriers may request and obtain interconnection, services, or unbundled network
elements from an incumbent local exchange carrier (LEC). [FN4]
3. Starpower filed a petition with the Virginia Commission on February 3,
1999, seeking a declaratory ruling directing GTE to pay reciprocal compensation
to Starpower for delivering GTE's traffic to Internet Service Providers (ISPs)
served by Starpower. [FN5] On September 15, 1999, Starpower filed a similar
petition with the Virginia Commission against Bell Atlantic, again seeking
payment of reciprocal compensation for traffic bound to ISPs. [FN6]
4. On January 24, 2000, the Virginia Commission issued a final order declining
jurisdiction over Starpower's petition with respect to GTE by stating, "we find
we should take no action." [FN7] Similarly, in response to Starpower's petition
against Bell Atlantic, the Virginia Commission issued an order dismissing the

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT  23
PAGE   1  of  10

complaint and adopting, in its entirety, the reasoning set forth in the Starpower/GTE Decision. [FN8] In both cases, the Virginia Commission encouraged the parties to seek relief from this Commission. [FN9] Starpower filed the present petition in March 2000, requesting that the Commission preempt the jurisdiction of the Virginia Commission over the Starpower/GTE and Starpower/Bell Atlantic contract disputes.

## II. DISCUSSION

5. We conclude that the unique circumstances presented by Starpower's petition require us to assume the jurisdiction of the Virginia Commission. Section 252(e)(5) directs the Commission to preempt the jurisdiction of a state commission in any proceeding or matter in which a state commission "fails to act to carry out its responsibility under [section 252]." [FN10] We *11279 recognize that the proceeding over which Starpower urges us to assert federal jurisdiction is not one encompassed within the Commission's existing rules under section 252(e)(5). Indeed, the Commission's existing rules state that it will preempt a state commission's jurisdiction for a "failure to act" under section 252(e)(5) in those "instances where a state commission fails to respond, within a reasonable time, to a request for mediation or arbitration, or fails to complete arbitration within the time limits of section 252(b)(4)(C)." [FN11] This rule, promulgated in the First Report and Order, addresses only the Commission's 252(e)(5) responsibilities in the context of a state's "failure to act" with respect to its mediation and arbitration obligations pursuant to Section 252. The rule does not consider the Commission's Section 252 responsibilities in the context of a state's "failure to act" with respect to its other Section 252 obligations. [FN12] In adopting those rules, however, the Commission did not consider whether a state commission could "fail to act" in the context of a subsequent proceeding to interpret or enforce an existing interconnection agreement. In this proceeding, we apply Section 252(e)(5) for the first time to matters outside the scope of mediation and arbitration.

6. In applying Section 252(e)(5), we must first determine whether a dispute arising from interconnection agreements and seeking interpretation and enforcement of those agreements is within the states' "responsibility" under section 252. We conclude that it is. In reaching this conclusion, we find federal court precedent to be instructive. Specifically, at least two federal courts of appeal have held that inherent in state commissions' express authority to mediate, arbitrate, and approve interconnection agreements under section 252 is the authority to interpret and enforce previously approved agreements. [FN13] These court opinions implicitly recognize that, *11280 due to its role in the approval process, a state commission is well-suited to address disputes arising from interconnection agreements. Thus, we conclude that a state commission's failure to "act to carry out its responsibility" under section 252 can in some circumstances include the failure to interpret and enforce existing interconnection agreements. [FN14]

7. We must next consider whether the Virginia Commission has "failed to act" within the meaning of section 252(e)(5). In this case, the Virginia Commission expressly declined to resolve the petitions before it and interpret and enforce Starpower's interconnection agreements with GTE and Bell Atlantic. Specifically,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 23
PAGE 2 of 10

(Cite as: 15 F.C.C.R. 11277, *11280)

the Virginia Commission stated in the Starpower/GTE decision, "we believe the only practical action is for this Commission to decline jurisdiction and allow the parties to present their cases to the FCC." [FN15] We first note that we are sympathetic to the concerns of the Virginia Commission with regard to the status of the law governing inter-carrier compensation for ISP-bound traffic. Because the decisions explicitly declined to take any action with respect to Starpower's petitions, however, we are compelled to conclude that the Virginia Commission "failed to act to carry out its responsibility" under section 252. Accordingly, the Act requires us in these unique circumstances to assume the jurisdiction of the Virginia Commission and resolve the outstanding interconnection disputes. [FN16]

8. We reject the arguments of Bell Atlantic and GTE that the mere issuance of the Virginia Commission's final order in each proceeding was sufficient to fulfill its responsibility under section 252(e)(5). [FN17] Rather, as we have found in other orders interpreting section 252(e)(5), we evaluate whether a state commission has fulfilled its responsibility under section 252 based on the particulars of each case. For example, we have found that a state commission has carried out "its responsibility [under section 252]" when it resolves the merits of a section 252 proceeding or dismisses such a proceeding on jurisdictional or procedural grounds. [FN18] The Virginia Commission did not dismiss Starpower's petitions because of jurisdictional or *11281 procedural defect, but rather expressly declined to resolve the merits of the case. Furthermore, we disagree with Bell Atlantic and GTE that Starpower's filing of an appeal of the Virginia Commission's order in federal district court precludes a finding that the state commission has failed to act under section 252(e)(5). [FN19] Rather, by seeking relief concurrently in Federal district court and this Commission, Starpower exercised its right to seek alternative remedies.

9. Starpower may now file with the Commission for resolution of the interconnection disputes that were the subject of the Virginia Commission proceedings addressed herein. [FN20] Upon receiving the appropriate filings from Starpower, the Commission will proceed to resolve only the question that the Virginia Commission would have resolved had it chosen to act: whether the existing interconnection agreements between Starpower and GTE and Bell Atlantic require GTE and Bell Atlantic to pay compensation to Starpower for the delivery of ISP-bound traffic. In resolving that question, the Commission will apply, inter alia, the principles that the Commission suggested state commissions apply to such disputes in the Inter-Carrier Compensation Declaratory Ruling. [FN21] In addition, to expedite resolution of this case, we strongly encourage the parties to contact the Market Disputes Resolution Division of the Enforcement Bureau before filing to discuss how the issue might best be handled. We also reiterate the finding in the Local Competition Order that the Commission retains exclusive jurisdiction over any proceeding or matter over which it assumes responsibility under section 252(e)(5). [FN22] Similarly, any findings made by the Commission after it assumes responsibility over a proceeding and any judicial review of such findings shall be the exclusive remedies available to the parties. [FN23]

III. CONCLUSION

10. For the foregoing reasons, we grant Starpower's Petition for Commission

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT  23
PAGE  3  of  10

(Cite as: 15 F.C.C.R. 11277, *11281)

preemption of jurisdiction over its complaints against Bell Atlantic and GTE and invite Starpower to file for resolution of its disputes with Bell Atlantic and GTE under 47 C.F.R. § 1.720 et seq.

## *11282 IV. ORDERING CLAUSE

11. Accordingly, IT IS ORDERED that, pursuant to section 252 of the Communications Act of 1934, as amended, and section 51.801(b) of the Commission's rules, 47 U.S.C. § 252 and 47 C.F.R. § 51.801(b), the Petition for Commission preemption of jurisdiction filed by Starpower Communications, LLC on March 16, 2000, IS GRANTED.

FEDERAL COMMUNICATIONS COMMISSION

Magalie Roman Salas
Secretary

FN1. Petition of Starpower Communications, LLC Pursuant to Section 252(e)(5) of the Communications Act, CC Docket No. 00-52 (filed Mar. 16, 2000) (Petition); see Pleading Cycle Established for Comments on Section 252(e)(5) Petition filed by Starpower Communications, CC Docket No. 00-52, Public Notice, DA 00-630 (rel. Mar. 21, 2000) (Mar. 21st Public Notice). MCI WorldCom, Inc., Cox Communications, Inc., and Bell Atlantic and GTE filed comments. Starpower, MCI WorldCom, Inc., AT&T Corp., and Bell Atlantic and GTE filed replies.

FN2. 47 U.S.C. § 252(e)(5). Section 252 was added to the Communications Act of 1934 by the Telecommunications Act of 1996 (1996 Act), Pub. L. No. 104-104, 110 Sta. 56 (1996 Act), codified at 47 U.S.C. §§ 151 et seq. Hereafter, all citations to the 1996 Act will be in accordance with its codification in Title 47 of the United States Code.

FN3. 47 U.S.C. § 252(e)(5).

FN4. See generally 47 U.S.C. § 252.

FN5. Petition at 4.

FN6. Id.

FN7. The Virginia Commission stated that this Commission's "failure to act on either inter-carrier compensation or separations reform for ISP-traffic ... has created great regulatory uncertainty" and that, in the absence of any Commission rules on inter-carrier compensation, "any interpretation of the instant agreements we might reach may well be inconsistent with the FCC's final order in its rulemaking." Petition of Starpower Communications, LLC For Declaratory Judgment Interpreting Interconnection Agreement with GTE South, Inc., Case No. PUC990023, Final Order (Jan. 24, 2000) (Starpower/GTE Decision) at 7. The Virginia Commission was referring to the Commission's outstanding Notice of Proposed Rulemaking examining inter-carrier compensation for ISP-bound traffic.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 23
PAGE 4 of 10

See Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, Inter-Carrier Compensation for ISP-Bound Traffic, CC Docket Nos. 96-98 and 99-68, Declaratory Ruling and Notice of Proposed Rulemaking, 14 FCC Rcd 3689 (1999) (Reciprocal Compensation Order), vacated and remanded, Bell Atlantic Telephone Co. v. Federal Communications Comm'n, 206 F.3d 1 (D.C. Cir. 2000).

FN8. Petition of Starpower Communications, LLC, For Declaratory Judgment and Enforcement of Interconnection Agreement with Bell Atlantic-Virginia, Inc., Case No. PUC990156, Order Dismissing Petition (Feb. 9, 2000) (Starpower/Bell Atlantic Decision) at 4.

FN9. Starpower/GTE Decision at 7. Starpower/Bell Atlantic Decision at 4.

FN10. 47 U.S.C. § 252(e)(5).

FN11. 47 C.F.R. § 51.801(b). See also Implementation of the Local Competition Provisions in the Telecommunications Act of 1996, CC Docket No. 96-98, First Report and Order, 11 FCC Rcd 15499, 16122-32, para. 1285 (1996) ( Local Competition Order), aff'd in part and vacated in part sub nom., Competitive Telecommunications Ass'n v. FCC, 117 F.3d 1068 (8th Cir. 1997) and Iowa Utils. Bd. v. FCC, 120 F.3d 753 (8th Cir. 1997), aff'd in part and remanded, AT&T Corp., et al. v. Iowa Utils. Bd. et al., 119 S.Ct. 721 (1999); Order on Reconsideration, 11 FCC Rcd 13042 (1996); Second Order on Reconsideration, 11 FCC Rcd 19738 (1996); Third Order on Reconsideration and Further Notice of Proposed Rulemaking, FCC 97-295 (rel. Aug. 18, 1997), further recons. pending.

FN12. See Local Competition Order 11 FCC Rcd at 16122-32, para. 1285. In deciding a number of prior cases under Section 252(e)(5), the Commission applied Section 51.801(b) of the rules as governing. We note, however, that all of these cases arose in the context of states' mediation and arbitration obligations or in instances where we found that a state commission had acted. See In the Matter of Global NAPS Inc. Petition for Preemption of Jurisdiction of the Massachusetts Department of Telecommunications and Energy Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996, CC Docket No. 99-354, Memorandum Opinion and Order, DA 00-510 (rel. March 7, 2000). See Also In the Matter of Petition of MCI for Preemption Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996, CC Docket No. 97-166, Memorandum Opinion and Order, 12 FCC Rcd 15594 (rel. Sept. 26, 1997).

FN13. Southwestern Bell Telephone Co. v. Public Utility Commission of Texas, 208 F.3d 475 (5th Cir. 2000) ("[T]he Act's grant to the state commissions of plenary authority to approve or disapprove these interconnection agreements necessarily carries with it the authority to interpret and enforce the provisions of agreements that state commissions have approved."); Illinois Bell Telephone Company v. WorldCom Technologies, Inc., 179 F.3d 566 (7th Cir. (Ill.) Jun 18, 1999) as amended (Aug. 19, 1999)(holding that the Act ""specifically provides state commissions with an important role to play" in interpreting and enforcing interconnection agreements).

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 23
PAGE 5 of 10

(Cite as: 15 F.C.C.R. 11277, *11282)

FN14. See Petition at 7; Comments of MCI at 4-5. We note that, in other circumstances, parties may be bound by dispute resolution clauses in their interconnection agreement to seek relief in a particular fashion, and, therefore, the state commission would have no responsibility under section 252 to interpret and enforce an existing agreement. In this case, however, the relevant interconnection agreements do not expressly specify how the disputes shall be resolved. See Interconnection Agreement between Starpower LLC and Bell Atlantic-Virginia, Inc., dated March 9, 1998, para. 2.3, and October 19, 1999, § 24; and Interconnection Agreement between Starpower, LLC and GTE South, Inc., effective March 11, 1998, § XVIII.

FN15. Starpower/GTE Decision at 6.

FN16. Our decision here should not be construed to imply that our authority to interpret and enforce interconnection agreements is confined to the context of section 252(e)(5) of the Act. Indeed, the Commission has held to the contrary. See Local Competition Order, 11 FCC Rcd at 15563-63, paras. 124- 29.

FN17. Comments of Bell Atlantic and GTE at 2.

FN18. See In the Matter of Petition for Commission Assumption of Jurisdiction of Low Tech Designs, Inc.'s Petition for Arbitration with Ameritech Illinois Before the Illinois Commerce Commission, with BellSouth Before the Georgia Public Service Commission, and with GTE South Before the Public Service Commission of South Carolina, CC Docket Nos. 97-163, 97-164, 97- 165, Memorandum Opinion and Order, 13 FCC Rcd 1755, 1758-59, paras. 5, 33 (1997), recons. denied, 14 FCC Rcd 7024 (1999).

FN19. See Comments of Bell Atlantic and GTE at 3. We note that Starpower's appeal to the U.S. District Court for the Eastern District of Virginia seeks only a determination that the Virginia Commission failed to exercise its discretion properly. The appeal does not ask the District Court to interpret the underlying merits of the dispute or otherwise address the substance of the case. Starpower Communications, LLC v. The Virginia State Corporation Commission, Petition for Judicial Review and Complaint for Declaratory Judgment, Civil Action 00-308-A, (E.D. Va.) (filed Feb. 23, 2000).

FN20. Any filings made by Starpower must meet the requirements of the Commission's rules governing the filing of formal complaints. See 47 CFR § 1.720 et seq.

FN21. Reciprocal Compensation Order, 14 FCC Rcd at 3703-6, paras. 24 and 27.

FN22. Local Competition Order, 11 FCC Rcd at 16129, para. 1289.

FN23. 47 U.S.C. § 252(e)(6).

*11283 DISSENTING STATEMENT OF COMMISSIONER HAROLD FURCHTGOTT-ROTH

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 23
PAGE 6 of 10

(Cite as: 15 F.C.C.R. 11277, *11283)

Re: Starpower Communications, LLC Petition for Preemption of Jurisdiction of the Virginia State Corporation Commission Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996, Memorandum Opinion and Order, CC Docket No. 00-52.

   I do not agree with the Commission's resolution of this matter, and I respectfully dissent from its decision.
   As an initial matter, it is not clear to me that the Virginia State Corporation Commission failed to carry out its responsibilities within the meaning of 47 U.S.C. § 252(e)(5). The state of affairs that prompted the Virginia Commission to rule as it did no longer exists, and I think the more prudent course would be for us formally to request the Virginia Commission to reconsider this dispute in light of current circumstances. Specifically, the Virginia Commission was concerned that, despite this Commission's ruling that calls to Internet service providers were jurisdictionally interstate, we had continued to require carriers to account on an intrastate basis for costs and revenues associated with ISP-bound traffic. See, e.g., Starpower Communications v. GTE South, Inc. Final Order Case No. PUC 990023 at 3-4 (Va. Comm. Jan. 24, 2000) (citing Reciprocal Compensation Order, 14 FCC Rcd 3689 (1999)). Observing that the "potential misallocation of costs to the state jurisdictions appears enormous," id. at 5, the Virginia Commission concluded that "the only practical action is for this Commission to decline jurisdiction and allow the parties to present their cases to the FCC," id. at 6.
   Since the Virginia Commission issued its ruling, the Court of Appeals for the District of Columbia Circuit has vacated and remanded this Commission's determination that ISP-bound calls are jurisdictionally interstate. See Bell Atlantic Telephone Companies v. FCC, 206 F.3d 1 (D.C. Cir. 2000). The Court of Appeals' decision fundamentally changes the circumstances that led the Virginia Commission to refuse to reach a decision in this case. In light of this ruling, what "responsibility" did the Virginia Commission fail to carry out? It simply declined to implement a ruling by this Commission that has since been judicially overturned. Even assuming that state commissions have a ""responsibility" to interpret and enforce the terms of interconnection agreements that they have approved, it simply is impossible to say that the Virginia Commission failed do that here. At the very least, we should formally ask Virginia Commission to reconsider its conclusion in light of the changed circumstances.
   The Commission's resolution of this case is also wrong in a different regard. Starpower appealed the Virginia Commission's decision to federal *11284 district court under section 252(e)(6), while simultaneously bringing its preemption argument before this Commission. But the statute does not allow a party to pursue alternative remedies in this manner. Rather, it says that a proceeding in this Commission and subsequent judicial review of that determination are the "exclusive remedies" for a state commission's failure to act. 47 U.S.C. § 252(e)(5). Starpower, however, has not behaved as if we have exclusive jurisdiction. Rather, by filing a complaint in the district court, Starpower has admitted that the Virginia Commission made a reviewable determination and that district court - not this Commission - has jurisdiction over this dispute. In my opinion, as an alternative to referring this matter to the Virginia Commission, we should have deferred any decision on our part until the district court had an

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT  23
PAGE  7  of  10

(Cite as: 15 F.C.C.R. 11277, *11284)

opportunity to review the Virginia Commission's determination.

*11285 STATEMENT OF COMMISSIONER MICHAEL K. POWELL

Re: Starpower Communications, LLC Petition for Preemption of Jurisdiction of the Virginia State Corporation Commission Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996, Memorandum Opinion and Order, CC Docket No. 00-52.

Although it seems particularly unfortunate that we must preempt a state commission for "failure to act" based on its reaction to our garbled Reciprocal Compensation Order, I believe the record and statute compel this result.

Prior to that order, a number of state commissions, including Virginia's, had chosen to treat a phone call to destinations on the Internet as two calls; the first "call" was a local one to an Internet service provider (ISP), and the second "call" was from the ISP to destinations on the Internet. The first of these segments was clearly "telecommunications" and thus states required reciprocal compensation to be paid, pursuant to section 251(b)(5), by the originating local carrier to the local carrier carrying the traffic to the ISP. In our Reciprocal Compensation Order, we declared that Internet-bound traffic was a single communication (i.e., one call, rather than two) and thus the nature of the communication was interstate. The effect of this declaration was to preempt the "two-call theory" used by Virginia and other states in awarding reciprocal compensation. Moreover, because the nature of the Internet-bound calls was interstate, it empowered the FCC, if it chose, to determine a federal compensation scheme for such traffic. (Because this declaratory ruling potentially pitted the federal authority against state authority, the "one-call"/"two-call" dispute is frequently referred to as the "jurisdictional issue.") Although we did not establish a federal inter-carrier compensation mechanism for the traffic we had just declared interstate, we did initiate a subsequent proceeding to consider that question, which is still pending.

Because we did not proffer a federal compensation rule in our Reciprocal Compensation Order, the question arose as to how our decision would affect current interconnection agreements that included reciprocal compensation provisions. The Commission did not wish to abrogate immediately those agreements and thus suggested that states could continue to "treat" the traffic as local until we considered alternate compensation schemes. This caused considerable confusion among state commissions and carriers. At once, we said the traffic was interstate and within our authority and at the same time that it could be "treated" as local, permitting states to sustain current agreements under some vague notion of delegation. In addition to permitting states to continue to treat traffic as local for some period, we also suggested a number of bases other than the two-call theory on which a state could act, including state contracting principles and any "other legal or equitable considerations." [FN1] At the time, I questioned this analysis as one that would only confuse states and that would raise more questions *11286 than it resolved. [FN2]

Starpower petitioned the Virginia Commission to resolve a dispute between it and Bell Atlantic. In an order, Virginia demonstrated that it was reasonably in doubt about how the FCC would ultimately rule on reciprocal compensation and

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 23
PAGE 8 of 10

that it did not feel empowered to act on some purported delegation by the FCC. The Virginia Commission specifically "declined jurisdiction" and instructed the parties to seek their relief at the FCC. [FN3] A fair reading of the Virginia Commission's decision is that it provided a reasoned basis for why the Virginia Commission would not resolve the underlying interconnection dispute, but Virginia failed to act nonetheless.

Section 252 clearly requires state commissions to resolve interconnection disputes expeditiously in order to allow carriers to get back to the business of providing service, rather than litigating. This duty is not limited to any particular basis for resolving these disputes, such as the jurisdictional nature of traffic between carriers. Rather, state commissions have a duty to resolve interconnection disputes by relying on any legitimate bases (including state law bases), so long as those bases do not conflict with federal law.

Thus, even if we were to accept the Virginia Commission's argument that the ambiguities created or perpetuated by our Reciprocal Compensation Order prevented the state from resolving the interconnection dispute on the basis of jurisdiction, Virginia had a duty to look at other bases for resolution. Unfortunately, however, there is no indication that the Virginia Commission looked at any bases for resolution other than jurisdiction, despite the fact that it had already concluded that jurisdiction was left ambiguous by our Reciprocal Compensation Order. This seems particularly troubling given the existence of other potential bases for resolution, some of which we alluded to in that order.

Moreover, some of the text of the Virginia Commission's decision declining to resolve the instant interconnection dispute reads almost as an admission that it failed to act, in that the Virginia Commission knowingly failed to resolve a dispute that it likely knew it could resolve. [FN4] Although the Virginia Commission's analysis may persuade us *11287 that it acted reasonably or that the FCC contributed to Virginia's dilemma, the state commission's rationales do not change the fact that it did not resolve the dispute, which section 252 requires it to do.

In addition, I would note that the equities or policy benefits of section 252 run to the disputing carriers, particularly new entrants, rather than to state commissions. Although it is important, in the interest of promoting federal-state comity, that we try to avoid unnecessary preemption, what is most important in considering preemption here is that the carriers have not enjoyed the benefit of the forum for dispute resolution guaranteed them by section 252. Section 252(e)(5) says, in essence, that when the state fails to provide the section 252 forum for resolving interconnection disputes, the FCC has to step in to perform the state's responsibilities. That is why we must preempt here, despite any reluctance we might have given the troubled nature of our reciprocal compensation precedents.

I also am unpersuaded that Starpower is somehow estopped from seeking preemption by the fact that it simultaneously filed an action in district court. I believe that FCC preemption is the exclusive remedy for a party that believes the state commission has failed to act. [FN5] When there is some question, however, as to whether the facts, fairly read, evidence a failure to act it is reasonable for the party to seek relief both at the Commission (which has exclusive authority if the state commission fails to act) and in district court

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 23
PAGE 9 of 10

**(Cite as: 15 F.C.C.R. 11277, \*11287)**

(which has jurisdiction to review the state commission's decision if it did not fail to act). I am unwilling to conclude that, by turning to both forums simultaneously, Starpower has somehow conceded that the Virginia Commission acted within the meaning of section 252(e)(5). The law does not make clear which forum - the FCC or the district court - has the authority in the first instance to determine whether there has been a failure to act.

For these reasons, I support, albeit reluctantly, the decision to preempt the Virginia Commission in this case.

FN1. Reciprocal Compensation Order at ¶ 27.

FN2. See id. (Statement of Commissioner Michael K. Powell).

FN3. Starpower/GTE Decision at 7 ("We will dismiss these petitions without prejudice but encourage the parties to carry their requests for construction of these agreements to the FCC where they can obtain relief that should be consistent with the rules the FCC may issue in the future.").

FN4. In particular, the Virginia Commission never denied that it could resolve the dispute on other grounds, but argued that resolving the dispute on non-jurisdictional grounds would not be "practical" given the possibility that such resolution could ultimately be in tension with future FCC orders regarding reciprocal compensation. See e.g., id. at 6-7 ("[A]ny interpretation of the instant agreements we might reach may well be inconsistent with the FCC's final order in its rulemaking.") (emphasis added); id. at 7 ("Given the possibility of conflicting results being reached by this Commission and the FCC, we believe the only practical action is for this Commission to decline jurisdiction and allow their parties to present their cases to the FCC.") (emphasis added).

FN5. Thus, I am in disagreement with the suggestion in a footnote of this decision that there are bases for FCC involvement in resolving the instant dispute that do not turn on section 252(e)(5).
END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

EXHIBIT 23
PAGE 10 of 10