STATE OF ALASKA

THE REGULATORY COMMISSION OF ALASKA

Before Commissioners:            Dave Harbour, Chair
                                  Will Abbott
                                  Mark K. Johnson
                                  James S. Strandberg
                                  G. Nanette Thompson

| | |
|---|---|
| In the Matter of the Investigation of the Local Exchange Revenue-Requirement, Depreciation, Cost-of-Service, Rate Design Studies, and Tariff Rate Revisions Designated as TA429-120 and TA431-120 Filed by ACS OF ANCHORAGE, INC. d/b/a ALASKA COMMUNICATIONS SYSTEMS, ACS LOCAL SERVICE, and ACS | U-01-34<br><br>ORDER NO. 22 |
| In the Matter of the Investigation of the Intrastate Access Charge Revenue-Requirement Study Filed by ACS OF ANCHORAGE, INC. d/b/a ALASKA COMMUNICATIONS SYSTEMS, ACS LOCAL SERVICE, and ACS | U-01-82<br><br>ORDER NO. 15 |

### ORDER AFFIRMING ELECTRONIC RULING, GRANTING, IN PART, MOTION TO STRIKE TESTIMONY AND REQUIRING FILINGS

BY THE COMMISSION:

#### Summary

We affirm our electronic ruling granting an extension of time for ACS-AN[1] to file a response to the *Motion to Strike* filed by GCI[2] on April 4, 2003. We grant, in part, the *Motion to Strike*, and we require ACS-AN and GCI to submit revised testimony and reply testimony consistent with the provisions of this order.

---

[1] ACS of Anchorage, Inc. d/b/a Alaska Communications Systems, ACS Local Service, and ACS.

[2] GCI Communication Corp. d/b/a General Communication, Inc., and d/b/a GCI.

U-01-34(22)/U-01-82(15) - (05/23/03)
Page 1 of 12

EXHIBIT 25
PAGE 1 of 12

## Background

After we ruled on depreciation issues, ACS-AN reported that it had submitted incorrect information to our record. ACS-AN asked that we reopen this proceeding "for the limited purpose of accepting into evidence APUC Order No. 1 and allowing the parties the opportunity to submit basic revised testimony that reflects the corrections and acknowledges the errors, so that the record is complete."[3] Through Order U-01-34(19),[4] we <u>conditionally and on a limited basis</u> reopened the record of Docket U-01-34. Some of the conditions and limits we placed on reopening the record included the following:

a) Reopening was limited to issues related to depreciation rates for the ACS-AN digital circuit equipment, metallic aerial cable, metallic underground cable, and metallic buried cable accounts (Four Accounts);

b) Parties could present evidence and testimony on whether Order U-96-78(1) appropriately identifies depreciation lives relevant to our decision concerning the Four Accounts;

c) Parties could provide evidence and testimony regarding what depreciation rates should apply to each of the Four Accounts, including whether we should accept the "current" life as identified by ACS-AN; accept a past proposal as a

---

[3] *ACS of Anchorage, Inc.'s Motion to Reopen the Hearing Record to Correct Substantial Evidentiary Errors*, filed October 17, 2002, at 3. In its *Motion*, ACS-AN referred to Order U-96-78(1), dated September 29, 1997, as APUC Order No. 1 and attached it as Exhibit A. Docket U-96-78 is titled: *In the Matter of the Application by ATU TELECOMMUNICATIONS, INC. for Authority to Implement New Depreciation Rates.*

[4] Order U-01-34(19)/U-01-66(8)/U-01-82(14)/U-01-83(14)/U-01-84(14)/ U-01-85(14)/U-01-86(14)/U-01-87(14), dated December 16, 2002.

U-01-34(22)/U-01-82(15) - (05/23/03)
Page 2 of 12

EXHIBIT 25
PAGE 2 of 12

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

more reasonable alternative to the "current" life; or stand by our previous decision regarding depreciation lives; and

d) Parties could not add new proposals to the record.[5]

The parties disputed the meaning of condition c) above. ACS-AN interpreted it to allow a broad scope of evidence and testimony. GCI argued that the record was reopened only to correct the record and explain the significance of the ACS-AN error correction in context of our depreciation decision in Order U-01-34(15).[6] ACS-AN argued that a party was permitted to introduce evidence not in the record in support of the party's position. Through Order U-01-34(20),[7] we clarified the matter as follows:

> We permit the parties to submit basic revised testimony reflecting the corrections to the service lives as requested by ACS-AN and acknowledge any errors in the evidence already admitted into the record associated with Order U-96-78(1). We limit further prefiled testimony or evidence to addressing the significance of Order U-96-78(1) for the Four Accounts and our Order U-01-34(15). Additional evidence supporting proposals already in the record will not be permitted.[8]

The parties subsequently filed testimony and reply testimony on ACS-AN depreciation issues. On April 4, 2003, GCI filed a motion to strike ACS-AN testimony of David C. Blessing and Terence J. Cooney, claiming the testimony exceeded the scope of this reopened proceeding as clarified by Order U-01-34(20).

---

[5]Id. at 6-7.

[6]Order U-01-34(15)/U-01-66(5)/U-01-82(11)/U-01-83(11)/U-01-84(11)/U-01-85(11)/U-01-86(11)/U-01-87(11), dated June 6, 2002, as clarified by Order U-01-34(16)/U-01-66(6)/U-01-82(12)/U-01-83(12)/U-01-84(12)/U-01-85(12)/U-01-86(12)/U-01-87(12), dated July 22, 2002.

[7]Order U-01-34(20), dated February 12, 2003.

[8]Id. at 4.

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

U-01-34(22)/U-01-82(15) - (05/23/03)
Page 3 of 12

EXHIBIT 25
PAGE 3 of 12

On April 10, 2003, ACS-AN filed a request for extension of time to respond to GCI's *Motion to Strike*. ACS-AN also asked for expedited consideration and oral ruling on its request for extension. We granted these motions by electronic ruling.[9] ACS-AN filed its *Opposition to Motion to Strike* on April 28, 2003, and GCI filed its response on May 5, 2003.

## Discussion

We find that the testimony of *Blessing*[10] and portions of the testimony of *Cooney*[11] fall outside the scope authorized in the limited reopening of the record in this proceeding.

### Testimony of Blessing

ACS-AN submitted both the testimony and reply testimony of Blessing in this proceeding. GCI's petition only addressed Blessing's direct testimony filed on February 28, 2003,[12] in arguing that it went beyond the scope of our orders.

ACS-AN opposed GCI's motion to strike Blessing's testimony, claiming that GCI's motion was based on an invalid reading or our orders and stated that ACS-AN complied with our limitations. ACS-AN also stated that we had specifically invited parties to explain why we should consider any other already offered proposal instead of the corrected lives.

---

[9] The parties were electronically notified of this ruling on April 14, 2003.

[10] *Direct Testimony of David C. Blessing on Behalf of ACS of Anchorage, Inc.*, filed February 28, 2003. (*Blessing*)

[11] *Prefiled Testimony of Terence J. Cooney on Behalf of ACS-Anchorage*, filed February 28, 2003. (*Cooney*)

[12] *Blessing*, at 3.

1   ACS-AN's interpretation is based on an overly broad reading of Order
2   U-01-34(19), and does not reflect the clarification we provided in Order U-01-34(20).
3   In Order U-01-34(20), we specifically stated we would limit prefiled testimony or
4   evidence addressing the significance of Order U-96-78(1) for the Four Accounts and
5   our Order U-01-34(15). We also stated that we would not permit additional evidence
6   supporting proposals already in the record. Blessing's stated purpose for his
7   testimony reveals the testimony to be beyond the allowed scope:

> The purpose of my testimony is to discuss the economic implications of using asset service lives in the ratemaking process that do not correspond to the asset's expected economic life. It is also to discuss the corresponding impacts, such as why competition like that in the Anchorage local service market shortens the economic lives of assets, and the problem partial asset retirement has in properly setting depreciation rates for cable plant. I will also discuss why ACS of Anchorage, Inc. would want the correct shorter service lives when any corresponding increase in revenue requirement will likely be difficult to recover in its competitive market.[13]

13  Blessing's testimony was generally consistent with his stated purpose
14  and included discussion of a variety of subjects such as general depreciation theory,
15  how competition and changes in technology may affect depreciation, effects on public
16  welfare, whether GCI will become a dominant provider, and partial retirement of
17  assets. These issues are not directly related to those authorized by Order
18  U-01-34(20). With the exception of his Question and Answer 26, Blessing did not
19  address specific issues within the allowed scope of review such as the record error,
20  the Four Accounts, or Order U-96-78(1), nor did Blessing revise his testimony or

---

[13] *Id.*, at 3.

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

U-01-34(22)/U-01-82(15) - (05/23/03)
Page 5 of 12

EXHIBIT 25
PAGE 5 of 12

evidence to reflect corrections to the current services lives (an allowable purpose for testimony). We conclude that Blessing's testimony is not permissible under Orders U-01-34(19) and (20).

ACS-AN argued that we should allow Blessing's testimony as it addressed the adverse impact of not accepting a quicker recovery of prior investment than Order U-01-34(15) allowed for the Four Accounts. ACS-AN stated that Blessing's testimony properly addressed the significance and need for us to continue, at a minimum, the shorter service lives approved for the Four Accounts by Order U-96-78(1).

Blessing's testimony is essentially an argument in favor of applying shorter depreciation lives for ACS-AN, but this generic argument is not directed to the Four Accounts, Order U-96-78(1), or the effects of the errors in the record. Blessing's testimony supports any proposal that reduces the service lives for ACS-AN plant. Blessing's testimony expressed concepts that could have been argued regardless of whether there was an error in the record. Further, Blessing reiterates many of the same positions submitted in previous testimony in support of ACS-AN's past depreciation proposal. We find that Blessing's testimony is essentially supplemental testimony supporting ACS-AN's original proposal for reduced service lives and is not specific to the issues for which we reopened the record. We have already stated that we would not accept testimony in support of an existing proposal.

ACS-AN also stated that Blessing's testimony was in direct response to "the Commission's indication that it was willing to reopen the proceeding to address the potential that ACS-AN would be unable to reasonably recover its prior capital

1  investment."[14]  ACS-AN's interpretation would place no effective limit on the testimony
2  and evidence allowed under reopening.  We clearly expressed our intent to place strict
3  limits on allowable testimony and evidence in Orders U-01-34(19) and (20).
4  Therefore, we strike Blessing's Testimony submitted on February 28,
5  2003.  GCI shall withdraw those portions of James W. Currin's prefiled testimony that
6  responds to Blessing's testimony.[15]  We strike Question and Answer 10 of the Reply
7  Testimony filed by Blessing on May 9, 2003, as it was submitted in response to GCI
8  testimony that will be withdrawn.

Testimony of Cooney

GCI requested that we strike Cooney's testimony in its entirety.  We find some, but not all of Cooney's testimony and reply testimony to be beyond the scope identified by our previous order.

*FCC Ranges*

We heard argument and testimony regarding the relevancy of Federal Communication Commission (FCC) service life ranges and how the ranges should affect our review of ACS-AN depreciation rates at the hearing.  Through Order U-01-34(15), we ruled that we were not obligated to follow the FCC service life ranges, but that they would provide a useful check for our review.[16]  The issue concerning the

---

[14]*ACS of Anchorage, Inc.'s Opposition to Motion to Strike* filed April 28, 2003, at 8.

[15]*Prefiled Testimony of James W. Currin on Behalf of GCI Communication Corp. d/b/a General Communication, Inc., and d/b/a GCI*, filed April 4, 2003, Section D at 5-6.  (*Currin*).  GCI previously stated that it would withdraw its related testimony if we struck the testimony of *Blessing*.

[16]Order U-01-34(15) at 4.

1  FCC ranges has therefore been fully adjudicated for purposes of this proceeding. It is
2  not among those limited issues for which we reopened the record.

3        Cooney provided extensive testimony on whether it was appropriate for
4  us to consider the FCC ranges. Such testimony is in response to an issue no longer
5  before the parties and is outside the scope of allowable issues. We strike the following
6  Cooney testimony related to FCC ranges:

7      • In response to Question and Answer 16, the sentence on page 11,
8        comprising the end of line 18, and lines 19 through 21.

9      • Answer 19, with the exception of the first sentence.

10     • Question and Answer 43.

11       GCI must withdraw testimony of *Majoros*[17] at page 18, lines 9 through
12 13, as it responds to the Cooney testimony that we are striking.

13 *Testimony on Digital Switching*

14       Cooney provided evidence concerning the Digital Switching Account.
15 Digital Switching is not among the Four Accounts for which this proceeding was
16 reopened and is therefore outside the allowed scope. We strike line 8 and lines 13
17 through 16 of Cooney's answer in response to Question 17.

18

19 *Declining Plant Usage*

20       Previously ACS provided extensive testimony stating that the retirement
21 of cable was not recorded until the plant was fully out of service, even though usage of
22 the plant may have substantially declined. ACS employed this argument as support
23 for the depreciation methodology and rates it proposed. Cooney in his Question and

24 ---

25 [17]*Prefiled Testimony of Michael J. Majoros on Behalf of GCI Communication Corp. d/b/a General Communication, Inc., and d/b/a GCI*, filed April 4, 2003. (*Majoros*).

26

U-01-34(22)/U-01-82(15) - (05/23/03)
Page 8 of 12

EXHIBIT 25
PAGE 8 of 12

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

Answer 28 discusses substantially the same issue and is therefore testimony in support of ACS-AN's past proposal. Question 28 raised by Cooney, "Please explain how a report on access lines validates a depreciation projection," is not on point to the scope we have allowed for reopening. We strike Question and Answer 28 as it is testimony that supports an existing proposal on record and is not directly related to the error for which we reopened this record.

*Testimony on GCI Proposal on Record*

Order U-01-34(20) specifically stated that we would not allow additional testimony or evidence supporting proposals already in the record. While it was not directly stated, it was implicit in the stated limits that we would not allow new opposition arguments to proposals already in the record. It would violate GCI's due process if we accept ACS-AN testimony opposing a GCI proposal without giving GCI an opportunity to respond. It would also be contrary to our statement that we would limit prefiled testimony or evidence to addressing the significance of Order U-96-78(1) for the Four Accounts and our Order U-01-34(15).

Cooney's Questions and Answers 41 and 42 provide evidence and testimony opposing GCI's proposal. Questions and Answers 41 and 42 are struck from the record. GCI shall withdraw its response to Answer 41 as provided in:

- The *Currin* testimony at page 13, line 2 through page 14, line 11 and
- The *Majoros* testimony at page 20, lines 6 to 11.

We also strike Cooney's Reply Testimony Questions and Answers 4 through 8, 10, and 13 through 15. This reply offers evidence and testimony opposing GCI's past historical study and methodology on depreciation and therefore is beyond the scope of this proceeding. It provides testimony and evidence not related to the record error or Order U-96-78(1). This reply also reiterates or elaborates on ACS-AN's

past position concerning delays in booking retirement associated with partially used plant, concepts employed previously to support ACS-AN's depreciation proposal. We conclude that the reply testimony in question does not comply with the limitations placed on the record and should be struck from the record.

ACS-AN implies that Cooney's Questions and Answers 4 through 8, 10, and 13 through 15 are in response to *Majoros* and *Currin* testimony.[18] We have reviewed corrected testimony of *Majoros* and it essentially addresses the extent to which his analysis submitted before we reopened the record was affected by the record error. He corrects his testimony in recognition of the record error. Majoros did not change his ultimate proposal, his recommended projection life, or the GCI study methodology provided on the record. Majoros' reference to his past testimony in conjunction with the error does not "open a door" allowing ACS-AN to provide testimony and evidence opposing the past GCI study methodology.

Similarly, *Currin* in the testimony referenced by ACS-AN refers to alleged flaws and erroneous retirement projections in the ACS-AN 1995 Depreciation Study, one of the bases of Order U-96-78(1). Rather than responding to whether there were errors in the 1995 Depreciation Study, Cooney instead reiterates ACS-AN's position on delays between booking a retirement and the declining usage of plant. We find Cooney does not appear to directly respond to *Currin* but instead adds testimony and evidence in support of ACS-AN's proposal on record and in opposition to GCI's past proposal on record.

We considered whether to also strike Cooney's Reply Testimony Questions and Answers 9, 11, and 18 as these also opposed GCI's study

---

[18]Cooney references testimony of *Majoros* at page 6, lines 10-12 and testimony of *Currin* at page 9, lines 1-4.

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

methodology and proposal and addressed appropriate lives for ACS-F.[19] However, the testimony also appears to include text that responds to Majoros' corrections to his original testimony that "all of the indictors" support his proposed lives and that for Aerial Cable, the same life should apply to both Anchorage and Fairbanks.[20] To the extent there is questionable testimony in Answers 9, 11, and 18, it is intertwined with testimony within the allowed scope, making it procedurally complicated to identify and separate the two portions. We will give ACS-AN the benefit of the doubt and will allow Answers 9, 11, and 18 in their entirety into the record. However, at hearing we will limit discussion of matters, testimony, or additional evidence that may be directly or indirectly associated with Answers 9, 11, and 18, to the extent such discussion falls outside the scope of this limited reopening.

Resubmission of Testimony

We require GCI and ACS-AN to submit corrected testimony consistent with this order to strike.[21] When resubmitting testimony, parties **shall not** substitute or alter the content of their testimony except to strike those portions in response to this order.

Sanctions

GCI has requested that we sanction ACS-AN for its failure to follow the limitations we set in this proceeding. We do not find good cause to impose sanctions.

---

[19]ACS of Fairbanks, Inc. d/b/a Alaska Communications Systems, ACS Local Service, and ACS.

[20]*Majoros* at 4-5.

[21]The parties may resubmit testimony with the stricken testimony blocked out so that the page references for the remaining testimony is intact.

Regulatory Commission of Alaska
701 West Eighth Avenue, Suite 300
Anchorage, Alaska 99501
(907) 276-6222; TTY (907) 276-4533

## ORDER

THE COMMISSION FURTHER ORDERS:

1. The electronic ruling granting the request by ACS of Anchorage, Inc. d/b/a Alaska Communications Systems, ACS Local Service, and ACS for extension and expedited oral ruling to file a response to the motion to strike is affirmed.

2. The portions of the testimony and reply testimony of David C. Blessing and Terence J. Cooney identified in the body of this Order are stricken from the record.

3. GCI Communication Corp. d/b/a General Communication, Inc., and d/b/a GCI shall withdraw its testimony filed in response to the stricken testimony referenced in Ordering Paragraph No. 2, above.

4. Within seven business days of this Order, ACS of Anchorage, Inc. d/b/a Alaska Communications Systems, ACS Local Service, and ACS and GCI Communication Corp. d/b/a General Communication, Inc., and d/b/a GCI shall file revised testimony consistent with this Order.

DATED AND EFFECTIVE at Anchorage, Alaska, this 23rd day of May, 2003.

BY DIRECTION OF THE COMMISSION
(Commissioner Dave Harbour, Chair, not participating.)

(SEAL)