Before the
FEDERAL COMMUNICATIONS COMMISSION
Washington, D.C. 20554

RECEIVED & INSPECTED

AUG 1 9 2002

FCC - MAILROOM

ACS of Anchorage, Inc. and )
ACS of Fairbanks, Inc. )
    )
    ) WC Docket No. 02-201
    )
    )
Emergency Petition for Declaratory Ruling )
and Other Relief Pursuant to Sections 201(b) )
and 252(e)(5) of the Communications Act )
_____ )

## COMMENTS OF THE REGULATORY COMMISSION OF ALASKA

I    Introduction

ACS has not presented valid justification for Commission preemption of the Regulatory Commission of Alaska ("RCA"). In order to justify preemption under the Telecommunications Act of 1996 (the "Act"), Commission regulation and precedent, ACS must demonstrate that the RCA has "failed to act" by refusing to undertake its section 252 duties, or by failing to perform these duties within the Act's deadlines. The RCA has not "failed to act."

In the Anchorage proceedings, there are two reasons. First, as ACS conceded in a previous hearing before the RCA, the Act's timelines do not apply because no new request for negotiation or arbitration is involved. Rather, the ongoing proceedings involve ACS' protracted requests to modify a previously approved interconnection agreement. Second, the RCA has diligently taken action on each ACS modification request. There is no basis to conclude that the RCA has been dilatory.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W FOURTH AVENUE SUITE 200
ANCHORAGE, ALASKA 99501
PHONE (907) 269-5100

EXHIBIT _28_
PAGE _1_ of _28_

Nor has the RCA "failed to act" in the Fairbanks docket. The RCA approved an arbitrated interconnection agreement within the Act's deadlines, and ACS is contesting the RCA's decision in federal court.[1] The Commission has made it clear that preemption requests are not granted in order to review the merits of state commission decisions. Yet, this is exactly what ACS is asking the Commission to do.[2] Finally, the RCA's assertion of its sovereign immunity in federal court does not bar it from contesting FCC preemption. ACS provides no analysis for its unique estoppel claim, and the authority it cites to does not support its argument.

---

[1]    In *Verizon Maryland, Inc v. Public Service Comm'n*, 535 U.S. __, 122 S.Ct. 1753 (2002)("*Verizon*"), the Supreme Court recently determined the federal courts have jurisdiction to review the merits of state commissions decisions taken under section 252 of the Act. Such a proceeding can be initiated by naming the state commissioners in their official capacity under the doctrine of *Ex parte Young*. 122 S.Ct. at 1759 – 1760.

[2]    Although the Commission's July 30, 2002 Public Notice says it will not be addressing ACS' substantive pricing issues at this junction, the Commission should be aware that ACS' petition is riddled with material omissions and misstatements. For example, at page 40, ACS says the Anchorage arbitration agreement is "silent as to the rates applicable after 1999." ACS fails to mention that RCA Order U-96-89(8) at pages 8-9 shows that parties intended that the rates in effect in 1999 would stay in effect "thereafter," and have in fact done so. On page 29 of its Petition, ACS infers that the RCA breached TELRIC principals by using the wrong capital structure and depreciation rates. Yet ACS omits any mention that the RCA-confirmed arbitration decision used depreciation rates calculated from ACS' own depreciation study, and a capital structure based on ACS' then current actual debt/equity structure. *See Arbitration Decision on Model Inputs*, filed in RCA Docket Nos. U-99-141/142/143, at p. 46 (July 17, 2000). ACS also provides incomplete information at page 30 of its Petition. There, it implies the RCA used the wrong loop length in its decision. Yet, again, ACS does not discuss the fact that the approved arbitration decision adopted ACS' own proposed loop length. *Id.* at p. 23.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 28
PAGE 2 of 28

In summary, ACS' claims that the RCA has "failed to act" are fiction. The Commission should dismiss ACS' Petition.

II.    Procedural Status of Anchorage and Fairbanks Cases

In order for the Commission to assess whether the RCA has "failed to act", it is necessary to review what actions the RCA has taken under the Act in the dockets ACS complains about. This procedural history makes it abundantly clear that the RCA has and is fulfilling its section 252 responsibilities. The RCA has acted appropriately, and within the required timelines.

A.    Anchorage

In 1996, General Communications, Inc. ("GCI") petitioned for arbitration of an interconnection agreement with ATU, the former owner of ACS's Anchorage facilities, under 47 U.S.C. § 252(b).[3]  Within six months of the filing, the Alaska Public Utilities Commission ("APUC"), predecessor agency to the RCA, reached a decision and issued an order approving an arbitrated interconnection agreement reached by the parties.[4]  In its order, the APUC stated that all prices in the interconnection agreement

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

---

[3]    The GCI Petition is dated July 29, 1996.

[4]    Order U-96-89(9)  (January 14, 1997), modifying Order U-96-89(8) (December 16, 1996). All referenced RCA orders are public records, copies of which are available on-line at www.state.ak.us/rca/orders/index.html.

EXHIBIT  28
PAGE  3  of  28

were temporary, pending further RCA action after it had evaluated "a full cost study based upon a cost methodology to be determined by the [RCA] at a later date."[5]

It was not until January 24, 2000, that ACS filed a Motion to Establish Forward Looking Economic Cost Models and Methodologies. The RCA granted this motion on March 6, 2000, and asked for briefs on what model should be used for this study.[6] After full briefing, on May 30, 2000, the RCA adopted the FCC's cost model, which was the same cost model being used for separate ongoing proceedings for Fairbanks and Juneau service areas. The RCA also granted the parties an opportunity to argue for changes in the cost model, and scheduled further Anchorage proceedings to follow the conclusion of the ongoing Fairbanks and Juneau arbitration.[7]

The Fairbanks and Juneau proceedings concluded on August 24, 2000[8], and a scheduling conference was held for the Anchorage docket on October 19, 2000. At the hearing, ACS provided notice that it wanted the RCA to consider changes it wanted to propose to the cost model. The RCA granted this request on January 8, 2001, and ordered further briefing on the issue.[9] The RCA also noted in this order that the parties agreed that the procedural deadlines contained in section 252(b)(4) of the Act

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

---

[5]    Order U-96-89(9), at p. 3. Further RCA action on an appropriate cost study was necessary because during the arbitration, "neither party developed forward-looking cost studies." Order U-96-89(8) at p. 18.

[6]    Order U-96-89(13) (March 6, 2000).

[7]    Order U-96-89(14)(May 30, 2000), at pages 3 – 4 & n. 9.

[8]    These proceedings are described in detail below.

[9]    Order U-96-89(15)(January 8, 2001) at pages 2 & 4.

EXHIBIT 28
PAGE 4 of 28

did not apply to the Anchorage proceeding because no new request for negotiation or arbitration was at issue.[10]

After reviewing the parties' responses, on May 11, 2001 the RCA concluded that it needed further information on alternative methods for pricing UNEs. Added information was necessary because forward looking cost methodologies were, at that time, in a state of flux pending the Supreme Court's decision in *Verizon Communications. Inc. v FCC*, 535 U.S. ___, 122 S.Ct. 1646 (2002) which was to address the validity of the FCC's forward looking TELRIC principals.[11]   This schedule was delayed because ACS failed to serve GCI with information supporting its proposed modifications to the model as ordered by the RCA.[12] After another round of briefing the RCA issued an order determining that the cost study which would ultimately be adopted would be based on an "efficient ILEC standard."  UNE prices would be determined "based on the cost of replacing [ACS'] network existing today with the most efficient technology [ACS] has actually employed."[13] The RCA scheduled a February 15, 2002 hearing to allow the parties to argue whether the competing models could "produce

---

[10]   *Id.*, at p. 4, n. 15: "The parties do not argue that the deadlines for commission approval of an interconnection agreement under the Act now apply in this docket. . . . A new request for negotiation or petition for arbitration under the Act has not occurred in this docket and the procedural timelines of Section 252(b)(4)(c) do not apply."

[11]   Order U-96-89(20) (May 11, 2001), at pages 2 - 4.

[12]   *See* Orders U-96-89(20)(January 8, 2001) at p. 6, n. 16, and U-96-89(21) (July 5, 2001), at p. 3.

[13]   Order U-96-89(24)(February 8, 2002) at p. 11.

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No. 02-201
Page 5 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 28
PAGE 5 of 28

results consistent with an efficient ILEC standard and be compliant with the total long-run incremental cost (TELRIC) principals established by the [FCC]."[14]

The parties presented experts and testimony on their competing models. Because ambiguities existed at the hearing concerning ACS' proposed model, ACS requested that the RCA hold a workshop to facilitate an adequate exchange of information between the parties. The RCA granted ACS' request, and ordered the results of the workshop to be presented by May 22, 2002.[15]

After it reviewed the parties workshop reports, on July 29, 2002, the RCA adopted ACS' proposed the cost model, and set a two-phase arbitration procedure to resolve UNE rates for Anchorage.[16]   However, in agreeing to adopt ACS' proposed model, the RCA noted that much of the time taken to move towards final UNE rates had evolved as a result of ACS' own advocacy, and it warned that proceeding with ACS' current proposal would create added delay:

> "We also note that the major delays in adopting new rates have been due, in part, to ACS-AN's advocacy of its model over our earlier decision to use the FCC model . . ."

> "Nonetheless, we are willing to use the ACS-AN approach if the parties are given adequate opportunity to fully understand and correct it. In that regard we believe it is necessary to point out that ACS-AN, which has strenuously advocated for the use of this

---

[14]   Order U-96-89(25)(April 8, 2002) at p. 2.

[15]   Order U-96-89(25) (April 8, 2002) at pages 9 – 10.

[16]   Order U-96-89(26) (July 29, 2002). Issuance of this Order appears to moot many of the issues raised by ACS in their Petition. *See* ACS Petition at pages 11 – 12.

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No 02-201
Page 6 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT _28_
PAGE _6_ of _28_

manual and potentially time consuming approach, is also the party that has been equally strenuous in arguing for a quick resolution of this docket. If ACS-AN is willing to live with the delays inherent in using this model, we are willing to accommodate their request that it be used in this proceeding. We rely on ACS-AN's representations, during the course of the hearing and the workshop, of its willingness to devote the time and resources necessary to fix the model."[17]

During the term of these Anchorage proceedings, ACS was also able to seek interim relief from the RCA based on its claims that the UNE loop rates previously set in 1997 were inadequate. It filed such a request on June 11, 2001. After briefing and argument, the RCA granted ACS an interim increase in UNE loop rates for Anchorage, but the interim rates set were lower than ACS requested.[18] Although ACS contends that this order set interim rates at an unreasonable level,[19] it could have appealed this order.[20] It chose not do so.

---

[17]    Order U-96-89(26) at p. 5 – 6 & n. 13.

[18]    Order U-96-89(23) (October 25, 2001).

[19]    ACS Petition at p. 12. What ACS ignores in setting forth this line of complaint is that under state law, ACS, not GCI, bore the burden of demonstrating, by a "probable success on the merits" standard, that its proposed rates were proper. Order U-96-89(23) at p. 5 – 6, citing *A.J. Industries v. APUC*, 470 P.2d 537 (Alaska 1970) and *APUC v. Greater Anchorage Area Borough*, 534 P.2d 549 (Alaska 1975). ACS failed to meet this burden. ACS had requested UNE loop rates be increased 73% from $13.85 per loop to $24 per loop. GCI showed that use of the previously approved FCC model, with inputs determined in the Fairbanks/Juneau arbitration, produced a $14.92 loop rate. Although GCI ultimately agreed that a $14.92 loop rate was reasonable, it had previously contended this rate was too high for Anchorage. The RCA adopted this $14.92 interim loop rate for Anchorage. It also noted that it would revisit the issue if ACS presented additional competent evidence showing further interim rate relief was appropriate. Order U-96-89(23) at pages 2, 5 – 11. ACS has never done so.

[20]    *See e.g., U.S. v. RCA Alaska Communications, Inc.*, 597 P.2d 489, 494 (Alaska 1979).

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No. 02-201
Page 7 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT __28__
PAGE __7__ of __28__

B. Fairbanks

In 1997, General Communications, Inc. ("GCI") petitioned the RCA to terminate ACS' rural exemption in Fairbanks pursuant to 47 U.S.C. § 251(f). Following a hearing, and reconsideration, the RCA issued an order on October 11, 1999 terminating this rural exemption.[21]

Following the termination of ACS' rural exemption, GCI attempted to negotiate an interconnection agreement with ACS. These negotiations failed, and on December 8, 1999, GCI petitioned the RCA for arbitration under 47 U.S.C. § 252(b). Hearings were held on the petition, and the resulting arbitration decisions established the terms of interconnection between ACS and GCI for Fairbanks, and set the UNE prices GCI would pay ACS. This arbitration decision was approved, in part, and modified in part, by the RCA on August 24, 2000.[22]

On September 25, 2000, ACS filed a complaint in federal district court naming the RCA and GCI as defendants.[23] The complaint alleges the federal district court has jurisdiction under 47 U.S.C. § 252(e)(6) to review the merits of the RCA's decision to approve the arbitration decision. Exhibit B, p. 3.

---

[21]    Orders U-97-82(11), U-97-143(11), U-97-144(11)(October 11, 1999). ACS' rural exemption for Juneau was also terminated at this time; however issues pertaining to the Juneau docket do not appear to be at issue in ACS' FCC filing.

[22]    Orders U-99-141(9), U-99-142(9), U-99-143(9)(August 24, 2000).

[23]    Although ACS initially named the RCA's commissioners as defendants in its complaint, on December 1, 2000, it dismissed them from the federal court action. ACS provided no explanation for its decision to dismiss its action against the RCA's commissioners. Exhibit A.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 28
PAGE 8 of 28

This federal court action is now stayed pending review by the Ninth Circuit Court of Appeals. The issue before the Ninth Circuit is whether the RCA's Eleventh Amendment immunity bars the federal court action.[24] The United States Supreme Court in its *Verizon* decision last term did not decide this sovereign immunity issue. The Court left unanswered whether the Fourth Circuit Court of Appeals was correct in concluding that state sovereign immunity protections guaranteed under the Eleventh Amendment bar naming state commissions as defendants in federal court to contest their section 252 decisions. *Verizon,* 122 S.Ct. at 1757, 1760.[25] Oral argument before the Ninth Circuit on the RCA's outstanding immunity claim is currently scheduled for September 30, 2002. Exhibit C.[26]

III.    Argument

ACS' lengthy petition can be rendered down to three basic complaints. First, focusing on Anchorage, ACS complains that the RCA has "failed to act" by not establishing a cost model or scheduling a hearing to set final UNE rates. Second, focusing on Fairbanks, ACS complains that decisions made by the RCA in approving an

---

[24]    *See ACS of Fairbanks, Inc. v. GCI Communications Corp. et. al.,* Appeal No. 01-35344 (9th Cir. Court of Appeals).

[25]    In *Verizon,* the Supreme Court avoided answering this question by focusing instead on the issue of whether state commissioners were immune from suit in federal court. The Court held only that the doctrine of *Ex parte Young* permitted the federal court suit to proceed against state commissioners, individually, in their official capacity. In the ACS federal court action, however, the only state defendant is the RCA.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT __28__
PAGE __9__ of __28__

arbitrated interconnection agreement violate various aspects of federal law. For both service areas, ACS claims UNE rates set by the RCA are confiscatory, and result in ACS being subjected to financial harm.

From this platform, ACS requests declaratory relief by suggesting that the Commission review the merits of the RCA's decisions. ACS then asks the Commission to issue an order, under 47 U.S.C. § 252(e)(5) preempting the jurisdiction of the RCA for failing to "carry out its responsibilities under section 252 of the Act."[27]

For the reasons set forth below, the Commission should deny this petition. There is no foundation in law or Commission precedent supporting ACS' preemption requests.

A.    Standards for Commission Preemption Under the Act

47 U.S.C. § 252(e)(5) provides the statutory framework for FCC preemption:

---

[26]    Given the Supreme Court's decision in *Verizon*, had ACS not chosen to dismiss its federal court action against the RCA's commissioners, it would now be obtaining the judicial review its claims it is lacking.

[27]    ACS also makes a collateral argument at pages 5 and 22 of its petition that requires a response. There, ACS suggests that the RCA's charter will sunset, and that the RCA will not have sufficient time to resolve Anchorage interconnection issues before its operations as a regulatory agency cease. This argument is disingenuous. Attached as Exhibit D is the Alaska Legislature's June 26, 2002 bill extending the operations of the RCA. Section 5 of the Bill shows the RCA's charter is extended until June 30, 2003. At that time, under Alaska Stat. 44.66.010(b), if the legislature chose not to extend the RCA's charter further, the RCA would enter a one-year "winddown" period. However, during the same legislative hearings referenced by ACS at page 5 of its petition the Senate Judiciary Committee's chairman made it abundantly clear that the Alaska State Legislature has no intention of terminating the RCA's charter. Audiotapes of these legislative hearings may be reviewed on-line at www.ktoo.org/gavel/audio.cfm.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 28
PAGE 10 of 28

"If a State commission fails to act to carry out its responsibility under this section in any proceeding or other matter under this section, then the Commission shall issue an order preempting the State commission's jurisdiction of that proceeding or matter within 90 days after being notified (or taking notice) of such failure . . ."

The Commission's regulations at 47 C.F.R. § 801(b) implement this section of the Act by defining the circumstances under which a state commission can be deemed to have "failed to act." Preemption is warranted where a state commission refuses to entertain an arbitration or mediation request, or where it fails to finish its arbitration duties with the statutory deadline:

"For purposes of this part, a state commission fails to act if the state commission fails to respond to a request for mediation, as provided for in section 252(a)(2) of the Act, or for a request for arbitration, as provided in section 252(b) of the Act, or fails to complete an arbitration within the time limits established in section 252(b)(4)(C) of the Act.

The Commission also explained the limited scope of its "failure to act" definition in its *Local Competition First Report and Order*[28] at paragraph 1285:

Regarding what constitutes a state's "failure to act to carry out its responsibility under" section 252, the Commission was presented with numerous options. **The Commission will not take an expansive view of what constitutes a state's "failure to act."** Instead, the Commission interprets "failure to act" to mean a state's failure to complete its duties in a timely manner. **This would limit Commission action to instances where a state commission fails to respond, within a reasonable time, to a request for mediation or arbitration, or fails to complete arbitration within the time limits of section 252(b)(4)(C).** The Commission will place the burden of proof on parties alleging that the state commission has failed to respond to a request for mediation or arbitration within a reasonable time frame. [Emphasis added].

---

[28]    11 FCCR 15499 (1996).

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No 02-201
Page 11 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT    28
PAGE    11    of    28

Commission decisions limiting the scope of preemption have been consistent. These decisions make it abundantly clear that section 252(e)(5) preemption is not warranted where a party is dissatisfied with a state commission decision, or where a party claims the state commission has misinterpreted or misapplied the provisions of the Act in reaching its decision. Rather, preemption is only justified where a state commission refuses to undertake duties conferred on the state commission pursuant to section 252 of the Act.

One of the earliest FCC decisions reaching this conclusion was in CC Docket Nos. 97-163, 97-164 and 97-165, where the Commission examined preemption petitions filed by Low Tech Designs, Inc. ("Low Tech").[29] The Commission noted that decisions to divest state commissions of jurisdiction under section 252(e)(5) are narrowly construed, and are generally limited to a state commission's failure to timely respond to a request for mediation or arbitration. 13 FCC Rcd. 1755 at ¶ 5. Thus, the Commission concluded that a state commission decision to dismiss a petition for section

---

[29]    *In the Matter of Petition for Commission Assumption of Jurisdiction of Low Tech Designs, Inc 's Petition for Arbitration with Ameritech Illinois before the Illinois Commerce Commission (CC Docket No. 97-163), Petition for Commission Assumption of Jurisdiction of Low Tech Designs, Inc.'s Petition for Arbitration with Bellsouth Before the Georgia Public Service Commission* (CC Docket No. 97-164), *Petition for Commission Assumption of Jurisdiction of Low Tech Designs, Inc.'s Petition for Arbitration with GTE South before the Public Service Commission of South Carolina* (CC Docket No. 97-165), 13 FCC Rcd. 1755 (1997).

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT ___28___
PAGE _12_ of _28_

252 arbitration because the petitioner lacked standing under the Act was not a "failure to act" for preemption purposes. 13 FCC Rcd. 1755 at ¶ 33.[30]

In *Low Tech*, the Commission also noted that preemption is not triggered by allegations of incorrect or improper substantive decisions made by state commissions while undertaking section 252 responsibilities:

> "Because section 51.801 of our rules does not focus on the validity of state commission decisions, we do not see a basis under our rules for examining the underlying reasoning of state commission decisions."[31]

The Commission's decisions on the scope of section 252(e)(5) preemption since *Low Tech* have followed this theme. In CC Docket No. 99-154[32], the Commission found a preemption request unwarranted where the state commission issued its decision during the course of the FCC action:

> Even though the New Jersey Board "failed to act" within the nine month deadline imposed by section 252, we are now presented with a situation in which GNAPs [Global Naps] has asked the Commission to assume jurisdiction over an already completed state proceeding. The New Jersey Board's recent action has effectively mooted the need for Commission preemption of the New Jersey

---

[30]    "[U]nder our current rules, a state commission does not 'fail to act' when it dismisses or denies an arbitration petition on the ground it is procedurally defective, the petitioner lacks standing to arbitrate, or the state commission lacks jurisdiction over the proceeding."

[31]    13 FCC Rcd. 1755 at ¶ 36. *See also id.* at footnote 122: "LTD's argument appears to be essentially that a state commission has not acted until it has ruled on the merits of the issues raised in the arbitration petition. As discussed above, this argument does not provide a ground for preemption under our rules."

[32]    *In the Matter of Global Naps, Inc. Petition for Preemption of Jurisdiction of the New Jersey Board of Public Utilities Regarding Interconnection Dispute With Bell Atlantic-New Jersey, Inc.*, 14 FCC Rcd. 12530 (1999).

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No. 02-201
Page 13 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 28
PAGE 13 of 28

GNAPs/Bell Atlantic proceeding. While we have a duty to assume "responsibility" when a state commission "fails to act," after the New Jersey Board's July 12, 1999 final order, there is no further "responsibility" left for the Commission to assume. Principles of federal-state comity and efficiency lead us to question the merit of assuming jurisdiction over the completed state proceeding under the circumstances presented in this instance. This situation is roughly analogous to one in which a court declines to act on a matter pending resolution of proceedings before an administrative agency. "[P]ractical notions of judicial efficiency" have "a role to play when a court is confronted with a case the resolution of which could benefit from the prior conclusion of a related administrative proceeding." Just as a court must recognize existing agency action that will "render the complex fact pattern simple, or the lengthy proceeding short[,]" we recognize the practical efficiency of acknowledging the New Jersey Board's recent resolution of this proceeding. In doing so, we avoid a "situation[] which cr[ies] out for the elimination of duplication of efforts." [33]

The Commission also reiterated its message from *Low Tech* that it will not assume jurisdiction to examine the merits of a state commission's section 252 decision:

[T]he Commission's decision not to preempt the jurisdiction of the New Jersey Board does not leave GNAPs without a remedy. **While GNAPs may prefer to attack the validity of the New Jersey Board's final order before this agency, we will not examine the substantive merits of that decision here.** Pursuant to section 252(e)(6), a party aggrieved by a state commission arbitration determination under section 252 has the right to bring an action in federal district court. Thus, GNAPs may still challenge the final New Jersey Board determination in federal district court pursuant to section 252(e)(6).[34] [Emphasis added].

The Commission's consistent application of the limited scope of state commission preemption has also been endorsed on appellate court review. In *Global*

---

[33]    14 FCC Rcd. 12530 at ¶ 17.

[34]    14 FCC Rcd. 12530 at ¶ 20.

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No. 02-201
Page 14 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 28
PAGE 14 of 28

*Naps. Inc. v Federal Communications Comm'n*, 291 F.3d 832 (D.C.Cir. 2002), the Circuit Court was asked to review the Commission's decision declining to preempt the jurisdiction of the Massachusetts Department of Telecommunication and Energy ("DTE").[35]  The Commission had refused to preempt the DTE because the DTE's decision had been issued while the FCC petition was pending. 15 FCC Rcd. 4943 at ¶ 7 – 8.[36] Moreover, the Commission also reiterated its consistent interpretation of section 252(e)(5) of the Act and 47 C.F.R 51.801 that requests for preemption do not provide the Commission with jurisdiction to review the merits of state commission decisions. 15 FCC Rcd. 4943 at ¶ 9.[37]

On review, the Circuit Court agreed:

> We hold that the FCC's conclusion that § 252(e)(5) does not empower it to look behind a state agency's dismissal of a carrier's claim to evaluate the substantive validity of that dismissal is both a reasonable interpretation of that provision and consistent with the Commission's past practices and precedents. . . . It does not matter

---

[35]     15 FCC Rcd. 4943 (2000).

[36]     "[W]e deny GNAPs' Petition based upon the final action taken by the Massachusetts DTE on February 25, 2000 addressing the interconnection dispute between GNAPs and Bell Atlantic. . . . [W]e are confronted with a situation in which GNAPs has requested that this Commission assume jurisdiction over an already-completed state proceeding. The Massachusetts DTE's recent action has rendered moot the need for Commission preemption of the GNAPs/Bell Atlantic dispute. Since the release of the Massachusetts DTE's February 25, 2000 order, there is no longer a pending GNAPs/Bell Atlantic complaint proceeding before the DTE and no 'responsibility' left for the Commission to assume . . ."

[37]     "As we concluded in a prior order under section 252(e)(5), however, 'section 51.801 of the Commission's rules does not focus on the validity of state commission decisions.' We therefore do not see a basis for examining the underlying reasoning of the Massachusetts DTE in determining that GNAPs' complaint is moot."

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT __28__
PAGE __15__ of __28__

whether the state agency's position is correct on the merits. Rather, as the FCC found, what matters is that DTE did not fail to act, so the federal Commission has no basis upon which to preempt the regulatory authority of the state agency. GNAPs' remedy lies not in FCC preemption, but rather in judicial review of DTE's order, whether in federal or in state court.[38]

. . .

If a state commission fails to act, preemption is a viable option; however, if the state agency takes final action disposing of the pending claim, that action can be undone only by direct judicial review in the appropriate forum. And, in the present case, it does not matter whether DTE's decision to dismiss GNAPs' complaint as moot was reasonable.

. . .

In the Orders now on review, the FCC decided that it would not preempt an already completed state proceeding, at least where doing so would require the Commission to examine the underlying reasoning given by the state agency for terminating that proceeding. In so holding, the FCC has effectively construed § 252(e)(5) as not covering situations where a state agency affirmatively acts to dispose of a case, and in so doing at least purports to resolve the issues presented to it.[39]

ACS suggests that the *Starpower* order[40], represents an abandonment of the Commission's consistent practice of refusing to consider the merits of state commission decisions in evaluating a preemption request.[41] ACS is wrong.

In *Starpower*, the Commission was presented with the question whether state commission responsibilities under the act include the interpretation and

---

[38]    291 F.3d at 833 – 834.

[39]    291 F.3d at 837.

[40]    15 FCCR 11277 (2000).

[41]    ACS Petition, at p. 40.

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No 02-201
Page 16 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE (907) 269-5100

EXHIBIT 28
PAGE 16 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

enforcement of interconnection agreements. The Virginia commission had expressly refused to become involved in such an interpretation/enforcement action and directed the parties to seek FCC relief. The Commission, after first concluding state commissions did have such responsibilities under the Act, viewed the Virginia commission's express refusal to become involved as a failure to act justifying preemption.[42] Thus, *Starpower* stands for the unremarkable proposition that where a state commission refuses to perform its section 252 duties, and tells the parties to bring their dispute to the FCC, such state commission inaction constitutes a "failure to act" for preemption purposes.[43]  There is simply no parallel that can be drawn between the RCA's affirmative actions in its Anchorage and Fairbanks dockets and the Virginia commission's express inaction demonstrated in *Starpower*.

---

[42]    *Id.* at ¶s 6 – 7.

[43]    *Global Naps, Inc. v FCC*, 291 F.3d 832, 839 (D.C.Cir. 2002)(noting that the facts in *Starpower* were consistent with a "failure to act" determination because the "Virginia commission refused to even consider Starpower's petition and, instead, encouraged the parties to seek relief from the FCC."). *See also, In the Matter of Petition of Worldcom, Inc. for Preemption of Jurisdiction of the Virginia State Corporation Commission Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996 and for Arbitration of Interconnection Disputes with Verizon-Virginia, Inc.*, 16 FCCR 6224 (2001)(preempting the Virginia Commission after it expressly refused to arbitrate an interconnection dispute under the terms of the Act, telling the parties to seek relief with the FCC in order to do so).

EXHIBIT  28
PAGE 17 of 28

## B. The RCA Has Not "Failed to Act" in the Anchorage Docket

### 1. The Act's Timelines Do Not Apply to the Anchorage Proceeding

ACS does not attempt to argue that the RCA has "failed to act" within the Act's nine month deadline. This is because the current Anchorage proceedings do not involve a "new" request for negotiation or arbitration, but rather the modification of an existing arbitrated interconnection agreement previously approved by the APUC in January 1997.[44] Therefore, the timelines mandated by section 252 do not apply to the current Anchorage proceedings. Indeed, ACS candidly admitted this in proceedings before the RCA on December 6, 2000:

> CHAIR THOMPSON: If we're proceeding under the federal Act do any of the deadlines for approval of interconnection agreement or arbitration proceedings apply to this proceeding?
>
> MR. CALLAHAN[45]: In this case I don't think so. I think this is an anomaly because of the conditional approval of the interim prices. And I guess my view would be that we simply have an obligation to conform those prices to the Act expeditiously, but I -- but I believe other requirements of federal law would apply. I believe the Commissions -- for example, a determination by the Commission of prices would need to conform with federal Act requirements. I think under the language of the Act that would be a determination which the Act makes reviewable in federal court. I know there's a debate about sovereign immunity and the like, and those are other issues, but I think it would be a determination under federal law with respect to an arbitration agreement and would fall within the Act.

---

[44]    Order U-96-89(9)(January 14, 1997).

[45]    Mr. Callahan was ACS' counsel in the Anchorage docket. Exhibit E, p. 1.

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No. 02-201
Page 18 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT __28__
PAGE __18__ of __28__

> But no, it doesn't clearly within a timing framework for a negotiation or arbitration. It's not a new negotiation or arbitration. It's fixing an existing agreement to make it conform to federal law. And it was implicit in the condition of approval of the '97 agreement.[46]

Because the Act's procedural timelines are inapplicable to the current Anchorage proceedings, there is no foundation upon which the Commission can conclude that the RCA has "failed to act." Neither the language of the Act, nor the Commission's regulations[47] or precedent supports any contrary conclusion.[48]

### 2. The RCA Has Been Diligently Processing the Anchorage Litigation

Notwithstanding the lack of any procedural deadline, the RCA has taken diligent action in the Anchorage docket. *See* Section IIA above. ACS' complaint that the RCA has not determined what cost model to use or scheduled a hearing to set final UNE loop rates[49] is simply incorrect.

ACS' complaint does not take into account the impact of RCA Order U-96-89(26), issued July 29, 2002.[50] In this order, the RCA selected ACS' proposed

---

[46]    Exhibit E, p. 5. ACS is estopped from arguing otherwise. *See, e.g. NextWave Personal Comm, Inc., Order on Reconsideration*, 15 FCC Rcd 17500, 17515 at ¶ 28 (2000).

[47]    *See Local Competition First Report and Order*, 11 FCC Rcd. 15499 at ¶ 1285 and 47 C.F.R. §801(b).

[48]    *See* discussion at Argument Section A above.

[49]    *See* ACS Petition at p. 12, 21 - 22.

[50]    An adjudicatory body, such as the RCA, must take great care in its deliberations and in the crafting of orders it issues. Although RCA Order U-96-89(26)

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No. 02-201
Page 19 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 28
PAGE 19 of 28

cost model for use and set up a two-phase procedural schedule to set final rates. The first meeting of the parties with the arbitrator to begin the scheduling process has already occurred.[51] Thus, ACS' procedural complaint is without merit.

Nor can ACS justifiably contend that the RCA has been dilatory. Interim loop rates were established in 1997, well within any statutory deadline.[52] ACS took no action to alter this status quo for three years, when in January 2000 it asked the RCA to establish a forward looking cost methodology. The RCA did so within six months of ACS' request.[53]

Again, in October 2000, ACS asked for changes to be made to this model. The RCA agreed to allow ACS to make its case for changes.[54] These proceedings commenced with briefing the RCA reviewed occurring during the same time the Supreme Court was considering the validity of the FCC's TELRIC principals. This process has now borne fruit. In order U-96-89(26), the RCA has agreed to use the cost model ACS proposed.

Given this procedural history, it is disingenuous for ACS to contend that the RCA has been dilatory. As the RCA noted in Order U-96-89(26), ACS has authored

was filed five days after ACS filed its FCC Petition, it was substantively complete and in the final procedural stages of its creation before ACS' FCC filing.

[51]    This meeting was held August 5, 2002.

[52]    *See* Order U-96-89(9) issued January 14, 1997 following the initiation of proceedings under the Act on GCI's Petition filed July 29, 1996.

[53]    Order U-96-89(14), issued May 30, 2000.

[54]    Order U-96-89(15), issued January 8, 2001.

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No. 02-201
Page 20 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 28
PAGE 20 of 28

its own delays.[55] On this record, there is no basis for the FCC to conclude that the RCA has unreasonably "failed to act."

### C.  The RCA Has Not "Failed to Act" in the Fairbanks Dockets

ACS' complaint in the Fairbanks docket is two-pronged. First, it complains that the RCA misapplied or misinterpreted federal law in reaching its decision.[56] ACS does not assert that the RCA did not reach a timely decision or that it refused to perform its section 252 responsibilities. Rather, it complains it does not like the decision reached.

The second prong of ACS' argument is based on an estoppel theory. It argues that because the RCA asserted its Eleventh Amendment immunity in federal district court, the RCA has in some way waived its right to object to FCC preemption.[57] Both claims are baseless.

### 1.  The RCA carried out its section 252 responsibilities.

The RCA issued a timely arbitration decision in the Fairbanks docket. GCI filed its arbitration petition on December 8, 1999. After a hearing, the RCA issued its decision approving the arbitrator's decision in part, and modifying it in part on August 24, 2000. Thus, the RCA "acted" and did so in a timely manner.

---

[55]    "We also note that the major delays in adopting new rates have been due, in part, to ACS-AN's advocacy of its model over our earlier decision to use the FCC model . . ." Order U-96-89(26) at p. 6, n. 13.

[56]    ACS Petition at pages 15 – 17, 32 – 36.

[57]    ACS Petition at 19 – 20, 41 – 42.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE (907) 269-5100

EXHIBIT ___28___
PAGE __21__ of __28__

Nonetheless, ACS still suggests that the FCC should preempt the RCA by looking to the merits of the RCA's decision. ACS makes this leap by arguing that if a state commission's section 252 decision is at odds with federal law, such state action is the functional equivalent of a "failure to act" under section 252(e)(5).[58] In making this sweeping statement, ACS cites to a single FCC decision – *Starpower*. However, *Starpower* does not support ACS' claim because the *Starpower* decision was predicated on the Virginia's commissions express refusal to act.[59] This did not happen in the RCA's Fairbanks docket where the RCA issued a final decision.

Nor does ACS' citation to a section of the *Local Competition First Report and Order* support its argument.[60] Paragraph 739, quoted by ACS, is unremarkable because it notes that "review" of the FCC's pricing methodology is available. This paragraph speaks to *judicial* review of the FCC's pricing methodology.[61] It makes no mention of FCC review of state commission implementation of the FCC's pricing methodology. Moreover, even if ¶ 739's reference to "the Commission's pricing methodology" could somehow be construed to mean a state commission's determination

---

[58]    *See* ACS Petition at p. 40 ("There is nothing in the language or legislative history of section 252(e)(5) to prevent the FCC from preempting state actions that clearly violate the pricing standards set forth in section 252(d)(1); ACS Petition at p. 43 ("The FCC has expressed its willingness to review cases in which the UNE pricing mechanism has failed, recognizing the possibility that the TELRIC pricing mechanism could have a confiscatory effect.")

[59]    *See* Argument Section IIA above.

[60]    *See* ACS Petition at p. 43.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT ___28___
PAGE __22_ of _28_

rather than the FCC's, no different result occurs. Section 252(e)(5) preemption cannot be used to trump the express judicial review provisions of section 252(e)(6).[62] To do so would render the language of section 252(e)(6) meaningless.

ACS also does nothing to rebut the parade of FCC decisions beginning with *Low Tech* in 1997, which state again and again that FCC preemption under section 252(e)(5) is not used to review the merits of state commission section 252 decisions. Nor does ACS even mention that this FCC interpretation has been affirmed on federal appellate court review:

> The FCC's interpretation thus suggests that only if the state commission either does not respond to a request, or refuses to resolve a particular matter raised in a request, does preemption become a viable option. Under this reading, the purpose of § 252(e)(5) is to hold out the FCC as an alternative forum for the adjudication of certain disputes related to interconnection agreements; the statute does not authorize the Commission to sit as an appellate tribunal to review the correctness of state resolution of such disputes. We believe that this understanding of the preemption provision is neither incompatible with congressional intent nor unreasonable. Instead, it seems quite faithful to the key statutory language: in this context, "fails to act" suggests incomplete action or no action, not misguided action.[63]

---

[61]    This is what happened before the Eighth Circuit. *See Iowa Utilities Board v. FCC*, 219 F.3d 744 (8th Cir. 2000), *aff'd in part, rev'd in part* 122 S.Ct.1646.

[62]    "In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in  an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 of this title and this section."

[63]    *Global Naps, Inc.*, 291 F.3d at 837.

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No 02-201
Page 23 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT____28____
PAGE__23_of_28__

The reasons the Commission and D.C. Circuit Court advanced for limiting preemption to a true "failure to act" are as true today as they were in each case cited above. Once the RCA issued its decision on the Fairbanks arbitrated interconnection agreement, there is "no longer a pending . . . complaint proceeding before the [RCA] left for the Commission to assume."[64] Moreover, "principles of federal-state comity and efficiency" are as applicable here as they were in the FCC's review of other preemption requests of completed state commission proceedings:

> "Just as a court must recognize existing agency action that will 'render the complex fact pattern simple, or the lengthy proceeding short[,]' we recognize the practical efficiency of acknowledging the New Jersey Board's recent resolution of this proceeding. In doing so, we avoid a 'situation[] which cr[ies] out for the elimination of duplication of efforts.'"[65]

The ACS' petition asks the Commission to do exactly what it has repeatedly said it would not – review the merits of the RCA's substantive decision. Under these circumstances, ACS' "remedy lies not in FCC preemption, but rather in judicial review of the [RCA's] order, whether in federal or in state court." *Global Naps, Inc.*, 291 F.3d at 834.

---

[64]    *In the Matter of Global Naps, Inc. Petition for Preemption of Jurisdiction of the Massachusetts Department of Telecommunications and Energy Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996*, 15 FCC Rcd. 4943 (2000) at ¶ 7 – 8 (2000).

[65]    *In the Matter of Global Naps, Inc. Petition for Preemption of Jurisdiction of the New Jersey Board of Public Utilities Regarding Interconnection Dispute With Bell Atlantic-New Jersey, Inc.*, 14 FCC Rcd. 12530 (1999) at ¶ 17.

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT 28
PAGE 24 of 28

## 2. The RCA's Assertion of Sovereign Immunity Does Not Bar the RCA From Objecting to Preemption.

Although ACS claims the RCA has "waived" its right to object to preemption by asserting its sovereign immunity in federal court, it presents no analysis whatsoever explaining how such a "waiver" has been effected. Instead, ACS points to the *WorldCom Preemption Order* for support, where the Virginia Commission expressly refused to undertake any section 252 duty, and expressly directed the parties to petition the FCC for relief.[66]

In *WorldCom*, the FCC's focus for preemption purposes was on the Virginia Commission's refusal to act, not on the state commission's reasons for doing so:

> "[B]y insisting on arbitration pursuant to state law rather than the requirements of the Act, we find that the Virginia Commission has failed to act to carry out its responsibilities under section 252."[67]

At no place in *WorldCom* does the Commission suggest that any waiver or estoppel analysis was applicable to its preemption decision. Instead, the Commission did what it has previously done – review whether the state commission performed its section 252 duties.

In the GCI/ACS interconnection dispute, the RCA performed its section 252 duties.[68] There is simply no parallel here to *WorldCom* where the Virginia

---

[66]    16 FCCR 6224 (2001) at ¶ 3.

[67]    *Id.* at ¶ 5.

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No. 02-201
Page 25 of 28

EXHIBIT 28
PAGE 25 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

Commission refused to perform, and expressly directed the parties to seek relief from the FCC instead.[69]

Even if ACS had attempted to perform any realistic waiver or estoppel analysis, there is no basis for concluding such a bar exists.[70] "Equitable estoppel precludes a party from asserting a right he otherwise would possess but that he forfeits because of his conduct. The aggrieved party must have justifiably relied upon such conduct and changed his position so that he will suffer injury if the other is allowed to repudiate his conduct."[71]

ACS advances no evidence or argument whatsoever that it justifiably relied on the RCA not asserting its Eleventh Amendment immunity to subsequent federal court review. Nor can it do so because the RCA has never expressly agreed to waive its

---

[68]    ACS states at page 42 of its Petition that the RCA "appl[ied] its own rules in setting UNE rates instead of the Commission's rules." Unfortunately, ACS provides no description of any procedural federal laws not followed, thus, it is impossible for the RCA to respond to this unwarranted conclusory allegation. However, to the extent ACS is arguing here that the RCA's decision is at odds with federal law, preemption is inappropriate because the Commission does not exercise its preemption powers to review the merits of state commission section 252 decisions. *E.g. Global Naps*, 291 F.3d at 837 ("the statute does not authorize the Commission to sit as an appellate tribunal to review the correctness of state resolution of such disputes.")

[69]    16 FCCR 6224 at ¶ 3.

[70]    ACS' failure to provide any authority or analysis on this issue should by itself bar relief. *E.g.*, *In the Matter of Graphnet, Inc. v. AT&T Corp.*, 17 FCC Rcd, 1131 at ¶44 (2002)(dismissing as meritless an estoppel claim advanced without any authority or legal analysis.); *In the Matter of AT&T Corp. v. Business Telecom, Inc.*, 2001 WL 575527 at ¶ 52 (2001)(concluding that an estoppel argument fails as a matter of law where the claim is advanced without any authority or legal analysis.)

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT  28
PAGE  26 of 28

sovereign immunity, and at the time the ACS federal court action was initiated,[72] numerous reported decisions existed where state commissions did the same thing as the RCA - asserted their Eleventh Amendment immunity defenses.[73]

ACS also offers no argument or evidence supporting any conclusion that it changed its position, or would have, if it had known the RCA would assert an immunity defense. Given the RCA's right to primary jurisdiction under the Act, and section 252(e)(4)'s bar on state court review, it would have been impossible for ACS to have done so.

ACS also does not attempt to provide any authority under the Act or under any scenario that could support any conclusion that a state asserting a constitutional immunity defense in federal court waives a procedural administrative right as a result. Given the magnitude of the constitutional right implicated, this default is not surprising.

State sovereign immunity under the Eleventh Amendment is a fundamental constitutional right.[74] The purpose of the Eleventh Amendment is to "prevent the indignity of subjecting a state to the coercive process of judicial tribunal at

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

---

[71]   *Communique Telecommunications, Inc., Declaratory Ruling and Order*, 10 FCC Rcd 10399 at ¶ 30 (1995).

[72]   Exhibit B, p. 1.

[73]   The status of the law on this immunity issue at that time is described in the RCA's Motion to Dismiss, filed with the district court in Case No. A00-288 CV(HRH) on October 17, 2000.

[74]   *Alden v. Maine*, 527 U.S. 706, 713 (1999).

EXHIBIT _28_
PAGE _27_ of _28_

the instance of private parties."[75] And as this Commission has recognized, "[i]t is the federal court that would be required to determine its jurisdiction if and when it were faced with a state's assertion of Eleventh Amendment immunity during review of a state commission determination under section 252."[76] Thus, the RCA's after-the-fact assertion of its Eleventh Amendment immunity in federal court is a jurisdictional question for the federal courts to decide, and it has no bearing on the issue of whether the RCA "failed to act."

IV.    Conclusion

For all of the above reasons, there is no basis for the FCC to preempt the RCA's jurisdiction under these circumstances. ACS' Petition should be denied.

Dated this _15th_ day of August, 2002, at Anchorage, Alaska.

                              BRUCE M. BOTELHO
                              ATTORNEY GENERAL

                              By:

                              Steve DeVries
                              Assistant Attorney General
                              Alaska Bar No.: 8611105
                              Counsel for the Regulatory
                              Commission of Alaska

---

[75]    *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993).

[76]    *In the Matter of Global Naps, Inc. Petition for Preemption of Jurisdiction of the Massachusetts Department of Telecommunications and Energy Pursuant to Section 252(e)(5) of the Telecommunications Act of 1996*, 15 FCC Rcd. 4943 (2000) at ¶ 10 (2000).

COMMENTS OF THE REGULATORY COMMISSION OF ALASKA
WC Docket No 02-201
Page 28 of 28

DEPARTMENT OF LAW
OFFICE OF THE ATTORNEY GENERAL
ANCHORAGE BRANCH
1031 W. FOURTH AVENUE, SUITE 200
ANCHORAGE, ALASKA 99501
PHONE: (907) 269-5100

EXHIBIT _28_
PAGE _28_ of _28_